**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

WHITE SULPHUR SPRINGS HOLDINGS, LLC
a Texas Limited Liability Company,

        Plaintiff,

v.

JAMES C. JUSTICE, II, Individually;
CATHY L. JUSTICE, Individually;
JAMES C. JUSTICE, III, Individually;
GREENBRIER HOTEL CORPORATION,
a West Virginia Corporation;
GREENBRIER MEDICAL INSTITUTE, LLC,
a West Virginia Limited Liability Company;
OAKHURST CLUB, LLC,
a West Virginia Limited Liability Company;
GREENBRIER GOLF AND TENNIS
CLUB CORPORATION,
a West Virginia Corporation;
GREENBRIER LEGACY COTTAGE
DEVELOPMENT COMPANY I, Inc.,
a West Virginia Corporation;
GREENBRIER LEGACY COTTAGE
DEVELOPMENT II, Inc.,
a West Virginia Corporation.

        Defendants.

CASE NO.    5:26-cv-00257

## VERIFIED COMPLAINT

The Plaintiff, White Sulphur Springs Holdings LLC ("WSSH") owns numerous

Judgments[1] against the Defendants to this action, which are secured by, among other things, deeds

of trust, security interests, and other security agreements which encumber the tracts of land,

personal property, and other assets comprising The Greenbrier Resort. The Defendant companies

---

[1] Capitalized terms are defined further in the "Parties, Jurisdiction, and Venue" and "The Judgment Documents" Sections of the Verified Complaint.

1

to this action are an interrelated web of companies ultimately owned by the Justice Family Defendants, who operate these companies together as The Greenbrier Resort.

The Judgments reflecting Defendants' indebtedness to WSSH, as well as the deeds of trust and other security interests securing those Judgments, are set forth in the Fourteenth Amended and Restated Forbearance Agreement dated and effective February 28, 2026 (sometimes hereinafter referred to as "A&R Forbearance Agreement"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference. The A&R Forbearance Agreement is terminated, and WSSH has the immediate right to exercise all rights and remedies available to it at law or in equity. Accordingly, WSSH seeks a receiver pursuant to its rights under applicable statutes, federal common law, and the Federal Rules of Civil Procedure, including its absolute rights under West Virginia Code § 55-21-6(a)(2) to carry its Judgments into effect.

WSSH also seeks a receiver on equitable grounds due to the waste, fraud and abuse of Defendants which threaten the value of its collateral, The Greenbrier Resort. Defendants have been diverting substantial amounts of revenue generated from The Greenbrier Resort to their other, unrelated businesses. As a result, these Defendants owe significant unpaid taxes for The Greenbrier Resort; they have not made all required payments to the employees of The Greenbrier Resort, including employees' health insurance premiums and 401(k) employer matching contributions; and The Greenbrier Resort itself is not being properly operated and maintained.

For these reasons, WSSH moves for the immediate appointment of a receiver over each of the Defendant companies with the broad authority to, among other things, take control of Defendants' companies; sell the Defendant companies' properties, assets and operations in a manner that maximizes their value to all interested parties; and, given the interrelatedness of Defendants and their other businesses and affiliated entities, the right to initiate additional legal

proceedings concerning other non-debtor entities, businesses and assets in order to carry out the receiver's duties.  WSSH also asks this Court to enter a preliminary and ultimately a permanent injunction against all Defendants, as well as any other person or entity authorized to act or purporting to act on behalf of the Defendants, to prevent them from taking any further actions which hinder the receiver's authority to operate these Defendant companies and from taking any further actions which diminish the value of these Defendant companies.   It is important to note that while WSSH owns Judgments which are secured by real and personal property interests unrelated to The Greenbrier Resort, including coal mining assets, WSSH only seeks a receiver over the Defendant companies and their property interests that comprise The Greenbrier Resort.

WSSH files this complaint and seeks a receiver for the protection of its collateral, and ultimately for the protection of The Greenbrier Resort, its employees, and the other individuals who depend upon that resort for their livelihood.  The track record of these Defendants more than justifies this request.

## PARTIES, JURISDICTION, AND VENUE

1.    All allegations in this Verified Complaint are based upon the books and records of Defendants which are available to WSSH, personal knowledge, public news reports, or upon information and belief.

2.    White Sulphur Springs Holdings LLC is a Texas limited liability company whose sole member is OHO Corporation. OHO is a Delaware corporation with a principal place of business located at 4001 Maple Avenue, Suite 600, Dallas, Texas.

3.    James C. Justice, II, who has confessed Judgments which are owed to WSSH, is a West Virginia citizen residing in Lewisburg, West Virginia.

3

4.      Cathy L. Justice, who has confessed Judgments which are owed to WSSH, is a West Virginia citizen residing in Lewisburg, West Virginia.

5.      James C. Justice, III, who has confessed Judgments which are owed to WSSH, is a Virginia citizen residing in Roanoke, Virginia. James C. Justice, II, Cathy L. Justice, and James C. Justice, III, are sometimes hereinafter collectively called "the Justice Party Defendants."

6.      Greenbrier Hotel Corporation is a West Virginia corporation with its principal place of business located at 101 Main Street W., White Sulphur Springs, WV.

7.      Greenbrier Medical Institute, LLC is a member-managed West Virginia limited liability company. GMI's sole members are James C. Justice, II, James C. Justice, III, and Dr. Jillean L. Justice, a West Virginia citizen. GMI is registered to conduct business with the West Virginia Secretary of State and lists its principal office address as 101 Main St. W., White Sulphur Springs, WV 24986.

8.      Oakhurst Club, LLC is a member-managed West Virginia limited liability company that is registered to conduct business with the West Virginia Secretary of State and lists its principal office address as 101 Main St. W., White Sulphur Springs, WV 24986. The Justice Family Group LLC is the sole member of Oakhurst. The Justice Family Group, LLC is a member-managed West Virginia limited liability company whose sole members are James C. Justice, II, James C. Justice, III, and Dr. Jillean L. Justice.

9.      Greenbrier Golf and Tennis Club Corporation is a West Virginia corporation with its principal place of business located at 101 Main Street W., White Sulphur Springs, WV.

10.     Greenbrier Legacy Cottage Development Company I, Inc. is a West Virginia corporation with its principal place of business located at 101 Main St. W., White Sulphur Springs, WV.

4

11.     Greenbrier Legacy Cottage Development Company II, Inc. is a West Virginia corporation with its principal place of business located at 101 Main St. W., White Sulphur Springs, WV. The Defendant companies to this matter are hereinafter sometimes called "the Greenbrier Resort Defendants."

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.     The Court has the authority to appoint a receiver pursuant to 28 U.S.C. § 754, 28 U.S.C. § 959, West Virginia Code § 55-21-6, West Virginia Code § 53-6-1, and Rule 66 of the Federal Rules of Civil Procedure.

14.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

### THE JUDGMENT DOCUMENTS

15.     The Defendants to this action were indebted to Carter Bank & Trust ("Carter Bank") through various loan documents, promissory notes, and other financing arrangements.

16.     Ultimately, through non-payment, Defendants consented to judgments in the amount of their indebtedness to Carter Bank ("Judgments"), which are set forth in detail in the Fourteenth Amended and Restated Forbearance Agreement dated and effective February 28, 2026.

17.     The indebtedness of Defendants, individually and/or collectively, is secured by, among other things, various deeds of trust, security agreements, and security interests encumbering real property interests, personal property interests, and other assets and fixtures comprising The Greenbrier Resort and which are owned by one or more of the Defendants ("Greenbrier Resort Collateral Documents"). The Greenbrier Resort Collateral Documents are set forth in detail in the A&R Forbearance Agreement.  The encumbered real property interests, personal property

interests, and other assets and fixtures that secure the Judgments are sometimes called "The Greenbrier Resort."

18. Under the A&R Forbearance Agreement, WSSH owns Judgments of entities which are not defendants to this action, and whose judgments are secured by deeds of trust and other security instruments which encumber real and personal property interests over which WSSH does not seek a receiver in this action.

19. Under the A&R Forbearance Agreement., Defendants agreed that the Judgments were final judgments, that defaults had occurred under the Greenbrier Resort Collateral Documents, and they waived any right to notice of payment default or any other default regarding the indebtedness of Defendants.

20. Defendants further consented to Carter Bank filing Confessions of Judgment in the Circuit Court of the City of Martinsville for the amount of their indebtedness pursuant to the Judgments.

21. The Greenbrier Resort Collateral Documents include without limitation the documents described in paragraphs 22 through 35.

22. By Credit Line Deed of Trust dated March 29, 2010, of record in the Office of the Clerk of the County Commission of Greenbrier County, West Virginia, in Trust Deed Book 666, at page 342, Greenbrier Hotel Corporation granted and conveyed certain real property unto Charles M. Johnson, Jr. to secure repayment of a debt to Carter Bank, a copy of which is attached hereto as Exhibit B and incorporated herein by reference.

23. By Credit Line Deed of Trust dated April 8, 2016, of record in the Office of the Clerk of the County Commission of Greenbrier County, West Virginia, in Trust Deed Book 760, at page 638, and in the Office of the Clerk of the County Commission of Monroe County, West

6

Virginia in Trust Deed Book 257, at page 427, Oakhurst Club, LLC, granted and conveyed certain real property unto Worth H. Carter, Jr. and David M. Moore to secure repayment of a debt to Carter Bank, a copy of which is attached hereto as Exhibit C and incorporated herein by reference. After mesne modifications, the above-referenced Credit Line Deed of Trust secures a maximum loan amount of $350,000,000.00.

24.    By Credit Line Deed of Trust, dated April 8, 2016, of record in the Office of the Clerk of the County Commission of Greenbrier County, West Virginia, in Trust Deed Book 760, at page 720, Greenbrier Medical Institute, LLC, granted and conveyed certain real property unto Worth H. Carter, Jr. and David M. Moore to secure repayment of a debt to Carter Bank, a copy of which is attached hereto as Exhibit D and incorporated herein by reference. After mesne modifications, the above-referenced Credit Line Deed of Trust secures a maximum loan amount of $350,000,000.00.

25.    By Credit Line Deed of Trust dated May 24, 2016, of record in the Office of the Clerk of the County Commission of Greenbrier County, West Virginia, in Trust Deed Book 762, at page 385, Greenbrier Golf And Tennis Club Corporation granted and conveyed certain real property unto Worth H. Carter, Jr. and David M. Moore to secure repayment of a debt to Carter Bank, a copy of which is attached hereto as Exhibit E and incorporated herein by reference. After mesne modifications, the above-referenced Credit Line Deed of Trust secures a maximum loan amount of $350,000,000.00.

26.    By Credit Line Deed of Trust, Assignment of Leases and Rents, As-Extracted Filing and Fixture Filing, dated June 30, 2020, of record in the Office of the Clerk of the County Commission of Greenbrier  County, West Virginia, in Trust Deed Book 829, at page 423, Greenbrier Hotel Corporation, a West Virginia corporation granted and conveyed certain real

property unto Carl W. Roop to secure repayment of a debt to Carter Bank, a copy of which is attached hereto as Exhibit F and incorporated herein by reference. After mesne modifications, Greenbrier Hotel Corporation, Greenbrier Legacy Cottage Development Company I, Inc.; Honeysuckle Cottage Homeowners Association, Inc.; Hydrangea Cottage Homeowners Association, Inc.; a West Virginia corporation; and Rhododendron Cottage Homeowners Association, Inc. are grantors under the above-referenced Credit Line Deed of Trust, which secures a maximum loan amount of $350,000,000.00.

27.    The aforementioned Deeds of Trust (collectively referred to as "Deeds of Trust") provide that the maximum loan amount being secured does not include interest and other fees and charges validly made pursuant to the instruments; does not apply to advances made under the terms of the Deeds of Trust to protect Carter Bank's security and to perform any of the covenants set forth in the Deeds of Trust; and that the Deeds of Trust are also security for the payment of interest on the principal sums and for taxes, insurance premiums and other obligations, including interest thereon.

28.    The indebtedness of Defendants, individually and/or collectively, is further secured by among other things the following security interests (collectively referred to as "Security Interests") encumbering personal property interests owned by one or more of the Greenbrier Resort Defendants.

29.    By Security Agreement dated March 29, 2010, Greenbrier Hotel Corporation granted a security interest in all of the "collateral" described therein to Carter Bank to secure the payment and performance of the "obligations" identified in the March 29, 2010 Security Agreement, a copy of which is attached hereto as Exhibit G and incorporated herein by reference.

8

30.    By Security Agreement dated May 22, 2017, Greenbrier Hotel Corporation granted a security interest in all of the Property described therein to Carter Bank to secure the payment and performance of the "Secured Debts" identified in the May 22, 2017 Security Agreement, a copy of which is attached hereto as Exhibit H and incorporated herein by reference.

31.    By Security Agreement dated December 1, 2017, certain Defendants and other non-parties granted a security interest in all of the Property described therein to Carter Bank to secure the payment and performance of the "Secured Debts" identified in the December 1, 2017 Agreement, a copy of which is attached hereto as Exhibit I and incorporated herein by reference.

32.    By Security Agreement dated January 1, 2018, certain Defendants and other non-parties granted a security interest in all of the "Collateral" described therein to Carter Bank to secure the payment and performance of the "Debts" identified in the January 1, 2018 Agreement, a copy of which is attached hereto as Exhibit J and incorporated herein by reference.

33.    By Security Agreement dated June 30, 2020, certain Defendants and other non-parties granted a security interest in all of the "Collateral" described therein to Carter Bank to secure the payment and performance of the "Debts" identified in the June 30, 2020 Agreement, a copy of which is attached hereto as Exhibit K and incorporated herein by reference.

34.    By Security Agreement dated August 1, 2021, certain Defendants and other non-parties granted a security interest in all of the "Collateral" described therein to Carter Bank to secure the payment and performance of the "Debts" identified in the August 1, 2021 Agreement, a copy of which is attached hereto as Exhibit L and incorporated herein by reference.

## JUDGEMENTS SALE AGREEMENTS

35. Defendants, individually and/or collectively, became indebted to WSSH pursuant to an unrecorded Judgments Sale Agreement dated on or about March 25, 2026, by and between Carter Bank and WSSH.

36. Per the terms of the Judgments Sale Agreement, WSSH was assigned the rights to numerous Confessions of Judgments previously in favor of Carter Bank, as set forth in the A&R Forbearance Agreement.

37. By a series of individual Assignment of Security Instruments dated March 25, 2026, and of record in the Offices of the Greenbrier County Clerk and/or the Monroe County Clerk, Carter Bank also assigned all its right, title and interest in the Deeds of Trust to WSSH.

38. The A&R Forbearance Agreement is terminated.

39. Accordingly, pursuant to the A&R Forbearance Agreement, WSSH has the immediate right to, among other things, collect the entire amount of indebtedness owed by Defendants, as well as exercise all rights available to it under the Greenbrier Resort Collateral Documents, at law, and in equity. That includes the right of WSSH to seek appointment of a receiver.

## GREENBRIER DEFENDANTS' MOUNTING FINANCIAL AND LEGAL TROUBLES

40. In addition to their indebtedness to WSSH, there are other considerable mounting legal and financial issues facing Defendants, as well as their related affiliates.

41. On January 10, 2025, *Forbes* magazine published an article finding that certain Justice Party Defendants' liabilities total more than $1 billion in the form of personally guaranteed bank loans, debt, court judgments, and environmental liabilities. *See* Christopher Helman, *This Former Billionaire, And New U.S. Senator, Is Now Broke*, Forbes (Jan. 10, 2025),

10

https://www.forbes.com/sites/christopherhelman/2025/01/10/this-former-billionaire-and-new-us-senator-is-now-broke/.

42.     On January 1, 2025, the United States District Court for the Western District of Virginia issued a garnishment summons to James C. Justice, II, arising out of a judgment obtained against him by Western Surety. *See Western Surety Company v. James C. Justice, II, et al.*, 7:23-cv-00524-MFU (W.D. Va. Jan. 82, 2025).

43.     In late 2025, certain Defendants reached an agreement with the Internal Revenue Service to pay nearly $5.2 million in overdue taxes, including taxes relating to The Greenbrier Resort. This agreement was reached after the Internal Revenue Service filed liens totaling more than $8 million against one or more of the Justice Party Defendants, and after West Virginia tax officials filed $1.4 million in liens against The Greenbrier Resort.

44.     According to news articles, in January 2026, the Greenbrier Hotel Corp. owed a Louisiana-based bank, First Guaranty Bank, more than $47 million. The article noted that First Guaranty Bank asked the United States District Court for the Southern District of West Virginia to enter judgment against the Greenbrier Hotel Corp. totaling $47.7 million.

45.     More recently, two Kentucky companies have presented evidence in a federal case in the United States District Court for the Eastern District of Kentucky alleging that the Justice Parties are hiding hundreds of millions of dollars in assets to avoid paying judgments and other court costs, including sanctions orders against James C. Justice, III.   *See New London Tobacco Market, Inc., et al., v. Kentucky Fuel Corporation and James C. Justice Companies, Inc.*, Case No. 6:12-CV-91-GVT-HAI.

46.     Just last week, it was reported that The Greenbrier Clinic, located in The Greenbrier Resort, failed to meet clinical image quality standards for mammographs as required by the FDA,

11

resulting in the suspension of all mammography operations at the facility. Patients were informed that from late 2023 to early 2026, the quality of The Greenbrier Clinic's breast imaging services did not meet industry standards.

47.    Given the interrelatedness of the various businesses owned and operated by the Justice Party Defendants, evidence of financial malfeasance and potential fraud at any company owned and operated by the Justice Party Defendants and their affiliates is of paramount concern to WSSH. This is especially true as WSSH has reason to believe that the Justice Party Defendants have been and continue to divert significant sums of money from Greenbrier Resort Defendants to support other unrelated business interests to the detriment of WSSH's collateral.

## EVIDENCE OF WASTE, FRAUD, AND ABUSE

48.    The Justice Party Defendants, who control The Greenbrier Resort, routinely divert the revenue generated by the Greenbrier Resort Collateral to their other affiliated business entities.

49.    Defendants have, at times, not paid the health insurance premiums or 401(k) employer match contributions for the employees working at The Greenbrier Resort.

50.    Greenbrier Resort Defendants are significantly underinsured.

51.    Greenbrier Resort Defendants are failing to meet their tax obligations to government entities, including the State of West Virginia, risking liens being placed on The Greenbrier Resort. Currently, the Greenbrier Hotel Corporation is indebted to the State of West Virginia in an amount exceeding $2,000,000.00due to unpaid sales taxes.

52.    Greenbrier Resort Defendants have also failed to pay their real estate taxes for 2025.

12

53.    A receiver will be in full control of all relevant collateral and will be able to ensure that revenue generated by the Greenbrier Resort Collateral is appropriately allocated to protect the collateral and prevent ongoing fraud, abuse, and waste.

## COUNT I – WSSH'S RIGHT TO APPOINTMENT OF A RECEIVER FOR THE GREENBRIER RESORT COLLATERAL

54.    WSSH incorporates by reference herein all of the foregoing allegations.

55.    As the A&R Forbearance Agreement is terminated, WSSH has a right under state and federal statutes for the appointment of a receiver over the Greenbrier Resort Defendants, including W. Va. Code § 55-21-6 which provides WSSH with the absolute right to the appointment of a receiver to carry the Judgments into effect.

56.    In addition to WSSH's contractual and statutory rights to the appointment of a receiver, WSSH also has a right in equity to appointment of a receiver to ensure that its interests are protected.

57.    First, a receiver is necessary to protect The Greenbrier Resort. The Greenbrier Resort is in jeopardy because of Defendants' inability to effectively manage resort property.

58.    Second, for the reasons set forth above, the Justice Party Defendants and/or Greenbrier Resort Defendants are diverting significant sums of money from The Greenbrier Resort for the benefit of their other, unrelated companies. This fraud, abuse, and waste threatens the value and viability of WSSH's collateral, The Greenbrier Resort.

59.    Without a receiver, WSSH risks substantial loss to The Greenbrier Resort and injury to the value of its security interests therein, all without recourse, because Defendants are ineffectively managing The Greenbrier Resort and are by all appearances insolvent.

60.     WSSH's only option for protecting its collateral at this point is promoting the long-term health and viability of the broader The Greenbrier Resort. Ensuring that The Greenbrier Resort remains viable is of paramount importance to WSSH as its value is the primary collateral for the Judgments.

61.     For the Court's consideration, WSSH has identified Michelle Russo, CHAM, CHA, MAI, the CEO of hotelAVE, as an appropriate candidate to serve as the receiver.

## COUNT II – PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AGAINST
## DEFENDANTS

62.     WSSH incorporates by reference herein all of the foregoing allegations.

63.     Because of the manner in which the Greenbrier Resort Defendants are structured, the Justice Party Defendants remain in effective control of The Greenbrier Resort through their complete control of the collateral.

64.     Despite legal obligations under Judgments to do so, the Justice Party Defendants refuse to pay amounts due and owing under the Judgments, refuse to complete other obligations as required by Judgments, and are not meeting their obligations under the Judgments.

65.     As a result of the Justice Party Defendants' failure to comply with their obligations, WSSH's rights with respect to its collateral, The Greenbrier Resort, and the revenue and opportunities generated thereby are subject to the risk of imminent harm and irreparable injury, loss, and damage.

66.     If The Greenbrier Resort is not properly maintained, the value of the collateral will decline, be subject to fees, liens, and penalties and lost opportunity costs, thereby jeopardizing WSSH's interests in its collateral.

67. WSSH has no assurance that Justice Party Defendants, in full control of The Greenbrier Resort and themselves in violation of the Judgments, will operate the commercial real estate or maintain the value of the secured property, or use rents, profits, or proceeds to maintain and operate The Greenbrier Resort in a manner consistent with the Judgments or in a manner calculated to preserve its value. WSSH has no assurance that the Justice Party Defendants will not use any rents, profits, or proceeds for their own benefit rather than to preserve The Greenbrier Resort.

68. WSSH is subject to the risk of irreparable injury, loss, and damage unless all Defendants, including the Justice Party Defendants, as well as any managers, agents, employees, and all those persons acting in concert or participation with them, under their control, or on their behalf directly, or indirectly, are:

(a) ordered and directed to pay and turn over immediately to the court-appointed receiver, and to perform all acts necessary to transfer to the court-appointed receiver, all funds on hand in cash, and all funds held in deposit accounts for or for the benefit of any of the Defendants arising from the ownership, possession, management, or operation of The Greenbrier Resort, and all accounts (including without limitation tax, utility, or security deposit accounts), accounts receivable, operating reserves, and any other cash or funds of any kind; and

(b) preliminarily and ultimately permanently enjoined as follows:

i. from collecting, withdrawing, transferring, conveying, concealing or otherwise disposing of funds or revenues derived from the operation of The Greenbrier Resort and from paying any such funds to or for the benefit of themselves or any other party, without the express written consent of WSSH;

ii.    from interfering with the Receiver's efforts to take control, possession, or management of any receivership property;

iii.    from hindering, obstructing or otherwise interfering with the Receiver in the performance of his duties;

iv.    from dissipating or otherwise diminishing the value of any receivership property; and

v.    from removing any property from The Greenbrier Resort and from removing, destroying, concealing, changing, or altering in any manner any of the books and records of Defendants.

69.    WSSH has no adequate remedy at law.

70.    Granting the relief requested will not harm the rights of Defendants, and will greatly benefit WSSH by allowing it to protect its secured interests in the Greenbrier Resort Collateral.

71.    No public interest is disserved by granting the permanent injunction sought by WSSH.

WHEREFORE, WSSH requests this Court grant the following relief:

(a)    The immediate appointment of a receiver for each of the Greenbrier Resort Defendants to this action with the authority to exercise all rights under the Deeds of Trust, Security Instruments, Confessions of Judgment, the A&R Forbearance Agreement, any other associated documents, and pursuant to applicable law, including but not limited to:

i.    take full control of the Greenbrier Resort Defendant's properties, assets, and operations, including all mortgaged properties defined in the Deeds of Trust;

16

ii.    operate, manage, control, and sell the Greenbrier Resort Defendant's properties, assets and operations, including all mortgaged properties defined in the Deed of Trust;

iii.    Oversee, manage, and direct the acts, conduct, operations, assets, liabilities, and financial condition of the Greenbrier Resort Defendants, and all of the rents, incomes, revenues, and profits of the Greenbrier Resort Defendants ("Receivership Estate").

iv.    Join and control non-debtor entities and assets both within this jurisdiction and across multiple jurisdictions;

v.    Initiate, prosecute, defend, intervene, compromise, and settle (with WSSH permission) legal proceedings and claims including, but not limited to, the right to initiate alter ego and/or "piercing the corporate veil" proceedings;

vi.    Pursue the fraudulent transfer of assets that were transferred to non-debtor entities;

vii.    Apply all collected monies to the neccesary preservation of the Receivership Estate, to the lenders or other secured creditors holding a perfected lien on the proceeds, or as this court may otherwise direct;

viii.    Obtain or continue to maintain appropriate insurance coverage for the Receivership Estate;

ix.    Explore all available options for increasing revenue including, but not limited to, options for the development, lease, or sale of the Receivership Estate;

x.    Borrow money from WSSH to the extent necessary to preserve the Receivership Estate; and

xi.    Exercise all of the powers of Greenbrier Resort Defendants' officers, directors, shareholders and general partners or persons who exercise similar powers and perform similar duties, including the authority to file a voluntary petition for relief under the Bankruptcy Code; and Greenbrier Resort Defendants' officers, agents, employees, representatives, directors, successors in interest, attorneys in fact and all persons other than the receiver, are hereby divested of, restrained and barred from exercising any powers vested herein in the receiver.

(c)    Enter a preliminary and ultimately a permanent injunction against all Defendants, and any other person or entity authorized to act or purporting to act on behalf of Defendants:

i. from collecting, withdrawing, transferring, conveying, concealing or otherwise disposing of funds or revenues derived from the operation of The Greenbrier Resort, without the express written consent of WSSH;

ii. from interfering with the Receiver's efforts to take control, possession, or management of any receivership property;

iii. from hindering, obstructing or otherwise interfering with the Receiver in the performance of his duties;

iv. from dissipating or otherwise diminishing the value of any receivership property; and

v. from removing any property from The Greenbrier Resort and from removing, destroying, concealing, changing, or altering in any manner any of the books and records of The Greenbrier Resort.

(c) Such other and further relief as this Court may deem appropriate.

18

Respectfully submitted,

**WHITE SULPHUR SPRINGS HOLDINGS, LLC**

By counsel,

/s/ *Seth P. Hayes*
Seth P. Hayes, Esq. (WVSB #10381)
Zachary H. Warder, Esq. (WVSB # 13566)
JACKSON KELLY PLLC
3000 Swiss Pine Way, Suite 200
P.O. Box 619
Morgantown, WV 26501
shayes@jacksonkelly.com
Zachary.warder@jacksonkelly.com

and

Ellen Cappellanti, Esq. (WVSB #627)
Albert F. Sebok, Esq. (WVSB #4722)
Elizabeth B. Elmore (WVSB #6061)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV 25301-3202
ecappellanti@jacksonkelly.com
asebok@jacksonkelly.com

19

## VERIFICATION

I. Paul Jorge, declare under penalty of perjury that (i) I am Senior Vice President, General Counsel, and Secretary of Plaintiff White Sulphur Springs Holdings LLC, and (ii) the facts set forth in the foregoing verified complaint are true and correct to the best of my knowledge and belief.

April 9, 2025

Date

Signature