# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### (BECKLEY DIVISION)

WHITE SULPHUR SPRINGS HOLDINGS, LLC  )
a Texas Limited Liability Company,  )
                        )
        Plaintiff,  )
                        )
v.  )    Case No. 5:26-cv-00257
                        )    The Honorable Frank W. Volk
JAMES C. JUSTICE, II, Individually;  )
CATHY L. JUSTICE, Individually;  )
JAMES C. JUSTICE, III, Individually;  )
GREENBRIER HOTEL CORPORATION,  )
a West Virginia Corporation;  )
GREENBRIER MEDICAL INSTITUTE, LLC,  )
a West Virginia Limited Liability Company;  )
OAKHURST CLUB, LLC,  )
a West Virginia Limited Liability Company;  )
GREENBRIER GOLF AND TENNIS  )
CLUB CORPORATION,  )
a West Virginia Corporation;  )
GREENBRIER LEGACY COTTAGE  )
DEVELOPMENT COMPANY I, Inc.,  )
a West Virginia Corporation;  )
GREENBRIER LEGACY COTTAGE  )
DEVELOPMENT II, Inc.,  )
a West Virginia Corporation.  )
                        )
        Defendants.  )

## FIRST AMENDED VERIFIED COMPLAINT

Plaintiff White Sulphur Springs Holdings, LLC ("WSSH"), pursuant to 28 U.S.C. §§ 2201

and 2202, Rule 15(a)(1)(A), 65, and 66 of the Federal Rules of Civil Procedure, and the Local

Rules of this Court, files this First Amended Verified Complaint against Defendants James C.

Justice, II, Cathy L. Justice, and James C. Justice, III (collectively, the "Justice Defendants") and

Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Oakhurst Club, LLC,

Greenbrier Golf and Tennis Club Corporation, Greenbrier Legacy Cottage Development Company

1

I, Inc., and Greenbrier Legacy Cottage Development II, Inc. (collectively, the "Greenbrier Resort Defendants" and together with the Justice Defendants, "Defendants") seeking, among other things, the appointment of a receiver and injunctive relief to protect the assets that serve as collateral for the debts Defendants owe to WSSH.

## I. **PRELIMINARY STATEMENT**

This action concerns numerous obligations Defendants owe to WSSH, Defendants' actions to avoid repaying those debts (including by hiding their assets), and the current state of disrepair that the Greenbrier Resort—a National Historic Landmark—that has fallen into disrepair while under the stewardship of the Justice Defendants, including United States Senator James C. Justice, II.

The Greenbrier Resort Defendants are an interrelated web of companies ultimately owned by the Justice Defendants, who operate these companies as the Greenbrier Resort. The Greenbrier Resort is Greenbrier County's largest employer, employing roughly 1,500-2,000 people every year and helps to bring hundreds of millions of tourism dollars into the local economy. Founded in 1778, the Greenbrier Resort is known as a local oasis. Over centuries, the Resort grew in grandeur, expanding to include local cottages, state-of-the-art medical facilities, fine dining, sport facilities, and more. Today, however, residents of the local community complain about peeling paint, unkempt grounds, and the Justice Defendants' failure to pay contractors, employees, and vendors. The medical center is no longer state-of-the-art. The IRS and the State of West Virginia have similar complaints about the Justice Defendants' failure to pay their obligations as both are owed several million in back taxes from the Greenbrier Resort Defendants. While the Justice Defendants have reportedly been diverting substantial amounts of revenue generated from the Greenbrier Resort to their other, unrelated businesses, they have failed to pay the Greenbrier Resort

employees' health insurance premiums and 401(k) contributions and have allowed the national landmark resort to fall into disrepair.

This lawsuit should come as no shock to Defendants. Each of the Justice Defendants and Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Oakhurst Club, LLC, and Greenbrier Golf and Tennis Club Corporation have repeatedly acknowledged their debt and that the judgments against them are final and non-appealable.  They did so as recently as February 28, 2026, when they agreed to the **Fourteenth** Amended and Restated Forbearance Agreement regarding hundreds of millions of dollars of debts at issue. But Defendants have since breached the forbearance agreement in multiple ways, including by failing to pay taxes on the underlying property, failing to maintain insurance, and incurring judgments that encumber the property.

Even still, WSSH made efforts to reach an amicable solution with Defendants to secure payment for the outstanding debt. WSSH's representatives traveled to West Viriginia on April 6, 2026, to meet with Senator Justice at the Greenbrier Resort.  At that meeting, the Senator and his counsel threatened WSSH if it continued collection efforts, informing WSSH that the Justice Defendants had influence over or appointed all the state court judges in West Virginia and that WSSH could not get a fair trial in West Virginia. But the Justice Defendants' blatant disregard for the Greenbrier Resort—including the physical property, employees, and vendor relationships— forced WSSH to turn to the Court despite these threats.

Principal among the remedies WSSH seeks is the appointment of a receiver. Defendants are not properly operating or maintaining the historic Greenbrier Resort. Defendants' mismanagement and misdirection of revenues threaten not only the value of the collateral securing WSSH's debt and the debt of several other creditors, but also the local economy. The Greenbrier Resort is referred to as the county's "economic driver." Not only does it employ many people, but

it also hosts countless weddings, retreats, family reunions, and milestone anniversaries. The Court should appoint a receiver not only to preserve the value of the assets for all of its stakeholders, but also to prevent its goodwill and reputation from being forever tarnished. A receiver would bring stability to the local community and serve as a caretaker for this historical landmark.

## II.    THE PARTIES

1.      White Sulphur Springs Holdings, LLC is a Texas limited liability company whose sole member is OHO Corporation. OHO is a Delaware corporation with a principal place of business located at 4001 Maple Avenue, Suite 600, Dallas, Texas.

2.      James C. Justice, II is a West Virginia citizen residing in Lewisburg, West Virginia. Mr. Justice has appeared in the underlying lawsuit through counsel.

3.      Cathy L. Justice is a West Virginia citizen residing in Lewisburg, West Virginia. Mrs. Justice has appeared in the underlying lawsuit through counsel.

4.      James C. Justice, III is a Virginia citizen residing in Roanoke, Virginia. Mr. Justice has appeared in the underlying lawsuit through counsel.

5.      Greenbrier Hotel Corporation ("GHC") is a West Virginia corporation with its principal place of business located at 101 Main Street West, White Sulphur Springs, West Virginia 24986. Greenbrier Hotel Corporation has appeared in the underlying lawsuit through counsel.

6.      Greenbrier Medical Institute, LLC ("GMI") is a member-managed West Virginia limited liability company. GMI's sole members are James C. Justice, II, James C. Justice, III, and Dr. Jillean L. Justice, a West Virginia citizen. GMI is registered to conduct business with the West Virginia Secretary of State and lists its principal office address as 101 Main St. West, White Sulphur Springs, West Virginia 24986. GMI has appeared in the underlying lawsuit through counsel.

4

7.    Oakhurst Club, LLC ("Oakhurst") is a member-managed West Virginia limited liability company that is registered to conduct business with the West Virginia Secretary of State and lists its principal office address as 101 Main St. West, White Sulphur Springs, West Virginia 24986. The Justice Family Group LLC is the sole member of Oakhurst. The Justice Family Group, LLC is a member-managed West Virginia limited liability company whose sole members are James C. Justice, II, James C. Justice, III and Dr. Jillean L. Justice. Oakhurst has appeared in the underlying lawsuit through counsel.

8.    Greenbrier Golf and Tennis Club Corporation ("GGTCC") is a West Virginia corporation with its principal place of business located at 101 Main St. West, White Sulphur Springs, West Virginia 24986. GGTCC has appeared in the underlying lawsuit through counsel.

9.    Greenbrier Legacy Cottage Development Company I, Inc. ("GLCDI") is a West Virginia corporation with its principal place of business located at 101 Main St. West, White Sulphur Springs, West Virginia 24986. GLCDI has appeared in the underlying lawsuit through counsel.

10.    Greenbrier Legacy Cottage Development Company II, Inc. ("GLCDII") is a West Virginia corporation with its principal place of business located at 101 Main St. West, White Sulphur Springs, West Virginia 24986. GLCDII has appeared in the underlying lawsuit through counsel.

### III.    JURISDICTION AND VENUE

11.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.    Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## IV.   STATEMENT OF FACTS

**A.   Defendants Accrued Hundreds of Millions in Debts to Carter Bank & Trust.**

13.   Defendants accrued hundreds of millions of dollars in debt from 2010 through 2023 and were indebted to Carter Bank & Trust ("CBT") through various loan documents, promissory notes, and other financing arrangements.

14.   Defendants' debt obligations are secured by the numerous collateral instruments, which include, among other things, various deeds of trust, security agreements, and security interests encumbering real property interests, personal property interests, and other assets and fixtures comprising the Greenbrier Resort and which are owned by one or more of the Defendants (collectively, the "Greenbrier Resort Collateral"). Some of the documents securing the Greenbrier Resort Collateral (the "Collateral Documents") include the following:

| CREDIT LINE DEEDS OF TRUST | | | |
|---|---|---|---|
| **DOCUMENT** | **DEFENDANT GRANTOR/DEBTOR** | **MAXIMUM SECURED AMOUNT** | **ATTACHED HERETO AS** |
| Credit Line Deed of Trust dated March 29, 2010, as amended and Credit Line Deed of Trust Original Credit Line Credit Line Deed of Trust, Assignment of Leases and Rents, As-Extracted Filing and Fixture Filing, dated June 30, 2020 | Greenbrier Hotel Corporation | Originally $45 million, but was increased to $350 million after mesne modifications | Exhibit B |
| Credit Line Deed of Trust dated April 8, 2016, as amended | Oakhurst Club, LLC | Originally $64 million but was increased to $350 million after mesne modifications | Exhibit C |
| Credit Line Deed of Trust, dated April 8, 2016, as amended | Greenbrier Medical Institute, LLC | Originally $64 million but was increased to $350 million after mesne modifications | Exhibit D |
| Credit Line Deed of Trust dated May 24, 2016, as | Greenbrier Golf and Tennis Club Corporation | Originally $64 million but was increased to | Exhibit E |

| Document | Defendant Grantor/Debtor | Specific Debt, If Any | Attached Hereto As |
|---|---|---|---|
| amended | | $350 million after mesne modifications | |
| Credit Line Deed of Trust, Assignment of Leases and Rents, As-Extracted Filing and Fixture Filing, dated June 30, 2020, as amended | Greenbrier Hotel Corporation and Greenbrier Legacy Cottage Development Company I, Inc. | Originally $178 million but was increased to $350 million after mesne modifications | Exhibit F |
| **SECURITY INTERESTS** | | | |
| **DOCUMENT** | **DEFENDANT GRANTOR/DEBTOR** | **SPECIFIC DEBT, IF ANY** | **ATTACHED HERETO AS** |
| Security Agreement dated March 29, 2010 | Greenbrier Hotel Corporation | | Exhibit G |
| Security Agreement dated May 22, 2017 | Greenbrier Hotel Corporation | $60 million | Exhibit H |
| Security Agreement dated December 1, 2017 | Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Greenbrier Golf and Tennis Club Corporation, and other non-parties | $129,600,910.80 | Exhibit I |
| Security Agreement dated January 1, 2018 | Oakhurst Club, LLC, and other non-parties | | Exhibit J |
| Security Agreement dated June 30, 2020 | Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Greenbrier Golf and Tennis Club Corporation, Oakhurst Club, LLC, and other non-parties | | Exhibit K |
| Security Agreement dated August 1, 2021 | Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Greenbrier Golf and Tennis Club Corporation, Oakhurst Club, LLC, and other non-parties | | Exhibit L |

15.    Defendants' obligations secured by the Collateral Documents include a host of confessed judgments (described below)—each of which continues to accrue daily interest, fees, taxes, insurance premiums, and other obligations.

16.    Defendants routinely failed to comply with their payment obligations. Following a series of defaults, CBT filed numerous confessions of Judgment against Defendants in the amount of their indebtedness to CBT (the "Confessed Judgments") in February 2023. The Confessed Judgments include:

| CONFESSED JUDGMENTS | | | |
|---|---|---|---|
| DOCUMENT | DEFENDANT GRANTOR/DEBTOR | ORIGINAL AMOUNT | ATTACHED HERETO AS |
| Confession of Judgment for Loan #022231663972 | Greenbrier Golf and Tennis Club Corporation, James C. Justice, II, and Cathy L. Justice | $45,002,027.63 | Exhibit M Exhibit N |
| Confession of Judgment for Loan #022231215388 | Greenbrier Hotel Corporation, James C. Justice, II, and Cathy L. Justice | $51,551,610.20 | Exhibit O Exhibit P |
| Confession of Judgment for Loan #042137284583 | Greenbrier Medical Institute, LLC, James C. Justice, II, and Cathy L. Justice | $22,835,762.75 | Exhibit Q Exhibit R |
| Confession of Judgment for Loan #022231443470 | Oakhurst Club, LLC, James C. Justice, II, and Cathy L. Justice | $21,304,934.29 | Exhibit S Exhibit T |
| Confession of Judgment for Loan #21841 | James C. Justice, II, Cathy L. Justice, and James C. Justice, III | $508,381.50 | Exhibit U |

17.    CBT repeatedly accommodated Defendants' requests for additional time to satisfy their obligations, including on the Confessed Judgments, by entering into fourteen successive forbearance agreements with Defendants. A full recitation of the Confessed Judgments is set forth in detail in the Fourteenth Amended and Restated Forbearance Agreement, dated and effective February 28, 2026, a true and correct copy of which is attached hereto as Exhibit A (the "14th FBA").

18.    The 14th FBA is governed by the laws of the Commonwealth of Virginia. *See* Exhibit A at § 18(a). The 14th FBA also includes a waiver of the right to a jury trial. *See* Exhibit A at § 13.

8

19.     As of February 28, 2026, Defendants owed a total of over $141 million to CBT —
although the total outstanding balance increases daily due to the accumulation of interest and fees.

20.     Under the 14th FBA, Defendants acknowledge, among other things: (i) CBT owns
certain judgments against Defendants; (ii) the judgments are final; (iii) defaults had occurred under
the Collateral Documents; and (iv) Defendants waived any right to notice of payment default or
any other default regarding their indebtedness to CBT.

21.     As noted above, CBT filed multiple Confessions of Judgment in the Circuit Court
of the City of Martinsville. Defendants later attacked the validity of the Confessed Judgments in
Virgina circuit court. The circuit court judge in that action held that the Confessed Judgments were
valid and refused Defendants' efforts to have them set aside. *Carter Bank & Trust v. James C.
Justice, II*, Nos. CL23000110-00 through CL23000120-00, CL23000148-00 through
CL23000156-00, and CL23000158-00, 2024 Va. Cir. LEXIS 6 (Va. Cir. Ct. January 22, 2024).
The confessed judgments represent final and binding judgments under Virginia law. Va. Code
Ann. § 8.01-432.

**B.     CBT Assigned the Confessed Judgments to WSSH.**

22.     On or about March 25, 2026, CBT entered into a Judgments Sale Agreement with
WSSH, through which it transferred its interests in, among other things, the Confessed Judgments
and Collateral Documents (the "Judgments Sale Agreement"). A true and correct copy of the
Judgments Sale Agreement is attached hereto as Exhibit V.

23.     By a series of individual Assignment of Security Instruments dated March 25, 2026,
and filed of record in the Offices of the Clerk of Greenbrier County and/or Monroe County, CBT
also assigned all its rights, title, and interest in certain deeds of trust and security instruments to
WSSH.

9

24.     Defendants consented to these transfers and CBT's right to freely assign its rights under the 14th FBA, which states:

> CBT shall have the right, without the consent of or notice to any of the Justice Parties or any other person or entity, **to assign any or all of its rights, benefits, duties and/or obligations** hereunder, under any of the Judgments, under any of the Bank Indebtedness, under any of the Bank Debt Collateral Documents, under any of the Bank Loan Documents, under any of the Other Bank Credit Relationships Indebtedness, under any of the Other Bank Credit Relationships Documents and/or under any of the New Bank Documents, and, **upon such assignment, (i) the assignee shall be the sole, absolute and exclusive owner of the rights, benefits, duties and obligations so assigned and shall have the exclusive right to enforce the rights, benefits, duties and/or obligations so assigned** [and] (ii) **all references herein to CBT shall thereafter refer to such assignee with respect to any of the rights, benefits, duties or obligations so assigned** . . . .

Exhibit A at § 18(c).

25.     WSSH now stands in the shoes of CBT. As a result, Defendants, individually and/or collectively, are now indebted to WSSH.

## C.     Defendants Waived All Defenses to the Underlying Debt and Agreed to Cooperate with Collection Efforts.

26.     Defendants agreed to broadly waive their defenses, rights, claims, counterclaims actions, and causes of action with respect to their indebtedness under the 14th FBA, including in the following provisions:

> **None of the Justice Parties has any defenses**, affirmative or otherwise, rights of setoff, rights of recoupment, claims, counterclaims, actions or causes of action of any kind or nature whatsoever against CBT . . . directly or indirectly, arising out of, based upon, or in any manner connected with, any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, **which occurred, existed, was taken, permitted, or began prior to or on the date of this Agreement** or accrued, existed, was taken, permitted or begun in accordance with, pursuant to, or by virtue of any of the Bank Indebtedness, any of the Bank Debt Collateral Documents, any of the Bank Loan Documents, any of the Judgments, or any of the indebtedness in connection with any other credit relationships between any of the Justice Parties and any of the CBT Parties . . . ;; TO THE EXTENT THAT ANY SUCH DEFENSES, AFFIRMATIVE OR OTHERWISE, RIGHTS OF SETOFF, RIGHTS OF RECOUPMENT, CLAIMS, COUNTERCLAIMS, ACTIONS OR CAUSES OF ACTION EXIST, SUCH

DEFENSES, RIGHTS, CLAIMS, COUNTERCLAIMS, ACTIONS AND CAUSES OF ACTION ARE HEREBY FOREVER WAIVED, DISCHARGED AND RELEASED BY EACH OF THE JUSTICE PARTIES.

Exhibit A at § 2(a).

Each of the Justice Parties hereby expressly waives any and all claims or rights now or hereafter arising from or related to any delay by CBT in exercising any rights or remedies under this Agreement, any of the Judgments, under any of the Bank Debt Collateral Documents, under any of the Bank Loan Documents and/or under any of the Other Bank Credit Relationships Documents, including, without limitation, any delay in foreclosing under any of the Bank Debt Collateral Documents.

Exhibit A at § 3.

27.    Further, Defendants agreed to cooperate with respect to "securing, protecting and liquidating of collateral that secures the Judgments and/or the Bank Indebtedness":

Upon the termination of the forbearance . . . each of the Justice Parties hereby agrees to assist and cooperate fully without cost to CBT, and to cause all officers, employees, agents and all other persons under the direction and/or control of any of the Justice Parties to assist and cooperate fully without cost to CBT, with the securing, protecting and liquidating of the collateral that secures the Judgments and/or the Bank Indebtedness.

*See* Exhibit A at § 9.

**D.    Because of Defendants' Failure to Comply with the 14th FBA and General Mismanagement of their Assets, WSSH Withdrew its Agreement to Forbear Collection of the Debt.**

28.    On April 9, 2026, WSSH sent Defendants a Notice of Default and Termination of Forbearance, describing several breaches by Defendants of their obligations under the 14th FBA (the "Notice of Default"). A true and correct copy of the Notice of Default is attached hereto as Exhibit W and incorporated herein by reference.

29.    In any event, the agreement to forbear under the 14th FBA terminated automatically on April 15, 2026. *See* Exhibit A, Section 7(b)(i).

30.    The defaults included: (i) the Justice Parties' failure to make required monthly interest payments pursuant to Section 7(b)(i) of the 14th FBA; (ii) false representations regarding payment of taxes pursuant to Section 7(c) and Section 1.06 of Schedule 3 of the 14th FBA; (iii) failure to pay property taxes pursuant to Section 2.06 of Schedule 3 of the 14th FBA; (iv) the occurrence of multiple tax liens by the West Virginia Tax Division that are recorded against the assets reflected in the Collateral Documents in violation of Section 8(c) of the 14th FBA; and (v) making an unauthorized modification of the Greenbrier Resort facility documents without prior written consent in violation of Section 8(f) of the 14th FBA.

31.    The Justice Defendants' failure to pay requisite taxes is especially egregious and just one example of their failure to serve as stewards of the Greenbrier Resort and protect the value of the property for all stakeholders.  Defendants collectively owe over $3 million in property taxes, including:

| PAST DUE PROPERTY TAXES | | | |
|---|---|---|---|
| ENTITY | NUMBER OF UNPAID TICKETS | NUMBER OF TICKETS CERTIFIED TO THE STATE | TOTAL AMOUNT DUE |
| Oakhurst | 21 | 0 | $63,793.19 |
| GMI | 10 | 0 | $115,323.16 |
| GLCDI | 12 | 0 | $108,797.88 |
| GLCDII | 2 | 27 | $956,753.41 |
| GHC | 2 | 0 | $1,408,208.34 |
| GGTCC | 1 | 1 | $497,370.45 |

There are also over $3.8 million in sales and use tax liens against GHC, including:

| TAX LIENS AGAINST GHC | | | |
|---|---|---|---|
| LIEN # | PERIOD | CURRENT BALANCE | ATTACHED HERETO AS |
| #1795873 | 5/31/2025 | $535,143.17 | Exhibit AA |
| #1802982 | 6/30/2025 | $30,222.31 | Exhibit BB |
| #1813989 | 7/31/2025 | $602,501.78 | Exhibit CC |
| #1813990 | 8/31/2025 | $592,296.74 | Exhibit DD |
| #1799863 | 9/30/2025 | $455,070.11 | Exhibit EE |
| #1813991 | 9/30/2025 | $602,481.11 | Exhibit FF |
| #1831210 | 10/31/2025 | $2,253.99 | Exhibit GG |
| #1813993 | 10/31/2025 | $568,459.47 | Exhibit HH |
| #1813409 | 11/30/2025 | $459,606.48 | Exhibit II |

32.     Based on these defaults, WSSH "exercise[d] its sole option to terminate the forbearance granted pursuant to Section 5 of the [14th FBA], effective immediately."

33.     WSSH also informed the Justice Defendants that it intended to exercise the immediate right to (i) collect the entire amount of indebtedness acknowledged in the 14th FBA and owed under the Collateral Documents and various other deeds of trust and security interests and (ii) exercise all rights available to WSSH under the Collateral Documents, at law, and in equity pursuant to Section 9 of the 14th FBA.  WSSH subsequently filed this action to enforce those rights.

**E.    Defendants' Continued Failure to Comply with Their Obligations to Protect the Greenbrier Resort.**

34.     After filing this lawsuit, WSSH learned of even more failures by the Justice Defendants to protect the assets that are subject to the 14th FBA. These include:

(a) Failure to maintain required insurance coverage, such as fire and other risk insurance and public liability insurance;

13

(b) Failure to provide required financial information, including the company balance sheet and income statement for each period with certification from each Defendant's chief financial officer at the end of each period;

(c) Failure to provide appropriate documentation bimonthly of each transfer made by the Greenbrier Hotel that is not to CBT or made in the ordinary and customary operational expenses for the Defendant;

(d) Incurring liens on the secured property due to failure to pay real estate taxes for 2024 and 2025;

(e) Failure to provide log-in information for the Greenbrier Resort Defendants' online banking accounts or to instruct the financial institutions maintaining their accounts to provide WSSH with duplicate monthly account statements; and

(f) Failure to provide WSSH with complete visibility into the status of refinancing efforts through Raymond James & Associates and Goldman Sachs, as well as the status of coal asset sales through Woltz & Associates, or to direct those entities to fully cooperate with WSSH to access that information.

35.    On April 21, 2026, WSSH served written notice reminding Defendants of their continuing compliance obligations under the 14th FBA (the "April 21 Letter"). A true and correct copy of the April 21 Letter is attached hereto as Exhibit X and incorporated herein by reference.

36.    As detailed in the April 21 Letter, until "payment in full of the Bank Indebtedness" to WSSH, Defendants are required to: (i) maintain fire and other risk insurance, public liability insurance, and such other insurance as WSSH may require; (ii) furnish WSSH with Defendants' internally prepared balance sheet and income statement for the past month; and (iii) provide a

Principals' Compliance Certificate on the 1st and 15th day of each month identifying the date, amount and transferee of each transfer of funds made by Greenbrier Hotel.

37. As further detailed in the April 21 Letter, Defendants are also prohibited from "create[ing], incur[ing], assum[ing], or suffer[ing] to exist any lien or security interest upon or in any Collateral."

38. Defendants have failed to comply with these obligations. Two days later, the Justice Defendants responded to the April 21 Letter notifying WSSH of their refusal to comply with WSSH's requests that they maintain insurance for the collateral properties, not encumber the properties with additional liens, and provide financial records for the Greenbrier Resort, among other things (the "April 23 Response"). A true and correct copy of the April 23 Response is attached hereto as Exhibit Y and incorporated herein by reference.

**F. Defendants Continue to Shirk Their Financial Responsibilities While Actively Allowing the Greenbrier Resort and Associated Entities to Fall into Disrepair.**

39. Defendants' mismanagement of their finances and business operations is well documented and widely discussed in Greenbrier County. This is unsurprising given the importance of the Greenbrier Resort to the local economy.

40. The Greenbrier Resort is the county's largest employer, employing roughly 1,500-2,000 people every year and helps bring hundreds of millions in tourism to the county. *See* Caity Coyne, *The Greenbrier Hotel is again slated for public auction,* West Virginia Watch (Oct. 10, 2024), https://westvirginiawatch.com/2024/10/10/the-greenbrier-hotel-is-again-slated-for-public-auction-but-attorney-says-the-matter-is-procedural/; *see also* Leah Willingham, *Debt paid on the historic Greenbrier Hotel owned by family of West Virginia's governor,* WOUB (Oct. 17, 2024), https://woub.org/2024/10/17/debt-paid-on-the-historic-greenbrier-hotel/.

41.     Despite the responsibility that comes with running an operation that is the county's "economic driver," Defendants routinely fail to protect their assets, allowing physical and financial disrepair to overtake the Greenbrier Resort. For example:

(a)  In late 2025, certain Defendants reached an agreement with the Internal Revenue Service to pay nearly $5.2 million in overdue taxes, including taxes relating to the Greenbrier Resort. This agreement was reached after the Internal Revenue Service filed liens totaling more than $8 million against one or more of the Justice Party Defendants, and after West Virginia tax officials filed $1.4 million in liens against the Greenbrier Resort.

(b)  Earlier this month, it was reported that the Greenbrier Clinic, located in the Greenbrier Resort, failed to meet the FDA's clinical image quality standards for mammograms.  As a result, all mammography operations at the facility were suspended and patients were informed that from late 2023 to early 2026, the quality of the Greenbrier Clinic's breast imaging services did not meet industry standards.

(c)  Defendants have, at times, not paid the health insurance premiums or 401(k) employer match contributions for the employees working at the Greenbrier Resort. As of April 20, 2026, GHC owed over $2.5 million in delinquent contributions and interest to the employee health fund. A true and correct copy of the Amalgamated National Health Fund's notice of delinquency to GHC is attached hereto as Exhibit Z.

(d)  The Greenbrier Resort Defendants are significantly underinsured.

(e)  The Greenbrier Resort Defendants are failing to meet their tax obligations to government entities, including the State of West Virginia, risking additional liens

being placed on the Greenbrier Resort. GHC is currently indebted to the State of West Virginia in an amount exceeding $3 million in unpaid sales taxes.

(f) The Greenbrier Resort Defendants have failed to pay their real estate taxes for 2024 and 2025.

(g) The Greenbrier Resort Defendants fail to pay vendors.

(h) The Greenbrier Resort Defendants have either failed to pay their local contractors entirely or have paid only deeply discounted amounts.

42. Capital expenditures are meant to address many of these exact concerns. While GHC should have significant capital expenditures given its sizable operating cash flow, these concerns remain unaddressed.

43. A 2025 appraisal of the GHC showed a total of roughly $67 million in capital expenditures from 2017 through 2024. A review of the underlying financial records, however, shows the actual capital expenditures were less than half of what the appraisal stated—and actually included nearly $5 million the Justice Defendants used to purchase a helicopter and a private jet.

44. The Justice Defendants are not maintaining adequate reserves at the property level for GHC. Upon information and belief, since 2018, the Justice Defendants have diverted nearly all of the operating cash flow from the Greenbrier Resort, totaling hundreds of millions of dollars, into their other ventures owned by the Justice Defendants, leaving far less than the standard recommended for capital expenditure reserves on hand for a resort operation of this size (i.e., at least 4% of revenue).

45. Given the interrelatedness of the various businesses the Justice Party Defendants own and operate and the large amounts of cash leaving GHC while the Greenbrier Resort steadily deteriorates, evidence of financial malfeasance individually or at any other company owned and

17

operated by the Justice Party Defendants and their affiliates is of paramount concern to WSSH. And Defendants have a long, public history of failure to pay their debts. For example:

(a) According to a January 2026 news article, GHC owed a Louisiana-based bank, First Guaranty Bank, more than $47 million. One article noted that First Guaranty Bank asked the United States District Court for the Southern District of West Virginia to enter judgment against GHC totaling $47.7 million. *See* Mike Tony, *Justice-controlled Greenbrier Hotel Corp. debt has risen past $47 million,* Charleston Gazette-Mail (Jan. 6, 2026), https://www.wvgazettemail.com/news/politics/justice-controlled-greenbrier-hotel-corp-debt-has-risen-past-47-million-bank-says/article_d285ad43-a437-4b6a-9e69-8827e614a54a.html.

(b) On January 10, 2025, *Forbes* magazine published an article finding that liabilities of certain of the Justice Defendants total more than $1 billion in the form of personally guaranteed bank loans, debt, court judgments, and environmental liabilities. *See* Christopher Helman, *This Former Billionaire, And New U.S. Senator, Is Now Broke,* Forbes (Jan. 10, 2025), https://www.forbes.com/sites/christopherhelman/2025/01/10/this-former-billionaire-and-new-us-senator-is-now-broke/.

(c) On January 1, 2025, the United States District Court for the Western District of Virginia issued a garnishment summons to James C. Justice, II, arising out of a judgment obtained against him by Western Surety for over $3 million arising from breaches of indemnity agreements. *See Western Surety Company v. James C Justice, II, et al.,* 7:23-cv-00524-MFU (W.D. Va. Jan. 2, 2025).

(d) Two Kentucky companies recently presented evidence in federal court in Kentucky alleging that the Justice Parties are hiding hundreds of millions of dollars in assets to avoid paying judgments awarded and sanctions ordered against James C. Justice, III. *See New London Tobacco Market, Inc., et al., v. Kentucky Fuel Corporation and James C. Justice Companies, Inc.*, No. 6:12-CV-91-GFVT-HAI, Dkt. 838-1 (E.D. Ky. Mar. 5, 2026).

46.     WSSH's concerns about the Justice Party Defendants' financial state and regular mismanagement are especially relevant where WSSH has reason to believe that the Justice Party Defendants have been and continue to divert significant sums of money from the Greenbrier Resort Defendants to support other unrelated business interests to the detriment of WSSH's collateral.

47.     The value of a five-star resort is driven by occupancy, which in turn is driven by guest experience. Reviews of the Greenbrier Resort from the last few years show that guest experience is on the decline with many reviews specifically mentioning maintenance related issues. This is in line with a review of the Greenbrier Resort's occupancy rate, which has declined over 10% since 2022. This is in stark contrast to its regional competitors, whose occupancy has steadily increased.

48.     Three metrics are central to measuring the operating performance of any hotel— occupancy rate (which measures demand), average daily rate or ADR (which reflects pricing power), and revenue per available room or RevPAR (which is the ADR multiplied by the occupancy rate). For purposes of monthly revenue management of the resort, GHC chose a set of comparable hotels to compare its performance in these categories. The results suggest extensive deterioration of value—the competitive set, chosen by GHC, improved year over year, while the Greenbrier Resort steadily declined in each category.

49. This steady decline is also evident in GHC's revenue, which dropped significantly from 2022 to 2025. Despite these downwards trends, the Justice Defendants continue to siphon off revenue from GHC for their own personal benefit rather than re-investing funds in the Greenbrier Resort to preserve its value.

50. WSSH's collateral is impaired and continues to be impaired as a direct result of the Justice Defendants' stewardship (or lack thereof). The trends clearly show that the Justice Defendants' behavior of looting GHC's coffers to fund other ventures will not stop until action is taken to force them to maintain the Greenbrier Resort appropriately to maximize value of the assets for all stakeholders.

51. While the Justice Defendants would have the world believe that they stand ready and capable of paying their debts, the reality is that they have failed to do just that. Defendants have repeatedly failed to pay their debts as they have become due, whether those debts are disputed or not. Instead, the Justice Defendants divert the income from the Greenbrier Resort Defendants and spend it not for the benefit of the Greenbrier Resort (or its many stakeholders and creditors) but rather for other, unrelated ventures.

52. In light of the mounting legal and financial troubles facing Defendants, coupled with their ongoing waste, fraud, and abuse of the assets that serve as collateral for their indebtedness to WSSH, WSSH is seeking the appointment of a receiver in this case.

53. A receiver would be in full control of all relevant collateral and will be able to ensure that the assets of and the revenue generated by the Greenbrier Resort Collateral is appropriately allocated to protect the collateral and prevent ongoing fraud, abuse, and waste.

## V.   COUNT I – BREACH OF CONTRACT

54. The foregoing allegations are incorporated by reference as if set forth fully herein.

55.    The 14th FBA is a valid and enforceable contract and WSSH has complied with its obligations thereunder.

56.    WSSH now stands in the shoes of, and has all rights formerly held by, CBT under the 14th FBA. *See* Exhibit A, the 14th FBA at § 18(c); Exhibit V, the Judgment Sale Agreement 1.

57.    Section 7(c) of the 14th FBA, which incorporates the covenants within Sections 2.05 and 2.08 of Schedule 3, requires, until "payment in full of the Bank Indebtedness" to WSSH, that Defendants:

(a)    maintain fire and other risk insurance, public liability insurance, and such other insurance as WSSH may require to the Defendants' properties or operations;

(b)    furnish WSSH within thirty (30) days of the end of each month each Defendants' internally prepared balance sheet and income statement for the period ended, prepared in accordance with generally accepted accounting principles, applied on a consistent basis, and certified as correct to the best knowledge and belief by each Defendants' chief financial officer or other officer or person acceptable to WSSH; and

(c)    provide a Principals' Compliance Certificate on the 1st and 15th day of each month identifying the date, amount and transferee of each transfer of funds made by Greenbrier Hotel that are not payments to WSSH or ordinary and customary operational expenses.

58.    Section 7(c) of the 14th FBA, which incorporates the covenants within Section 3.01 of Schedule 3, requires Defendants not to "create, incur, assume, or suffer to exist any lien or security interest upon or in any Collateral."

59.     Section 7(d) of the 14th FBA requires GHC to direct each financial institution maintaining any of its deposit or other accounts to provide WSSH with duplicate account statements each month if so requested by WSSH and to provide WSSH all logins, passwords and other information that are necessary for WSSH to review and monitor on-line all activity in such accounts.

60.     Section 9 of the 14th FBA requires Defendants to "assist and cooperate fully without cost to [WSSH], and to cause all officers, employees, agents and all other persons under the direction and/or control of any of the [Defendants] to assist and cooperate fully without cost to [WSSH], with the securing, protecting and liquidating of the collateral that secures" the Confessed Judgments.

61.     Defendants have not complied with any of these contractual requirements (and many others in the 14th FBA) and have thus repeatedly breached the 14th FBA. In response to a formal reminder about these obligations in the April 21 Letter, Defendants served the April 23 Response refusing to acknowledge or comply with their contractual obligations. *See* Exhibit Y.

62.     All conditions precedent to WSSH's right to recover on Count I have occurred, been performed or waived.

63.     As a result of Defendants' multiple breaches of the 14th FBA, WSSH has sustained substantial damages.

64.     As a result of Defendants' multiple breaches of the 14th FBA, WSSH is entitled to specific performance of such obligations by Defendants.

### VI.     COUNT II – APPOINTMENT OF A RECEIVER

65.     The foregoing allegations are incorporated by reference as if set forth fully herein.

66.    WSSH terminated its agreement to forbear the collection of debts owed by the Greenbrier Resort Defendants set out in the 14th FBA in the Notice of Default. Therefore, WSSH has a right to the appointment of a receiver over the Greenbrier Resort Defendants under state and federal statutes, including W. Va. Code § 55-21-6.

67.    Among the statutory bases for the appointment of a receiver, W. Va. Code § 55-12-6(a)(2) provides WSSH with the absolute right to the appointment of a receiver to carry the Confessed Judgments into effect. Additionally, W. Va. Code § 55-21-6(b) provides for several circumstances whereby the court may appoint a receiver for a mortgaged property in connection with a foreclosure or other enforcement proceeding, including, but not limited to, when appointment is necessary to protect the property from waste, loss, transfer, dissipation, or impairment or the property. Further, W. Va. Code § 55-21-6(a)(3) and § 53-6-1 allow for the appointment of a receiver on equitable grounds.

68.    In addition to WSSH's statutory rights to the appointment of a receiver under West Virginia law, WSSH also has a right in equity to appointment of a receiver to ensure that its interests are protected.

69.    A receiver is necessary to protect the Greenbrier Resort. The Greenbrier Resort is in jeopardy because of Defendants' inability to effectively manage the property, which is evidenced by the tax liens, failure to pay property taxes, and general state of disrepair the property has fallen into explained above.

70.    Additionally, WSSH has reason to believe that the Justice Party Defendants and/or Greenbrier Resort Defendants are diverting significant sums of money from the Greenbrier Resort for the benefit of their other, unrelated companies. This fraud, abuse, and waste threaten the value and viability of WSSH's collateral, the Greenbrier Resort.

71.     As of February 28, 2026, the Greenbrier Resort Defendants owe WSSH over $140 million and that amount continues to accrue daily interest. This is in addition to over $230 million more, which the Justice Defendants and their other non-party entities owe WSSH that is also secured by the Greenbrier Resort.

72.     Without appointment of a receiver, WSSH risks substantial loss to the Greenbrier Resort and injury to the value of its security interests therein, all without recourse, because the Greenbrier Resort Defendants are ineffectively managing the Greenbrier Resort and are by all appearances insolvent. WSSH's only option for protecting its collateral at this point is promoting the long-term health and viability of the broader Greenbrier Resort. Ensuring that the Greenbrier Resort remains viable is of paramount importance to WSSH as its value is the primary collateral for the Confessed Judgments.

73.     For the Court's consideration, WSSH has identified Michelle Russo, CHAM, CHA, MAI, the CEO of hotelAVE, as an appropriate candidate to serve as the receiver.

74.     WSSH is filing an Amended Emergency Motion for Appointment of a Receiver and a supporting memorandum of law.

## VII.    COUNT III – PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

75.     The foregoing allegations are incorporated by reference as if set forth fully herein.

76.     WSSH brings this claim in the alternative to Count II – Appointment of a Receiver.

77.     Because of the manner in which the Greenbrier Resort Defendants are structured, the Justice Party Defendants remain in effective control of the Greenbrier Resort through their complete control of the Greenbrier Resort Collateral.

78.     Defendants refuse to satisfy their obligations under the 14th FBA.

79.     As a result of the Defendants' failure to comply with their obligations, WSSH's rights with respect to the Greenbrier Resort Collateral and the revenue and opportunities generated thereby are subject to the risk of imminent harm and irreparable injury, loss, and damage.

80.     If the Greenbrier Resort is not properly maintained, the value of the Greenbrier Resort Collateral will decline, be subject to fees, liens, and penalties and lost opportunity costs, thereby jeopardizing WSSH's interests in the Greenbrier Resort Collateral. WSSH has no assurance that any Justice Party Defendant will operate the Greenbrier Resort appropriately, maintain the value of the secured property, or use rents, profits, or proceeds to maintain and operate the Greenbrier Resort in a manner consistent with the requirements set forth in the 14th FBA or in a manner calculated to preserve the Greenbrier Resort's value. WSSH has no assurance that the Justice Party Defendants will not use any rents, profits, or proceeds for their own benefit rather than to preserve the Greenbrier Resort.

81.     WSSH is subject to the risk of irreparable injury, loss, and damage unless all Defendants, including the Justice Party Defendants, as well as any managers, agents, employees, and all those persons acting in concert or participation with them, under their control, or on their behalf directly, or indirectly, are preliminarily, and ultimately permanently, enjoined as follows:

(a)     from collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of funds or revenues derived from the operation of the Greenbrier Resort outside the ordinary course of business without the approval of the court and from paying any such funds to or for the benefit of themselves or any of their affiliates;

(b)     from removing any property from the Greenbrier Resort and from removing, destroying, concealing, changing, or altering in any manner any of the books and

records of the Greenbrier Resort;

(c)    from depleting cash reserves in an amount exceeding 4% of its capital expenditures;

(d)    from dissipating or otherwise diminishing the value of any real property that is included in The Greenbrier Resort, including by causing any lien to be filed against or otherwise encumbering such property;

(e)    from selling or attempting to sell any real property that is included in The Greenbrier Resort;

(f)    from removing any property from the Greenbrier Resort and from removing, destroying, concealing, changing, or altering in any manner any of the books and records of The Greenbrier Resort; and

(g)    from incurring any further liens, including tax liens, on any real property that is included in The Greenbrier Resort.

82.    Further, GHC should be required to comply with its affirmative obligations set forth in the 14th FBA, including providing WSSH with financial records in accordance with Section 7(d) of the 14th FBA.

83.    WSSH has no adequate remedy at law.

84.    Granting the relief requested will not harm the rights of Defendants and will greatly benefit WSSH by allowing it to protect its secured interests in the Greenbrier Resort Collateral.

85.    No public interest is disserved by granting the permanent injunction sought by WSSH.

86.    WSSH is filing an Emergency Motion for Preliminary Injunction and a supporting memorandum of law.

## VIII.    COUNT IV – CLAIM FOR ATTORNEYS' FEES AND COSTS

87.    The foregoing allegations are incorporated by reference as if set forth fully herein.

88.    Section 7(a) of the 14th FBA requires Defendants to pay WSSH for "all expenses incurred by WSSH arising from or in connection with the collection, enforcement, or protection of WSSH's rights and remedies under" the Confessed Judgments, Deeds of Trusts, and the Security Interests and to indemnify WSSH from and against "any and all liabilities, related costs, expenses and disbursements, including the fees, charges, and disbursements of any counsel."

89.    WSSH is therefore entitled to and demands an award of reasonable attorneys' fees and costs incurred in connection with this action pursuant to the 14th FBA.

## PRAYER FOR RELIEF

**WHEREFORE**, WSSH requests this Court grant the following relief:

(a)    The immediate appointment of a receiver for each of the Greenbrier Resort Defendants to this action with the authority to exercise all rights under the Deeds of Trust, Security Instruments, Confessed Judgments, the 14th FBA, any other associated documents, and pursuant to applicable law, including but not limited to:

   i.    take full control of the Greenbrier Resort Defendants' properties, assets, and operations, including all mortgaged properties defined in the Deeds of Trust;

   ii.    operate, manage, control, and sell the Greenbrier Resort Defendants' properties, assets, and operations, including all mortgaged properties defined in the Deeds of Trust;

   iii.    oversee, manage, and direct the acts, conduct, operations, assets, liabilities, and financial condition of the Greenbrier Resort Defendants, and all of the rents, incomes, revenues, and profits of the Greenbrier Resort Defendants

("Receivership Estate");

iv.  join and control non-debtor entities and assets both within this jurisdiction and across multiple jurisdictions;

v.  initiate, prosecute, defend, intervene, compromise, and settle (with WSSH's permission) legal proceedings and claims including, but not limited to, the right to initiate alter ego and/or "piercing the corporate veil" proceedings;

vi.  pursue the fraudulent transfer of assets that were transferred to non-debtor entities;

vii.  apply all collected monies to the necessary preservation of the Receivership Estate, to the lenders or other secured creditors holding a perfected lien on the proceeds, or as this court may otherwise direct;

viii.  obtain or continue to maintain appropriate insurance coverage for the Receivership Estate;

ix.  explore all available options for increasing revenue including, but not limited to, options for the development, lease, or sale of the Receivership Estate;

x.  borrow money from WSSH to the extent necessary to preserve the Receivership Estate; and

xi.  exercise all of the powers of Greenbrier Resort Defendants' officers, directors, shareholders and general partners or persons who exercise similar powers and perform similar duties, including the authority to file a voluntary petition for relief under the Bankruptcy Code; and Greenbrier Resort Defendants' officers, agents, employees, representatives, directors, successors in interest, attorneys in fact and all persons other than the receiver, are hereby divested of, restrained and

28

barred from exercising any powers vested herein in the receiver.

(b)    Enter a preliminary and ultimately a permanent injunction against all Defendants, and any other person or entity authorized to act or purporting to act on behalf of Defendants:

i.    from collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of funds or revenues derived from the operation of the Greenbrier Resort outside the ordinary course of business without the approval of the court and from paying any such funds to or for the benefit of themselves or any of their affiliates;

ii.    from removing any property from the Greenbrier Resort and from removing, destroying, concealing, changing, or altering in any manner any of the books and records of the Greenbrier Resort;

iii.    from depleting cash reserves in an amount exceeding 4% of its capital expenditures;

iv.    from dissipating or otherwise diminishing the value of any real property that is included in The Greenbrier Resort, including by causing any lien to be filed against or otherwise encumbering such property;

v.    from selling or attempting to sell any real property that is included in The Greenbrier Resort;

vi.    from removing any property from the Greenbrier Resort and from removing, destroying, concealing, changing, or altering in any manner any of the books and records of The Greenbrier Resort; and

vii.    from incurring any further liens, including tax liens, on any real property that is included in The Greenbrier Resort.

29

(c)    Specific performance by Defendants of their obligations set forth in the 14th FBA.

(d)    WSSH's attorneys' fees and costs incurred in bringing and prosecuting this action.

(e)    Such other and further relief as this Court may deem appropriate.

Respectfully submitted,

**WHITE SULPHUR SPRINGS HOLDINGS, LLC**

By counsel,

/s/ *Seth P. Hayes*
Seth P. Hayes, Esq. (WVSB #10381)
Zachary H. Warder, Esq. (WVSB # 13566)
JACKSON KELLY PLLC
3000 Swiss Pine Way, Suite 200
P.O. Box 619
Morgantown, WV  26501
shayes@jacksonkelly.com
Zachary.warder@jacksonkelly.com

and

Ellen Cappellanti, Esq. (WVSB #627)
Albert F. Sebok, Esq. (WVSB #4722)
Elizabeth B. Elmore (WVSB #6061)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV  25301-3202
ecappellanti@jacksonkelly.com
asebok@jacksonkelly.com

30

## VERIFICATION

I, Michael G. Smith, declare under penalty of perjury that (i) I am the Executive Vice President of White Sulphur Springs, LLC, and (ii) the facts set forth in the foregoing verified amended complaint are true and correct to the best of my knowledge and belief.

May 1, 2026
Date

Signature

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## (BECKLEY DIVISION)

WHITE SULPHUR SPRINGS HOLDINGS, LLC )
a Texas Limited Liability Company,  )
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,  )
　　　　　　　　　　　　　　　　　　)
v.  )　　　Case No. 5:26-cv-00257
　　　　　　　　　　　　　　　　　　)　　　The Honorable Frank W. Volk
JAMES C. JUSTICE, II, Individually;  )
CATHY L. JUSTICE, Individually;  )
JAMES C. JUSTICE, III, Individually;  )
GREENBRIER HOTEL CORPORATION,  )
a West Virginia Corporation;  )
GREENBRIER MEDICAL INSTITUTE, LLC,  )
a West Virginia Limited Liability Company;  )
OAKHURST CLUB, LLC,  )
a West Virginia Limited Liability Company;  )
GREENBRIER GOLF AND TENNIS  )
CLUB CORPORATION,  )
a West Virginia Corporation;  )
GREENBRIER LEGACY COTTAGE  )
DEVELOPMENT COMPANY I, Inc.,  )
a West Virginia Corporation;  )
GREENBRIER LEGACY COTTAGE  )
DEVELOPMENT II, Inc.,  )
a West Virginia Corporation.  )
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.  )

## CERTIFICATE OF SERVICE

I, Seth P. Hayes, certify that on the 1st day of May, 2026, service of the "***First Amended***

***Complaint***" was made on counsel of record, by electronic mail, to the email addresses listed below:

4910-9830-7166.v1

Steven R. Ruby, Esquire
Raymond S. Franks II, Esquire
David R. Pogue, Esquire
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

H. Rodgin Cohen, Esquire
Robert L. Jones IV, Esquire
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
cohenhr@sullcrom.com
jonesrob@sullcrom.com

Amanda Flug Davidoff, Esquire
Oliver W. Engebretson-Schooley, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
davidoffa@sullcrom.com
engebretsono@sullcrom.com

/s/ *Seth P. Hayes*
Seth P. Hayes, Esq. (WVSB #10381)

4910-9830-7166.v1

## APPENDIX TABLE OF CONTENTS

Exhibit A -    Fourteenth Amended and Restated Forbearance Agreement dated February 28, 2026

Exhibit B -    Credit Line Deed of Trust dated March 29, 2010, as amended and Credit Line Deed of Trust Original Credit Line Credit Line Deed of Trust, Assignment of Leases and Rents, As-Extracted Filing and Fixture Filing, dated June 30, 2020

Exhibit C -    Credit Line Deed of Trust dated April 8, 2016, as amended

Exhibit D -    Credit Line Deed of Trust, dated April 8, 2016, as amended

Exhibit E -    Credit Line Deed of Trust dated May 24, 2016, as amended

Exhibit F -    Credit Line Deed of Trust, Assignment of Leases and Rents, As-Extracted Filing and Fixture Filing, dated June 30, 2020, as amended

Exhibit G -    Security Agreement dated March 29, 2010

Exhibit H -    Security Agreement dated May 22, 2017

Exhibit I -    Security Agreement dated December 1, 2017

Exhibit J -    Security Agreement dated January 1, 2018

Exhibit K -    Security Agreement dated June 30, 2020

Exhibit L -    Security Agreement dated August 1, 2021

Exhibit M -    Confession of Judgment for Loan #022231663972 (Corporate)

Exhibit N -    Confession of Judgment for Loan #022231663972 (Personal)

Exhibit O -    Confession of Judgment for Loan #022231215388 (Corporate)

Exhibit P -    Confession of Judgment for Loan #022231215388 (Personal)

Exhibit Q -    Confession of Judgment for Loan #042137284583 (Corporate)

Exhibit R -    Confession of Judgment for Loan #042137284583 (Personal)

Exhibit S -    Confession of Judgment for Loan #022231443470 (Corporate)

4910-9830-7166.v1

Exhibit T -    Confession of Judgment for Loan #022231443470 (Personal)

Exhibit U -    Confession of Judgment for Loan #21841

Exhibit V -    Judgments Sale Agreement dated March 25, 2026

Exhibit W -    Notice of Default and Termination of Forbearance dated February 28, 2026

Exhibit X -    April 21, 2026 Letter

Exhibit Y -    April 23, 2026 Response

Exhibit Z -    Amalgamated National Health Fund's Notice of Delinquency

Exhibit AA -   Tax Lien #1795873

Exhibit BB -   Tax Lien #1802982

Exhibit CC -   Tax Lien #1813989

Exhibit DD -   Tax Lien #1813990

Exhibit EE -   Tax Lien #1799863

Exhibit FF -   Tax Lien #1813991

Exhibit GG -   Tax Lien #1831210

Exhibit HH -   Tax Lien #1813993

Exhibit II -    Tax Lien #1813409

4910-9830-7166.v1