**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**(BECKLEY DIVISION)**

| | | |
|---|---|---|
| WHITE SULPHUR SPRINGS HOLDINGS, LLC a Texas Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 5:26-cv-00257 |
| | ) | The Honorable Frank W. Volk |
| JAMES C. JUSTICE, II, Individually; CATHY L. JUSTICE, Individually; JAMES C. JUSTICE, III, Individually; GREENBRIER HOTEL CORPORATION, a West Virginia Corporation; GREENBRIER MEDICAL INSTITUTE, LLC, a West Virginia Limited Liability Company; OAKHURST CLUB, LLC, a West Virginia Limited Liability Company; GREENBRIER GOLF AND TENNIS CLUB CORPORATION, a West Virginia Corporation; GREENBRIER LEGACY COTTAGE DEVELOPMENT COMPANY I, Inc., a West Virginia Corporation; GREENBRIER LEGACY COTTAGE DEVELOPMENT II, Inc., a West Virginia Corporation. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF**
**AMENDED EMERGENCY MOTION FOR APPOINTMENT OF A RECEIVER**

Plaintiff White Sulphur Springs Holdings, LLC ("WSSH") respectfully files this Amended Memorandum of Law in Support of its Amended Emergency Motion for Appointment of a Receiver, which seeks a receiver over the following Defendant entities and their assets: Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Oakhurst Club, LLC, Greenbrier Golf and Tennis Club Corporation, Greenbrier Legacy Cottage Development Company I, Inc., and Greenbrier Legacy Cottage Development Company II, Inc. (the "Greenbrier Resort Defendants").

# I. PRELIMINARY STATEMENT

This case involves Defendants' failure to satisfy millions upon millions of dollars of obligations that are secured by collateral intertwined with the historic West Virginia vacation spot: the Greenbrier Resort. Defendants incurred significant debt obligations to Carter Bank & Trust ("CBT"), which obligations were converted into confessed judgments. CBT, WSSH's predecessor in interest, agreed to forbear collection of the obligations fourteen times before assigning all of its positions with respect to Defendants to WSSH. WSSH now stands in the shoes of CBT, has refused to extend the agreement to forbear collection a fifteenth time, and has brought this action seeking specific performance. WSSH also seeks the appointment of a receiver to preserve and protect its collateral—specifically the assets of the Greenbriar Resort Defendants—for its benefit and the benefit of all stakeholders.

WSSH filed this action in an effort to protect the ongoing operations of the Greenbrier Resort. WSSH's primary goal is to ensure the Greenbrier Resort can retain its outstanding and dedicated staff, honor existing commitments to its guests and contractual counterparties, and preserve its status as the premier resort destination in West Virginia. Appointing a receiver to manage Defendants' collateral assets is the best way to achieve that goal.

Emergency relief is required because the Greenbrier Resort's current ownership and management have, among other things, failed to satisfy its obligations to private and governmental entities and allowed the Greenbrier Resort to become rundown, risking permanent damage to its reputation and goodwill. For example, the public record contains evidence that the owners of the Greenbrier Resort Defendants—James C. Justice, II, Cathy L. Justice, James C. Justice, III (the "Justice Defendants" and together with the Greenbrier Resort Defendants, "Defendants")—have misappropriated revenue and diverted it to their other, unrelated businesses. Not only have

Defendants failed to pay their debts, but their misappropriation of funds has caused the Greenbrier Resort's property to deteriorate—residents of the local community complain about Defendants' failure to pay their local contractors, employees, and vendors, unkempt grounds, and peeling paint. In addition, Defendants have at times failed to pay various taxes, endangering the Greenbrier Resort's operations, licenses, and raising the risk that taxing authorities will place further liens on the properties. The appointment of a receiver is therefore a critical remedy, not only to protect the value of the collateral securing Defendants' debts to WSSH, but to keep the Greenbrier Resort running smoothly for the benefit of its numerous employees, guests, and the larger surrounding community.

## II.  RELEVANT FACTUAL BACKGROUND

### A.  Defendants Accrued Millions in Debt, Which They Owe to WSSH.

Defendants accrued hundreds of millions of dollars in debt from 2010 through 2023 and became indebted to CBT through various loan documents, promissory notes, and other financing arrangements. After Defendants defaulted on various loan obligations, CBT exercised its right to confess judgment against defendants and those judgments were confirmed. The most recent agreement between CBT and Defendants was the Fourteenth Amended and Restated Forbearance Agreement, dated February 28, 2026 ("14th FBA"), which gave CBT the "right, without the consent of or notice to any of the Justice Parties or any other person or entity, to assign any or all of its rights, benefits, duties and/or obligations hereunder." (*See* Ex. A to First Amended Complaint ("FAC").) CBT exercised that right when it entered into the Judgments Sale Agreement with WSSH on March 25, 2026, assigning all of Defendants' obligation to WSSH. (Ex. V, FAC ¶ 22.)

Defendants' collateral to WSSH includes several Deeds of Trust and Security Instruments, which encumber various operating entities of the Greenbrier Resort, as incorporated in the First Amended Complaint. (FAC ¶ 14.)

| DEEDS OF TRUST | | |
|---|---|---|
| DOCUMENT | DEFENDANT GRANTOR/DEBTOR | AMOUNT |
| Credit Line Deed of Trust dated March 29, 2010 | Greenbrier Hotel Corporation | $45 million |
| Credit Line Deed of Trust dated April 8, 2016 | Oakhurst Club, LLC | Originally $64 million but was increased to $350 million after mesne modifications |
| Credit Line Deed of Trust, dated April 8, 2016 | Greenbrier Medical Institute, LLC | Originally $64 million but was increased to $350 million after mesne modifications |
| Credit Line Deed of Trust dated May 24, 2016 | Greenbrier Golf and Tennis Club Corporation | Originally $64 million but was increased to $350 million after mesne modifications |
| Credit Line Deed of Trust, Assignment of Leases and Rents, As-Extracted Filing and Fixture Filing, dated June 30, 2020 | Greenbrier Hotel Corporation and Greenbrier Legacy Cottage Development Company I, Inc. | Originally $178 million but was increased to $350 million after mesne modifications |
| SECURITY INTERESTS | | |
| DOCUMENT | DEFENDANT GRANTOR/DEBTOR | SPECIFIC DEBT, IF ANY |
| Security Agreement dated March 29, 2010 | Greenbrier Hotel Corporation | |
| Security Agreement dated May 22, 2017 | Greenbrier Hotel Corporation | $60 million |
| Security Agreement dated December 1, 2017 | Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Greenbrier Golf and Tennis Corporation, and other non-parties | $129,600,910.80 |

| Security Agreement dated January l, 2018 | Oakhurst Club, LLC, and other non-parties | |
|---|---|---|
| Security Agreement dated June 30, 2020 | Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Greenbrier Golf and Tennis Corporation, Oakhurst Club, LLC, and other non-parties | |
| Security Agreement dated August l, 2021 | Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Greenbrier Golf and Tennis Corporation, Oakhurst Club, LLC, and other non-parties | |

In February 2023, CBT filed numerous confessions of judgment against the Defendants in the amount of their indebtedness at that time (the "Confessed Judgments"), and those judgments were confirmed. The Confessed Judgments include:

| CONFESSED JUDGMENTS | | |
|---|---|---|
| DOCUMENT | DEFENDANT GRANTOR/DEBTOR | ORIGINAL AMOUNT |
| Confession of Judgment for Loan #022231663972 | Greenbrier Golf and Tennis Club Corporation, James C. Justice, II, and Cathy L. Justice | $45,002,027.63 |
| Confession of Judgment for Loan #022231215388 | Greenbrier Hotel Corporation, James C. Justice, II, and Cathy L. Justice | $51,551,610.20 |
| Confession of Judgment for Loan #042137284583 | Greenbrier Medical Institute, LLC, James C. Justice, II, and Cathy L. Justice | $22,835,762.75 |
| Confession of Judgment for Loan #022231443470 | Oakhurst Club, LLC, James C. Justice, II, and Cathy L. Justice | $21,304,934.29 |
| Confession of Judgment for Loan #21841 | James C. Justice, II, Cathy L. Justice, and James C. Justice, III | $508,381.50 |

Despite the Confessed Judgments, which have been confirmed, and Carter Bank's fourteen written agreements to collect amounts owed from the Defendants, they have failed and refused and continue to fail and refuse to satisfy their obligations. First to Carter Bank, and now to WSSH. As of February 28, 2026, Defendants owed a total of over $141 million to CBT on just the items listed

above—although the total outstanding balance increases daily due to the accumulation of interest and fees.

**B.    Defendants' Continued Failure to Protect the Greenbrier Resort Endangers its Value and the Local Economic Community.**

Unfortunately, the Justice Defendants have consistently failed to protect the Greenbrier Resort. WSSH has a direct interest in these failures because those assets are the collateral securing millions of dollars of debt that Defendants owe to WSSH. One example of Defendants improper conduct: Defendants are prohibited from "create[ing], incur[ing], assum[ing], or suffer[ing] to exist any lien or security interest upon or in any Collateral." (FAC ¶ 37.) Yet Defendants refused to comply with demands that they maintain adequate insurance for the collateral properties, not encumber the properties with additional liens, and provide financial records for the Greenbrier Resort to WSSH, among other things. (FAC ¶ 38.). Further, Defendants' mismanagement of their finances and business operations is well documented and widely discussed in both Greenbrier County and the press. (FAC ¶ 39.)

The Greenbrier Resort is Greenbrier County's largest employer, employing roughly 1,500–2,000 people every year and brings hundreds of millions in tourism to the county. (FAC ¶ 40.) Despite the responsibility that comes with running an operation that is the county's "economic driver," Defendants routinely fail to protect their assets, allowing physical and financial disrepair to overtake the Greenbrier Resort. For example:

- Late last year, certain Defendants reached an agreement with the Internal Revenue Service to pay nearly $5.2 million in overdue taxes, including taxes relating to the Greenbrier Resort. Defendants reached the agreement after the Internal Revenue Service filed liens totaling more than $8 million against one or more of the Justice Party Defendants and after West Virginia tax officials filed $1.4 million in liens against the Greenbrier Resort. (FAC ¶ 41(a).)

- Earlier this month, it was reported that the Greenbrier Clinic, located in the Greenbrier Resort, failed to meet the FDA's clinical image quality standards for mammographs. This

resulted in the suspension of all mammography operations at the facility. Patients were then informed that, from late 2023 to early 2026, the quality of the Greenbrier Clinic's breast imaging services did not meet industry standards. (FAC ¶ 41(b).)

- Defendants have, at times, not paid the health insurance premiums or 401(k) employer match contributions for the Greenbrier Resort's employees. (FAC ¶ 41(c).)

- The Greenbrier Resort Defendants are significantly underinsured. (FAC ¶ 41(d).)

- The Greenbrier Resort Defendants are failing to meet their tax obligations to government entities, including the State of West Virginia, risking additional liens being placed on the Greenbrier Resort. For example, Greenbrier Hotel Corporation is indebted to the State of West Virginia for over $3 million in unpaid sales taxes. (FAC ¶ 41(e).)

- The Greenbrier Resort Defendants failed to pay their real estate taxes for 2025. (FAC ¶ 41(f).)

- The Greenbrier Resort Defendants commonly fail to pay regular vendors. (FAC ¶ 41(g).)

- The Greenbrier Resort Defendants either failed to pay their local contractors entirely or paid only deeply discounted amounts. (FAC ¶ 41(h).)

WSSH's concerns about the Defendants' financial state and regular mismanagement are especially relevant because WSSH has reason to believe the Justice Defendants have been and continue to divert significant sums of money from the operation of the Greenbrier Resort Defendants to support other unrelated business interests to the detriment of WSSH's collateral. (FAC ¶ 44.) And Defendants have a long, public history of failure to pay their debts. For example:

- According to news articles, in January 2026 Greenbrier Hotel Corp. owed a Louisiana-based bank, First Guaranty Bank, more than $47 million. *See* Mike Tony, *Justice-controlled Greenbrier Hotel Corp. debt has risen past $47 million, bank says*, WVU Today (Jan. 6, 2026), https://wvpress.org/breaking-news/justice-controlled-greenbrier-hotel-corp-debt-has-risen-past-47-million-bank-says/. (FAC ¶ 45(a).). The article noted that First Guaranty Bank asked the United States District Court for the Southern District of West Virginia to enter judgment against Greenbrier Hotel Corp. totaling $47.7 million. (FAC ¶ 45(a).) The case is currently pending in the Southern District of West Virginia, and First Guaranty Bank's current operative complaint asserts that the Greenbrier Hotel Corp. owes more $47 million. *First Guaranty Bank v. Greenbrier Hotel Corporation*, No. 5:25-cv-00687, Dkt. 40, ¶ 16 (S.D.W. Va. Dec. 30, 2025) ("As of December 30, 2025, there remains due and payable on the Main Street Loan . . . an aggregate total of $47,716,883.53.").

- On January 10, 2025, Forbes magazine published an article finding that liabilities of certain of the Justice Defendants total more than $1 billion in the form of personally guaranteed

bank loans, debt, court judgments, and environmental liabilities. *See* Christopher Helman, *This Former Billionaire, And New U.S. Senator, Is Now Broke*, Forbes (Jan. 10, 2025), https://www.forbes.com/sites/christopherhelman/2025/01/10/this-former-billionaire-and-new-us-senator-is-now-broke/. (FAC ¶ 45(b).)

- On January 1, 2025, the United States District Court for the Western District of Virginia issued a garnishment summons to James C. Justice, II, arising out of a judgment Western Surety obtained against him. *Western Surety Company v. James C Justice, II, et al.*, No. 7:23-cv-00524-MFU, Dkt. 23 (W.D. Va. Jan. 2, 2025). (FAC ¶ 45(c).)

- Two Kentucky companies recently presented evidence in federal court in Kentucky alleging that the Justice Parties are hiding hundreds of millions of dollars in assets to avoid paying judgments awarded and sanctions ordered against James C. Justice, III. *See New London Tobacco Market, Inc., et al., v. Kentucky Fuel Corporation and James C. Justice Companies, Inc.*, No. 6:12-CV-91-GFVT-HAI, Dkt. 838-1 (E.D. Ky. Mar. 5, 2026). (FAC ¶ 45(d).)

Appointment of a receiver over the Greenbriar Resort Defendants and their assets is particularly warranted given the Justice Defendants' mounting legal and financial troubles and their ongoing waste, fraud, and abuse of the collateral securing their debts to WSSH (*i.e.*, the Greenbrier Resort Defendants' property). (FAC ¶ 52.) A receiver appointed to operate the Greenbrier Resort Defendants would control all relevant collateral and protect and preserve the assets of the Greenbrier Resort, direct appropriate allocation of the revenue the Greenbrier Resort Defendants generate, pay expenses, and prevent waste, fraud, and abuse.

### III.   ARGUMENTS AND AUTHORITIES

**A.   Federal Law Grants the Court Inherent Authority to Appoint a Receiver on an Emergency Basis.**

Federal courts have broad "authority to appoint a receiver" under their "inherent equitable powers under the common law." *First United Bank & Tr. v. Square at Falling Run, LLC*, 2011 WL 1563108, at *8 (N.D. W. Va. Mar. 31, 2011) (Kaull, J.), *report and recommendation adopted in part*, 2011 WL 1563027, at *5 (N.D. W. Va. Apr. 25, 2011) (adopting recommendation as to appointment of receiver); *see also Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001) (citing FED. R. CIV. P. 66). Courts typically apply an eight-factor test in determining

whether a receiver would "safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary. *First United Bank*, 2011 WL 1563108, at *8 (internal citation omitted).

These equitable factors are: (1) "inadequacy of the security to satisfy the debt," (2) the "financial position of the debtor," (3) the existence of "fraudulent conduct on defendant's part," (4) "inadequacy of legal remedies," (5) "imminent danger of the property being lost, concealed, injured, diminished in value, or squandered," (6) the "probability that harm to [the] moving party by denial of appointment would outweigh injury to parties opposing appointment," (7) the "probability of [the] moving party's success in the action and the possibility of irreparable injury to its interest in the property," and (8) "whether [the] moving party's interests sought to be protected will in fact be well-served by receivership." *Id.* at *9.

Courts commonly analyze the individual factors taken together in light of the complete record. *See Deutsche Bank Tr. Co. Americas as Tr. for Registered Holders of UBS Com. Mortg. Tr. 2012-C1 v. Mountain W. Hosp., LLC*, No. 1:17CV75, 2017 WL 11179626, at *2 (N.D. W. Va. Aug. 3, 2017) (analyzing the equitable factors collectively in light of the entire record); *U.S. Bank Nat. Ass'n v. Sayona Hosp., LLC*, No. 3:14-CV-62-GMG, 2014 WL 2918549, at *5 (N.D. W. Va. June 25, 2014), *report and recommendation adopted*, No. 3:14-CV-62, 2014 WL 2918547 (N.D. W. Va. June 26, 2014) (same); *U.S. Bank Nat'l Ass'n for Benefit of Holders of COMM2013-CCRE12 Mortg. Tr. Com. Mortg. Pass-Through Certificates v. Mountain Blue Hotel Grp., LLC*, No. 1:17CV138, 2017 WL 4700660, at *2 (N.D. W. Va. Oct. 19, 2017) (same). WSSH believes such an approach here is appropriate. That said, WSSH addresses each factor in turn for the sake of completeness, and here, the factors weigh heavily in support of the appointment of a receiver as

there is significant evidence in the record supporting seven of the eight factors and evidence showing that the remaining factor is at least neutral.

Moreover, federal courts in West Virginia have consistently appointed receivers on an emergency basis when a receiver was necessary to protect the value of collateral assets. *See, e.g.*, *First United Bank*, 2011 WL 1563108, at *9–10 (recommending granting emergency motion to appoint receiver, where collateral value would be "reduced to zero" in the absence of immediate action); Order Granting Immediate Appointment of Special Receiver, *LSCG Fund 11, LLC v. Charles Town Self Storage, LLC*, No. 3:13-CV-51, Dkt. 8 (N.D. W. Va. May 13, 2013) (Groh, J.) (hereinafter "*LSCG Fund*") (granting emergency motion to appoint receiver over self-storage company); Order Appointing a Receiver, *United Bank v. Allegheny Wood Products, Inc., et al.*, No. 2:24-CV-03, Dkt. 18 (N.D. W. Va. Mar. 6, 2024) (Kleeh, J.) (granting emergency motion to appoint receiver over hardwood lumber producer).

More than just WSSH's collateral is at risk. Indeed, the Justice Defendants' conduct and history of shifting money between its businesses endangers the continued operations of the Greenbrier Resort itself and, by extension, the entire community that depends on the Greenbrier Resort for employment and economic support. Two key decisions from the Northern District of Virginia have held that where the revenue from continued operation of a hotel was critical for the payment of debts—as is true for the Greenbrier Resort—emergency relief was warranted to protect the hotel's continued operation. In *Deutsche Bank*, the court granted an emergency motion to appoint receiver after the defendant had failed to pay utility bills for the hotel property, noting that if "the Property . . . will become unable to generate revenue, [this would] further decreas[e] the value of the Property." 2017 WL 11179626, at *2 (Keeley, J.). Similarly, the court explained in *Sayona Hospitality* that emergency relief was warranted "to protect the Plaintiff from further

diminishing the property's value as an operating entity." 2014 WL 2918549, at *5 (Trumble, J.) (finding emergency appointment of receiver "is necessary to collect rents and operate the hotel").

**B.**     **Each of the Eight Factors Weigh in Favor of Appointing a Receiver to Protect and Preserve the Greenbrier Resort.**

Even setting aside the urgency of protecting the Greenbrier Resort from falling into disrepair and economic collapse, WSSH has offered evidence on each of the eight equitable factors recognized in *First United* to support the emergency appointment of a receiver.

*1.*      *Without a receiver, Defendants' security would be inadequate to satisfy its debt.*

If WSSH executed on the judgments already filed against Defendants in West Virginia, the operations of the Greenbrier Resort could be suddenly impacted, causing the collateral itself to lose significant value. (*See* FAC ¶ 72.) Thus, in the absence of a receiver, any attempt by WSSH to foreclose on the collateral to satisfy Defendants' debt may have the unintended consequence of rendering the collateral inadequate (and significantly damaging the ecosystem that the Greenbrier Resort supports). *See Deutsche Bank*, 2017 WL 11179626, at *2 (finding that hotel's value was "intimately tied to continued operation"); *Mountain Blue*, 2017 WL 4700660, at *2 (same).

*2.*      *Defendants are in a precarious financial position.*

Because the Justice Defendants are notoriously in dire financial condition, this factor weighs heavily in favor of appointment of a receiver. Not only have the Defendants defaulted under the obligations in the 14th FBA (FAC ¶ 28), they have also failed to (i) pay vendors and local contractors (FAC ¶ 41(g)), (ii) meet payroll obligations, including payment of health insurance premiums and of 401(k) employer match contributions (FAC ¶ 41(c)), and (iii) pay sales taxes and property taxes (FAC ¶ 41(e)–(f)). Moreover, Defendants have a long public history of failure to pay debts. (FAC ¶ 45.)

### 3. There is evidence that Defendants have engaged in significant fraudulent conduct.

Instead of using revenues to pay taxes, operating expenses, and debts tied to the Greenbrier Resort, WSSH has reason to believe that the Defendants have diverted substantial revenues from the Greenbrier Resort to unrelated businesses outside of the reach of WSSH's security interests. (FAC ¶ 70.) The Court should thus appoint a receiver to stymie further fraud, waste, and abuse of the revenues generated by Defendants' collateral.

### 4. Without a receiver, WSSH would have inadequate legal remedies.

This factor is at least neutral with respect to appointment of a receiver because the Greenbriar Resort Defendants' assets comprise a significant portion of the collateral securing Defendants' obligations. (FAC ¶ 72.) Without a receiver to protect the value and ongoing revenue and physical assets from the Greenbrier Resort, WSSH likely will have no adequate legal remedy to be made whole, given that the property at issue is one of WSSH's primary sources of security. *See Deutsche Bank*, 2017 WL 11179626, at *2 (legal remedies inadequate where hotel was "primary source of recovery"); *Sayona Hosp.*, 2014 WL 2918549, at *5 (same); *First United Bank*, 2011 WL 1563108, at *10 (legal remedies inadequate where defendant was "virtually judgment proof" and its only asset was its property interest).

### 5. The Greenbrier Resort faces imminent danger of being lost, concealed, injured, diminished in value, or squandered.

The Greenbrier Resort and its revenue are already being lost, concealed, injured, diminished in value, and squandered. Indeed, the Greenbriar Resort Defendants are currently delinquent in their payments to the vendors and local contractors necessary to maintain the premises. (FAC ¶ 41(d).) They are also delinquent in their payment of real estate and other taxes to the State of West Virginia as evidence by over the over $3.8 million of tax liens that have been placed on property owned by Greenbrier Hotel Corporation. (FAC ¶ 41(e)-(f), Exs. AA–II). The

Greenbrier Resort Defendants' failure to pay taxes risks the loss of their license to do business pursuant to W. Va. Code § 11-12-5(b).

Additionally, WSSH believes that the Justice Defendants have (and continue to) divert revenue from the Greenbrier Resort to unrelated businesses, to the detriment of the Greenbrier Resort. (FAC ¶ 70.) A receiver is necessary to stop the *ongoing* loss of value to the collateral securing Defendants' debts to WSSH and to properly account for the Greenbriar Resort Defendants' assets and liabilities, especially considering Defendants' refusal to comply with their obligations under the 14th FBA to turn over the Greenbrier Resort's books and records to WSSH. (FAC ¶¶ 32, 34, 37.) Indeed, WSSH sought to enforce its rights under the 14th FBA to seek financial records for the Greenbrier Resort—records that it could use to confirm whether Resort revenues have been diverted to unrelated businesses instead of being used to fund the operation of the resort and payment of debt. (FAC ¶ 38.) Defendants, however, have failed to provide such records or otherwise confirm that they have not misappropriated Resort Funds. (FAC ¶ 38.)

6. ***The probability of harm to WSSH from not appointing a receiver would outweigh any purported injury to Defendants.***

The actual harm to WSSH if a receiver is not appointed strongly outweighs the potential harm to Defendants because in the absence of a receiver, the value of the WSSH's collateral will continue to diminish. The Greenbrier Resort and its revenue are already being lost, concealed, injured, diminished in value and squandered because of the Greenbriar Resort Defendants' persistent failure to pay the vendors and local contractors necessary to maintain the premises, to pay real estate and other taxes, which risks the loss of their license to do business pursuant to W. Va. Code § 11-12-5(b), to meet payroll obligations to the Greenbrier Resort staff necessary to provide guest services at the expected levels for a luxury resort, and to ensure resort revenue is not being diverted to unrelated businesses. (FAC ¶ 70.) This harm would be exacerbated if WSSH was

left only to pursue foreclosure remedies to collect on its judgments, which could severely impact the operation and therefore the value of the Greenbrier Resort. (FAC ¶ 72.) And the harm would be further exacerbated if the Greenbrier Resort's operations cease because not only would the value of the property be diminished, but the Greenbrier Resort's trademarks would also be diminished in value and potentially lost. *See* 14th FBA at Recitals Section Y ("Greenbrier IA is joining this agreement to induce CBT to enter into this Agreement by granting a first priority security interest in . . . its intellectual property . . . ."); *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 115 F.4th 266, 278 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1898 (2025) ("[T]hree years of nonuse of a valid common law trademark creates a rebuttable presumption of abandonment.").

In contrast, Defendants will suffer no monetary injury from the appointment of a receiver, particularly because receivership is the best process to satisfy Defendants' obligations as the Receiver's performance will be monitored by the Court. And while Defendants will lose the ability to redirect revenue from the Greenbrier Resort to their unrelated businesses, that harm is not recognizable here because it is fraudulent in nature. The plain language of the 14th FBA further underpins this factor because it authorizes WSSH as creditor to exercise any remedies available to it "at law, in equity, or otherwise." (*See infra* Section II.D.) And because the parties have contractually consented to all legal and equitable remedies, which in West Virginia includes the appointment of a receiver, *see* West Virginia Code §§ 53-6-1, 55-21-6(a)(2), 55-21-6(b), "the probability of injury . . . is nonexistent." *See Sayona Hosp.*, 2014 WL 2918549, at *5 (finding "probability of injury . . . nonexistent" where the partes agreed to appointment of a receiver).

> 7. ***WSSH has a high probability of success on claims and faces a high possibility of irreparable injury to its collateral.***

WSSH's probability of success on the merits of its claims in the First Amended Complaint is high considering Defendants have notified WSSH in writing that they will not assist WSSH in

"securing, protecting and liquidating of [WSSH's] collateral." (Ex. A, FAC); *see First United Bank*, 2011 WL 1563108, at \*11 (finding high probability of success where defendant "admits it has not paid toward its obligations"); *Sayona Hosp.*, 2014 WL 2918549, at \*5 (finding high probability of success on breach claim "supported by the loan documents"). WSSH's likelihood of success is further bolstered by Defendants' agreement in the 14th FBA that CBT had an absolute right to assign its interests at issue here to anyone, including WSSH:

> CBT shall have the right, without the consent of or notice to any of the Justice Parties or any other person or entity, to assign any or all of its rights, benefits, duties and/or obligations hereunder, under any of the Judgments, under any of the Bank Indebtedness, under any of the Bank Debt Collateral Documents, under any of the Bank Loan Documents, under any of the Other Bank Credit Relationships Indebtedness, under any of the Other Bank Credit Relationships Documents and/or under any of the New Bank Documents, and, upon such assignment, (i) the assignee shall be the sole, absolute and exclusive owner of the rights, benefits, duties and obligations so assigned and shall have the exclusive right to enforce the rights, benefits, duties and/or obligations so assigned [and] (ii) all references herein to CBT shall thereafter refer to such assignee with respect to any of the rights, benefits, duties or obligations so assigned . . . .

(Ex. A, FAC§ 18(c). *See Fed. Deposit Ins. Corp. v. R&M Invs., LLC*, 2012 WL 12904014, at \*3 (D.S.C. Aug. 8, 2012) (applying same factors and holding "Plaintiff appears to have a very high likelihood of success on the merits in this action, as Plaintiff merely seeks to enforce what appear to be valid and enforceable Loan Documents and a Forbearance Agreement").

Finally, WSSH's likelihood of success is strong because Defendants executed broad waivers of all defenses, rights, claims, counterclaims actions, and causes of action with respect to their indebtedness under the 14th FBA, including the following provisions:

> **None of the Justice Parties has any defenses**, affirmative or otherwise, rights of setoff, rights of recoupment, claims, counterclaims, actions or causes of action of any kind or nature whatsoever against CBT . . . directly or indirectly, arising out of, based upon, or in any manner connected with, any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, **which occurred, existed, was taken, permitted, or began prior to or on the date of this Agreement** or accrued, existed, was taken, permitted or begun in accordance

with, pursuant to, or by virtue of any of the Bank Indebtedness, any of the Bank Debt Collateral Documents, any of the Bank Loan Documents, any of the Judgments, or any of the indebtedness in connection with any other credit relationships between any of the Justice Parties and any of the CBT Parties . . . ;; TO THE EXTENT THAT ANY SUCH DEFENSES, AFFIRMATIVE OR OTHERWISE, RIGHTS OF SETOFF, RIGHTS OF RECOUPMENT, CLAIMS, COUNTERCLAIMS, ACTIONS OR CAUSES OF ACTION EXIST, SUCH DEFENSES, RIGHTS, CLAIMS, COUNTERCLAIMS, ACTIONS AND CAUSES OF ACTION ARE HEREBY FOREVER WAIVED, DISCHARGED AND RELEASED BY EACH OF THE JUSTICE PARTIES.

(Ex. A, FAC § 2(a).)

Each of the Justice Parties hereby expressly waives any and all claims or rights now or hereafter arising from or related to any delay by CBT in exercising any rights or remedies under this Agreement, any of the Judgments, under any of the Bank Debt Collateral Documents, under any of the Bank Loan Documents and/or under any of the Other Bank Credit Relationships Documents, including, without limitation, any delay in foreclosing under any of the Bank Debt Collateral Documents.

(Ex. A, FAC § 3.)

In fact, under the 14th FBA, Defendants are contractually obligated to cooperate with respect to "securing, protecting and liquidating of collateral that secures the Judgments and/or the Bank Indebtedness":

Upon the termination of the forbearance . . . each of the Justice Parties hereby agrees to assist and cooperate fully without cost to CBT, and to cause all officers, employees, agents and all other persons under the direction and/or control of any of the Justice Parties to assist and cooperate fully without cost to CBT, with the securing, protecting and liquidating of the collateral that secures the Judgments and/or the Bank Indebtedness.

(Ex. A, FAC § 9.)

Last, the possibility of irreparable injury to WSSH's interest is significant because the Justice Defendants are likely diverting revenue from the Greenbrier Resort Defendants to other entities, leaving the Greenbrier Resort in deteriorating and precarious condition. (*Supra* Section II.B.)

**8.** *A receivership will well serve WSSH's—and the community's—interest in the Greenbrier Resort's continued successful operation.*

Receivership will protect WSSH's interest in the property the Greenbrier Resort Defendants own and operate. A receiver would end the diversion of revenue to unrelated businesses that should be used to pay operational expenses. (FAC ¶ 46.) Granting receivership over the Greenbrier Resort Defendants also would ensure the continued operation of the Greenbrier Resort and, hopefully, reverse any loss of value that has already occurred under Defendants' mismanagement discussed *supra* Section II.B.

**C.    West Virginia Statute Further Authorizes the Appointment of a Receiver.**

West Virginia courts have also based their appointment of a receiver on West Virginia's receivership statute: West Virginia Code § 53-6-1. *See First United Bank*, 2011 WL 1563108, at *13 ("West Virginia Code Chapter 53, Article 6, Section 1 provides for the general appointment of a receiver."); *Mountain Blue Hotel*, 2017 WL 4700660, at *1 ("Although federal law governs whether a receiver will be appointed, state statute provides the vehicle by which an appointment is accomplished"; citing W. Va. Code § 53-6-1); *Sayona Hosp.*, 2014 WL 2918549, at *3 (same); *LSCG Fund* (appointing receiver based, in part, on W. Va. Code § 53-6-1).

Section 53-6-1 provides that a court may appoint a receiver "in any proper case pending" where "funds or property of a corporation, firm, or person is involved" and "there is danger of the loss or misappropriation of the same or a material part thereof." Here, the funds and property of the Greenbrier Resort Defendants are squarely at issue, and Defendants' mismanagement of funds presents a substantial danger to the Greenbrier Resort and WSSH. (*See supra* Section II.B). This statute provides authority for the Court to appoint a receiver here to prevent any further loss or misappropriation of the Greenbrier Resort or funds directed to it and would protect the Greenbrier

Resort from further diminishing in value. *See Kanawha Coal Co. v. Ballard & Welch Coal Co.*, 29 S.E. 514, 519 (W. Va. 1897) (affirming appointment of receiver under West Virginia statute).

Two additional provisions of the West Virginia code provide further support for the appointment of a receiver: Section 55-21-6(a)(2), which governs post-judgment relief, and Section 55-21-6(b), which governs mortgaged property. *First*, under Section 55-21-6(a)(2), courts can appoint a receiver after judgment "[t]o carry the judgment into effect." WSSH has already been validly assigned the rights to recover on numerous judgments entered in the Commonwealth of Virginia against Defendants totaling over $141 million. (FAC ¶ 19.) Under the 14th FBA, Defendants also waived any and all rights to protest any action WSSH initiated related to the Confessed Judgments, acknowledging they do not have any defense to any action WSSH brings concerning the Judgments. (Ex. A, FAC at § 2(a).) *Second*, under Section 55-21-6(b), "the court may appoint a receiver for a mortgaged property" "[i]n connection with the foreclosure or other enforcement of a mortgage" when "[a]ppointment is necessary to protect the property from waste, loss, transfer, dissipation, or impairment." Here, Defendants' debt to WSSH is secured by, among other things, deeds of trust on various properties owned by operating entities for the Greenbrier Resort. (FAC ¶ 14, Exs. B-F.) And there is real evidence of waste, fraud, and abuse the Greenbrier Resort Defendants' property. (*See supra* Section II.B.)

**D.  The Terms of the 14th FBA Also Support Appointment of a Receiver.**

Finally, West Virginia courts have appointed a receiver where the parties have contractually agreed to that remedy, though none found this factor to be dispositive. *See, e.g.*, *Deutsche Bank*, 2017 WL 11179626, at *1 ("Standing alone, a contractual provision for a court-appointed receiver provides strong support for such an appointment if the contractual predicates are satisfied."); *Mountain Blue*, 2017 U.S. Dist. LEXIS 174052, at *4 (same); *Sayona Hosp.*, 2014 WL 2918549,

at *4 (noting that "[v]arious federal courts have held that a borrower's contractual agreement to appointment of a receiver upon default is an independently sufficient basis for appointment of a receiver," while still analyzing *First United Bank* factors); *R&M Invs.*, 2012 WL 12904014, at *3 (recognizing the parties "specifically contracted regarding the appointment of a receiver" and still engaging in the eight-factor test).

While there is no contractual provision in the 14th FBA that expressly references the appointment of a receiver (as there was in *Deutsche Bank*, *Sayona Hospitality*, and *R&M Investors*), Section 9 of the 14th FBA states that WSSH has the right to "immediately exercise creditor process and/or one or more of the rights and remedies described in or available . . . at law, in equity or otherwise available . . . without notice to or demand on any of the Justice Parties or any other person or entity." (Ex. A, FAC at § 9.) This broad grant of remedial authority encompasses WSSH's the right to the appointment of a receiver over Defendants' collateral in the event of default. And Defendants' numerous breaches of the 14th FAB trigger WSSH's right to the appointment of a receiver to protect its secured interests. *See First United Bank*, 2011 WL 1563108, at *8 ("Under either a clear contractual right or the equitable principles district courts typically consider at common law when determining whether to appoint a receiver, however, the Undersigned concludes that the appointment of a receiver is warranted.").

## IV. CONCLUSION

For all of the foregoing reasons, WSSH respectfully requests that this Court grant its emergency motion for the appointment of a receiver and that a receiver be appointed as set forth in accordance with the order attached to this motion as soon as possible.

19

Respectfully submitted,

**WHITE SULPHUR SPRINGS HOLDINGS, LLC**

By counsel,

*/s/ Seth P. Hayes*

Seth P. Hayes, Esq. (WVSB #10381)
Zachary H. Warder, Esq. (WVSB # 13566)
JACKSON KELLY PLLC
3000 Swiss Pine Way, Suite 200
P.O. Box 619
Morgantown, WV  26501
shayes@jacksonkelly.com
zachary.warder@jacksonkelly.com

And

Ellen Cappellanti, Esq. (WVSB #627)
Albert F. Sebok, Esq. (WVSB #4722)
Elizabeth B. Elmore (WVSB #6061)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV  25301-3202
ecappellanti@jacksonkelly.com
asebok@jacksonkelly.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# (BECKLEY DIVISION)

WHITE SULPHUR SPRINGS HOLDINGS, LLC )
a Texas Limited Liability Company, )
           )
           Plaintiff, )
           )
v. )    Case No. 5:26-cv-00257
           )    The Honorable Frank W. Volk
JAMES C. JUSTICE, II, Individually; )
CATHY L. JUSTICE, Individually; )
JAMES C. JUSTICE, III, Individually; )
GREENBRIER HOTEL CORPORATION, )
a West Virginia Corporation; )
GREENBRIER MEDICAL INSTITUTE, LLC, )
a West Virginia Limited Liability Company; )
OAKHURST CLUB, LLC, )
a West Virginia Limited Liability Company; )
GREENBRIER GOLF AND TENNIS )
CLUB CORPORATION, )
a West Virginia Corporation; )
GREENBRIER LEGACY COTTAGE )
DEVELOPMENT COMPANY I, Inc., )
a West Virginia Corporation; )
GREENBRIER LEGACY COTTAGE )
DEVELOPMENT II, Inc., )
a West Virginia Corporation. )
           )
           Defendants. )

## <u>CERTIFICATE OF SERVICE</u>

I, Seth P. Hayes, certify that on the 1st day of May, 2026, the foregoing "***PLAINTIFF'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF AMENDED EMERGENCY MOTION FOR APPOINTMENT OF A RECEIVER***" was filed using the Court's CM/ECF system. Counsel of record will be served by the Court's CM/ECF system as follows:

Steven R. Ruby, Esquire
Raymond S. Franks II, Esquire
David R. Pogue, Esquire
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

H. Rodgin Cohen, Esquire
Robert L. Jones IV, Esquire
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY10004
Telephone: (212) 558-4000
cohenhr@sullcrom.com
jonesrob@sullcrom.com

Amanda Flug Davidoff, Esquire
Oliver W. Engebretson-Schooley, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
davidoffa@sullcrom.com
engebretsono@sullcrom.com

/s/ *Seth P. Hayes*
Seth P. Hayes, Esq. (WVSB # 10381)