**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**(BECKLEY DIVISION)**

| | | |
|---|---|---|
| WHITE SULPHUR SPRINGS HOLDINGS, LLC a Texas Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 5:26-cv-00257 The Honorable Frank W. Volk |
| JAMES C. JUSTICE, II, Individually; CATHY L. JUSTICE, Individually; JAMES C. JUSTICE, III, Individually; GREENBRIER HOTEL CORPORATION, a West Virginia Corporation; GREENBRIER MEDICAL INSTITUTE, LLC, a West Virginia Limited Liability Company; OAKHURST CLUB, LLC, a West Virginia Limited Liability Company; GREENBRIER GOLF AND TENNIS CLUB CORPORATION, a West Virginia Corporation; GREENBRIER LEGACY COTTAGE DEVELOPMENT COMPANY I, Inc., a West Virginia Corporation; GREENBRIER LEGACY COTTAGE DEVELOPMENT II, Inc., a West Virginia Corporation. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
<u>**EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**</u>

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff White Sulphur Springs Holdings, LLC ("WSSH") respectfully files this memorandum of law in support of its Emergency Motion for Preliminary Injunction (the "Motion") to enjoin Defendants James C. Justice, II, Cathy L. Justice, and James C. Justice, III (the "Justice Defendants"), and Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Oakhurst Club, LLC, Greenbrier Golf and Tennis Club Corporation, Greenbrier Legacy Cottage Development Company I, Inc., and

Greenbrier Legacy Cottage Development Company II, Inc. (the "Greenbrier Resort Defendants" and collectively with the Justice Defendants, the "Defendants").

## I.    PRELIMINARY STATEMENT

This case involves Defendants' failure to satisfy millions upon millions of dollars of obligations that are secured by collateral intertwined with the historic West Virginia vacation spot: the Greenbrier Resort. Defendants incurred significant debt obligations to Carter Bank & Trust ("CBT"), which obligations were converted into confessed judgments. CBT, WSSH's predecessor in interest, agreed to forbear collection of the obligations fourteen times before assigning all of its positions with respect to Defendants to WSSH. WSSH now stands in the shoes of CBT, has refused to extend the agreement to forbear collection a fifteenth time, and has brought this action seeking specific performance and declaratory relief. In the alternative to the appointment of a receiver over the assets of the Greenbrier Resort Defendants, WSSH is seeking a preliminary injunction to preserve and protect its collateral—specifically to prevent Defendants from diverting revenues to unrelated businesses, prevent them from depleting cash reserves, and ensuring compliance with their contractual obligations to WSSH.

Injunctive relief is required here because the Greenbrier Resort's current ownership and management have, among other things, failed to satisfy their obligations to private and governmental entities and allowed the Greenbrier Resort to become rundown, risking permanent damage to its reputation and goodwill. For example, the public record contains evidence that the Justice Defendants have misappropriated revenue and diverted it to their other, unrelated businesses. Not only have Defendants failed to pay their debts, but their misappropriation of funds has caused the Greenbrier Resort's property to deteriorate—residents of the local community complain about Defendants' failure to pay their local contractors, employees, and vendors,

unkempt grounds, and peeling paint. In addition, Defendants have at times failed to pay various taxes, endangering the Greenbrier Resort's operations, licenses, and raising the risk that taxing authorities will place further liens on the properties.

The entry of a preliminary injunction is therefore critical, not only to protect the value of the collateral securing Defendants' debts to WSSH, but to keep the Greenbrier Resort running smoothly for the benefit of its numerous employees, guests, and the larger surrounding community.

## II.      RELEVANT FACTUAL BACKGROUND

**A.      Defendants Accrued Millions in Debt, Which They Owe to WSSH.**

Defendants accrued hundreds of millions of dollars in debt from 2010 through 2023 and became indebted to CBT through various loan documents, promissory notes, and other financing arrangements. After defaulting on various loan obligations, Defendants consented to judgments being entered against them, which judgments have been confirmed. The most recent agreement between CBT and Defendants was the Fourteenth Amended and Restated Forbearance Agreement, dated February 28, 2026 ("14th FBA"), which gave CBT the "right, without the consent of or notice to any of the Justice Parties or any other person or entity, to assign any or all of its rights, benefits, duties and/or obligations hereunder."  (*See* First Amended Complaint ("FAC"), Ex. A, § 18(c).)  CBT exercised that right when it entered into the Judgments Sale Agreement with WSSH on March 25, 2026, assigning all of Defendants' obligation to WSSH. (FAC ¶ 22.)

Defendants' collateral to WSSH includes several Deeds of Trust and Security Instruments, which encumber various operating entities of the Greenbrier Resort, as incorporated in the First Amended Complaint, specifically including the following:

| DEEDS OF TRUST | | |
|---|---|---|
| **DOCUMENT** | **DEFENDANT GRANTOR/DEBTOR** | **AMOUNT** |
| Credit Line Deed of Trust dated March 29, 2010 | Greenbrier Hotel Corporation | $45 million |
| Credit Line Deed of Trust dated April 8, 2016 | Oakhurst Club, LLC | Originally $64 million but was increased to $350 million after mesne modifications |
| Credit Line Deed of Trust, dated April 8, 2016 | Greenbrier Medical Institute, LLC | Originally $64 million but was increased to $350 million after mesne modifications |
| Credit Line Deed of Trust dated May 24, 2016 | Greenbrier Golf and Tennis Club Corporation | Originally $64 million but was increased to $350 million after mesne modifications |
| Credit Line Deed of Trust, Assignment of Leases and Rents, As-Extracted Filing and Fixture Filing, dated June 30, 2020 | Greenbrier Hotel Corporation and Greenbrier Legacy Cottage Development Company I, Inc. | Originally $178 million but was increased to $350 million after mesne modifications |
| SECURITY INTERESTS | | |
| **DOCUMENT** | **DEFENDANT GRANTOR/DEBTOR** | **SPECIFIC DEBT, IF ANY** |
| Security Agreement dated March 29, 2010 | Greenbrier Hotel Corporation | |
| Security Agreement dated May 22, 2017 | Greenbrier Hotel Corporation | $60 million |
| Security Agreement dated December 1, 2017 | Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Greenbrier Golf and Tennis Corporation, and other non-parties | $129,600,910.80 |
| Security Agreement dated January 1, 2018 | Oakhurst Club, LLC, and other non-parties | |
| Security Agreement dated June 30, 2020 | Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Greenbrier Golf and Tennis Corporation, Oakhurst Club, LLC, and other non-parties | |

| Security Agreement dated August 1, 2021 | Greenbrier Hotel Corporation, Greenbrier Medical Institute, LLC, Greenbrier Golf and Tennis Corporation, Oakhurst Club, LLC, and other non-parties | |

In February 2023, CBT filed numerous confessions of judgments against the Defendants in the amount of their indebtedness at that time (the "Confessed Judgments"). The Confessed Judgments include:

| CONFESSED JUDGMENTS | | |
| --- | --- | --- |
| DOCUMENT | DEFENDANT GRANTOR/DEBTOR | ORIGINAL AMOUNT |
| Confession of Judgment for Loan #022231663972 | Greenbrier Golf and Tennis Club Corporation, James C. Justice, II, and Cathy L. Justice | $45,002,027.63 |
| Confession of Judgment for Loan #022231215388 | Greenbrier Hotel Corporation, James C. Justice, II, and Cathy L. Justice | $51,551,610.20 |
| Confession of Judgment for Loan #042137284583 | Greenbrier Medical Institute, LLC, James C. Justice, II, and Cathy L. Justice | $22,835,762.75 |
| Confession of Judgment for Loan #022231443470 | Oakhurst Club, LLC, James C. Justice, II, and Cathy L. Justice | $21,304,934.29 |
| Confession of Judgment for Loan #21841 | James C. Justice, II, Cathy L. Justice, and James C. Justice, III | $508,381.50 |

Despite the Confessed Judgments and Carter Bank's fourteen written agreements to collect amounts owed from the Defendants, they have failed and refused and continue to fail and refuse to satisfy their obligations. First to Carter Bank, and now to WSSH. As of February 28, 2026, Defendants owed a total of over $141 million to CBT on just the items listed above—although the total outstanding balance increases daily due to the accumulation of interest and fees.

**B.** **Defendants' Continued Failure to Protect the Greenbrier Resort Endangers its Value and the Local Economic Community.**

Unfortunately, the Justice Defendants, which largely control the Greenbrier Resort Defendants, have consistently failed to protect the Greenbrier Resort. WSSH has a direct interest

in these failures because those assets are the collateral securing millions of dollars of debt that Defendants owe to WSSH. One example of Defendants' improper conduct: Defendants are prohibited from "create[ing], incur[ing], assum[ing], or suffer[ing] to exist any lien or security interest upon or in any Collateral." (FAC ¶ 37.) Yet Defendants refused to comply with demands that they maintain insurance for the collateral properties, not encumber the properties with additional liens, and provide financial records for the Greenbrier Resort to WSSH, among other things. (FAC ¶ 38.) Further, Defendants' mismanagement of their finances and business operations is well documented and widely discussed in both Greenbrier County and the press. (FAC ¶ 45.)

The Greenbrier Resort is Greenbrier county's largest employer, employing roughly 1,500–2,000 people every year and brings hundreds of millions in tourism to the county. (FAC ¶ 40.) Despite the responsibility that comes with running an operation that is the county's "economic driver," Defendants routinely fail to protect their assets, allowing physical and financial disrepair to overtake the Greenbrier Resort. For example:

- Late last year, certain Defendants reached an agreement with the Internal Revenue Service to pay nearly $5.2 million in overdue taxes, including taxes relating to the Greenbrier Resort. Defendants reached the agreement after the Internal Revenue Service filed liens totaling more than $8 million against one or more of the Justice Party Defendants and after West Virginia tax officials filed $1.4 million in liens against the Greenbrier Resort. (FAC ¶ 41(a).)

- Earlier this month, it was reported that The Greenbrier Clinic, located in the Greenbrier Resort, failed to meet the FDA's clinical image quality standards for mammographs. This resulted in the suspension of all mammography operations at the facility. Patients were then informed that, from late 2023 to early 2026, the quality of The Greenbrier Clinic's breast imaging services did not meet industry standards. (FAC ¶ 41(b).)

- Defendants have, at times, not paid the health insurance premiums or 401(k) employer match contributions for the Greenbrier Resort's employees. (FAC ¶ 41(c).)

- The Greenbrier Resort Defendants are significantly underinsured. (FAC ¶ 41(d).)

- The Greenbrier Resort Defendants are failing to meet their tax obligations to government entities, including the State of West Virginia, risking additional liens being placed on the

Greenbrier Resort. For example, Greenbrier Hotel Corporation is indebted to the State of West Virginia for over $2 million in unpaid sales taxes. (FAC ¶ 41(e).)

- The Greenbrier Resort Defendants failed to pay their real estate taxes for 2025. (FAC ¶ 41(f).)

- The Greenbrier Resort Defendants commonly fail to pay regular vendors. (FAC ¶ 41(g).)

- The Greenbrier Resort Defendants either failed to pay their local contractors entirely or paid only deeply discounted amounts. (FAC ¶ 41(h).)

WSSH's concerns about the Defendants' financial state and regular mismanagement are especially relevant because WSSH has reason to believe the Justice Defendants have been and continue to divert significant sums of money from the operation of the Greenbrier Resort Defendants to support other unrelated business interests to the detriment of WSSH's collateral. (FAC ¶ 44.) And Defendants have a long, public history of failure to pay their debts. For example:

- According to news articles, in January 2026 Greenbrier Hotel Corp. owed a Louisiana-based bank, First Guaranty Bank, more than $47 million. *See* Mike Tony, *Justice-controlled Greenbrier Hotel Corp. debt has risen past $47 million, bank says*, WVU Today (Jan. 6, 2026) https://wvpress.org/breaking-news/justice-controlled-greenbrier-hotel-corp-debt-has-risen-past-47-million-bank-says/. (FAC ¶ 45(a).) The article noted that First Guaranty Bank asked the United States District Court for the Southern District of West Virginia to enter judgment against Greenbrier Hotel Corp. totaling $47.7 million. (FAC ¶ 45(a).). The case is currently pending in the Southern District of West Virginia, and First Guaranty Bank's current operative complaint asserts that the Greenbrier Hotel Corp. owes more $47 million. *First Guaranty Bank v. Greenbrier Hotel Corporation*, No. 5:25-cv-00687, Dkt. 40, ¶ 16 (S.D. W. Va. Dec. 30, 2025) ("As of December 30, 2025, there remains due and payable on the Main Street Loan . . . an aggregate total of $47,716,883.53.").

- On January 10, 2025, Forbes magazine published an article finding that liabilities of certain of the Justice Defendants total more than $1 billion in the form of personally guaranteed bank loans, debt, court judgments, and environmental liabilities. *See* Christopher Helman, *This Former Billionaire, And New U.S. Senator, Is Now Broke*, Forbes (Jan. 10, 2025), https://www.forbes.com/sites/christopherhelman/2025/01/10/this-former-billionaire-and-new-us-senator-is-now-broke/. (FAC ¶ 45(b).)

- On January 1, 2025, the United States District Court for the Western District of Virginia issued a garnishment summons to James C. Justice, II, arising out of a judgment Western Surety obtained against him. Final Judgment, *Western Surety Company v. James C Justice, II, et al.*, No. 7:23-cv-00524-MFU (W.D. Va. Jan. 2, 2025), Dkt. No. 23. (*See* FAC ¶ 45(c).)

- Two Kentucky companies recently presented evidence in federal court in Kentucky alleging that the Justice Parties are hiding hundreds of millions of dollars in assets to avoid paying judgments awarded and sanctions ordered against James C. Justice, III. *See New London Tobacco Market, Inc., et al., v. Kentucky Fuel Corporation and James C. Justice Companies, Inc.*, No. 6:12-CV-91-GFVT-HAI (E.D. Ky. Mar. 5, 2026), Dkt. No. 838-1. (*See* FAC ¶ 45(d).)

Entry of a preliminary injunction against Defendants to prevent them from diverting revenue to other businesses, and prevent them from depleting cash reserves, is particularly warranted given the Justice Defendants' mounting legal and financial troubles and their ongoing waste, fraud, and abuse of the collateral securing their debts to WSSH (*i.e.*, the Greenbrier Resort Defendants' property). (FAC ¶ 44.) The preliminary injunction proposed here would protect the value of WSSH's collateral by requiring Defendants to remain current on their taxes and other payments, as well as their ongoing contractual obligations to WSSH.

## C. The Injunctive Relief WSSH Seeks is Consistent with the Terms of the 14th FBA.

The 14th FBA contains a long list of promises the Defendants made to preserve and protect the Greenbrier Resort until Defendants had paid off their obligations. (14th FBA, Schedule 3.) For example, Defendants agreed to, *inter alia*:

- discharge all tax liens (14th FBA Sch. 3 § 1.06);

- maintain proper records for the Report (14th FBA Sch. 3 § 2.02);

- maintain the properties, including the Greenbrier Resort (14th FBA Sch. 3 § 2.03);

- maintain fire and other risk insurance, public liability insurance, and such other insurance as WSSH may require (14th FBA Sch. 3 § 2.05);

- furnish WSSH with Defendants' internally prepared balance sheet and income statement within thirty days of the end of each month (14th FBA Sch. 3 § 2.08);

- provide a Principals' Compliance Certificate on the 1st and 15th day of each month identifying the date, amount and transferee of each transfer of funds made by Greenbrier Hotel (14th FBA Sch. 3 § 2.08); and

- refrain from engaging in a broad range of conduct, including transactions with other Justice Defendant entities (14th FBA Sch. 3 § 3).

Defendants further agreed to fully cooperate with all efforts to protect the Greenbrier Resort and its value. Specifically, the Justice Defendants agreed to:

> assist and cooperate fully without cost to CBT, and to cause all officers, employees, agents and all other persons under the direction and/or control of any of the Justice Parties to assist and cooperate fully without cost to CBT, with the securing, protecting and liquidating of the collateral that secures the Judgments and/or the Bank Indebtedness.

(14th FBA § 9.) The Justice Defendants have not complied with any of these obligations.

Concerned by Defendants' actions, WSSH wrote to them on April 21 demanding that Defendants honor their ongoing obligations under the 14th FBA. (FAC ¶¶ 35–37, Ex. X). Defendants did not substantively respond other than to state: "We do not regard White Sulphur Springs Holdings, LLC, as the holder of any valid rights against [Defendants]." (FAC ¶ 38, Ex. Y).

### III. ARGUMENTS AND AUTHORITIES

The primary function of a preliminary injunction is to preserve the status quo until the final disposition of the case. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). To assess whether preliminary injunctive relief is appropriate, the Court considers the following factors: (1) WSSH's probability of success on the merits; (2) the threat of irreparable harm to WSSH; (3) the balance between the harm to WSSH and the potential harm to Defendants if the relief is granted; and (4) whether an injunction serves the public interest. *Scott v. Bierman*, 429 F. App'x 225, 228–29 (4th Cir. 2011).

All four factors are met here. WSSH has a high likelihood of proving that Defendants failed to comply with their obligations under the 14th FBA. Defendants' actions in breach of the 14th FBA, and in diverting revenue to other unrelated businesses, threaten the value of WSSH's collateral, which would cause irreparable harm. Injunctive relief will prevent any further

degradation of the Greenbrier Resort without causing any monetary harm to Defendants and will serve the public's interest in keeping the Greenbrier Resort running smoothly for its numerous employees, guests, and the larger surrounding community. The Court should grant the requested injunctive relief.

**A.      WSSH is likely to succeed on the merits.**

Under the first factor, WSSH need not establish a "certainty of success" on its claims but only a "clear showing that [WSSH is] likely to succeed at trial." *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020) (internal quotations omitted). WSSH satisfies this burden.

*First,* WSSH's probability of success on the merits of its claims in the First Amended Complaint is high considering Defendants have notified WSSH in writing that they will not assist WSSH in "securing, protecting and liquidating of [WSSH's] collateral." (FAC ¶ 38, Ex. Y); *see First United Bank & Tr. v. Square at Falling Run, LLC*, No. 1:11CV31, 2011 WL 1563108, at *11 (N.D. W. Va. Mar. 31, 2011) (finding high probability of success where defendant "admits it has not paid toward its obligations"); *U.S. Bank Nat'l Ass'n v. Sayona Hosp., LLC*, No. 3:14-cv-62-GMG, 2014 WL 2918549, at *5 (N.D. W. Va. June 25, 2014) (high probability of success on breach claim "supported by the loan documents").

*Second*, WSSH's likelihood of success is evidenced by Defendants' agreement in the 14th FBA that CBT had an absolute right to assign its interests at issue here to anyone, including WSSH:

> **CBT shall have the right**, without the consent of or notice to any of the Justice Parties or any other person or entity, **to assign any or all of its rights**, benefits, duties and/or obligations **hereunder**, under any of the Judgments, under any of the Bank Indebtedness, under any of the Bank Debt Collateral Documents, under any of the Bank Loan Documents, under any of the Other Bank Credit Relationships Indebtedness, under any of the Other Bank Credit Relationships Documents and/or under any of the New Bank Documents, **and, upon such assignment, (i) the assignee shall be the sole, absolute and exclusive owner of the rights, benefits, duties and obligations so assigned** and shall have the exclusive right to enforce the rights, benefits, duties and/or obligations so assigned [and] (ii) all references

herein to CBT shall thereafter refer to such assignee with respect to any of the rights, benefits, duties or obligations so assigned . . . . (Emphasis supplied).

(14th FBA § 18(c).); *see Fed. Deposit Ins. Corp. v. R&M Invs., LLC*, 2012 WL 12904014, at *3 (D.S.C. Aug. 8, 2012) ("Plaintiff appears to have a very high likelihood of success on the merits in this action, as Plaintiff merely seeks to enforce what appear to be valid and enforceable Loan Documents and a Forbearance Agreement.").

*Third*, WSSH's likelihood of success is strong because Defendants executed broad waivers of all defenses, rights, claims, counterclaims actions, and causes of action with respect to their indebtedness under the 14th FBA, including the following provisions:

> **None of the Justice Parties has any defenses**, affirmative or otherwise, rights of setoff, rights of recoupment, claims, counterclaims, actions or causes of action of any kind or nature whatsoever against CBT . . . directly or indirectly, arising out of, based upon, or in any manner connected with, any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, **which occurred, existed, was taken, permitted, or began prior to or on the date of this Agreement** or accrued, existed, was taken, permitted or begun in accordance with, pursuant to, or by virtue of any of the Bank Indebtedness, any of the Bank Debt Collateral Documents, any of the Bank Loan Documents, any of the Judgments, or any of the indebtedness in connection with any other credit relationships between any of the Justice Parties and any of the CBT Parties . . . ; TO THE EXTENT THAT ANY SUCH DEFENSES, AFFIRMATIVE OR OTHERWISE, RIGHTS OF SETOFF, RIGHTS OF RECOUPMENT, CLAIMS, COUNTERCLAIMS, ACTIONS OR CAUSES OF ACTION EXIST, SUCH DEFENSES, RIGHTS, CLAIMS, COUNTERCLAIMS, ACTIONS AND CAUSES OF ACTION ARE HEREBY FOREVER WAIVED, DISCHARGED AND RELEASED BY EACH OF THE JUSTICE PARTIES. (Emphasis supplied).

(14th FBA § 2(a).)

> Each of the Justice Parties hereby expressly waives any and all claims or rights now or hereafter arising from or related to any delay by CBT in exercising any rights or remedies under this Agreement, any of the Judgments, under any of the Bank Debt Collateral Documents, under any of the Bank Loan Documents and/or under any of the Other Bank Credit Relationships Documents, including, without limitation, any delay in foreclosing under any of the Bank Debt Collateral Documents.

(14th FBA § 3.)

In fact, under the 14th FBA, Defendants are contractually obligated to cooperate with respect to "securing, protecting and liquidating of collateral that secures the Judgments and/or the Bank Indebtedness":

> Upon the termination of the forbearance . . . each of the Justice Parties hereby agrees to assist and cooperate fully without cost to CBT, and to cause all officers, employees, agents and all other persons under the direction and/or control of any of the Justice Parties to assist and cooperate fully without cost to CBT, with the securing, protecting and liquidating of the collateral that secures the Judgments and/or the Bank Indebtedness.

(14th FBA § 9.)

Considering all of the foregoing—in particular Defendants' waivers of all defenses to WSSH's claims—WSSH is very likely to prevail on the merits of its claims.

**B.     Defendants' conduct threatens irreparable harm to WSSH.**

The possibility of irreparable injury to WSSH's interest in the collateral is significant given that the Justice Defendants are likely diverting revenue generated by the Greenbrier Resort Defendants to other entities, leaving the Greenbrier Resort in deteriorating and precarious condition. (*See supra* Section II(B).) This not only damages WSSH and Defendants' many other creditors but also the local community, including employees who have not received their health benefits or 401(k) contributions under the Justice Defendants' leadership. (FAC ¶ 41(c).)

Indeed, the Greenbriar Resort Defendants are currently delinquent in their payments to the vendors and local contractors necessary to maintain the premises. (FAC ¶ 41(d).)  They are also delinquent in their payment of real estate and other taxes to the State of West Virginia as evidenced by over the over $3.8 million of tax liens that have been placed on property owned by Greenbrier Hotel Corporation. (FAC ¶ 41 (e)-(f), Exs. AA–II). The Greenbrier Resort Defendants' failure to pay certain taxes risks the loss of their license to do business pursuant to West Virginia Code § 11-12-5(b).

An injunction is necessary to stop the *ongoing* loss of value to the collateral securing Defendants' debts to WSSH, especially considering Defendants' refusal to comply with their obligations under the 14th FBA to turn over the Greenbrier Resort's books and records to WSSH. (FAC ¶ 38.) Indeed, WSSH sought to enforce its rights under the 14th FBA by requesting financial records for the Greenbrier Resort—records that it could use to confirm whether Resort revenues have been diverted to unrelated businesses instead of being used to fund the operation of the resort and payment of debt. (FAC ¶¶ 35–37.) Beyond failing to provide the records and confirming they have not misappropriated Resort Funds, Defendants flatly refused to acknowledge WSSH's rights, writing that Defendants "do not regard White Sulphur Springs Holdings, LLC, as the holder of any valid rights against [Defendants]." (FAC ¶ 38, Ex. Y.)

## C.      The balance of harms favors WSSH.

The actual harm to WSSH if a preliminary injunction is not issued dwarfs the potential harm to the Defendants because in the absence of an injunction, the value of WSSH's collateral will continue to diminish. The value is already impacted by the Greenbriar Resort Defendants' persistent failure to pay the vendors and local contractors necessary to maintain the premises, to pay real estate and other taxes, which risks the loss of their license to do business pursuant to West Virginia Code § 11-12-5(b), to meet payroll obligations to the Greenbrier Resort staff necessary to provide guest services at the expected levels for a luxury resort, and to ensure resort revenue is not being diverted to unrelated businesses. (FAC ¶¶ 41, 44.) This harm would be exacerbated if WSSH was left only to pursue foreclosure remedies to collect on its judgments, which could severely impact the operation and therefore the value of the Greenbrier Resort. (*See* FAC ¶ 72.) And the harm would be further exacerbated if the operation of the Greenbrier Resort is impacted such that its operations must cease because not only would the value of the property itself be diminished, but the Greenbrier Resort's trademarks would also be diminished in value and potentially lost.

Defendants will suffer no monetary injury from the requested injunctive relief, particularly because the proposed preliminary injunction simply requires Defendants to comply with their existing contractual obligations. And while Defendants will lose the ability to redirect revenue from the Greenbrier Resort to their unrelated businesses, that harm is not recognizable here because it is fraudulent in nature. The plain language of the 14th FBA further underpins this factor because it authorizes WSSH as creditor to exercise any remedies available to it "at law, in equity, or otherwise." (14th FBA § 9.) This includes injunctive relief to protect the status quo as to the value of WSSH's collateral. *Runway Dev. Co., LLC v. E. Coast Hous., Inc.*, No. 4:21-cv-00341-JD, 2021 WL 5911211, at *3 (D.S.C. Mar. 15, 2021) (granting preliminary injunction to prevent encumbering the property at issue, where contract authorized plaintiff to pursue "any other remedies available at law or in equity, including specific performance").

**D.      A preliminary injunction would serve the public interest.**

A preliminary injunction will serve WSSH's—and the community's—interest in the Greenbrier Resort's continued successful operation, as well as protecting WSSH's interest in the property the Greenbrier Resort Defendants own and operate. The requested injunction would serve the public interest by requiring Defendants to pay outstanding real estate and sales taxes, thereby preventing any risk of loss of their license to do business pursuant to West Virginia Code § 11-12-5(b). Critically, a preliminary injunction would end the diversion of revenue to unrelated businesses that should be used to pay operational expenses. (FAC ¶ 44.) The requested injunction would thus ensure the continued operation of the Greenbrier Resort, including allowing the Greenbrier Resort to retain its outstanding and dedicated staff, honor existing commitments to its guests and contractual counterparties, and preserve its status as the premier resort destination in West Virginia.

Further, the public is best served when courts enforce provisions of valid contracts. *See Smithy Braedon Co. v. Hadid*, 825 F.2d 787, 790 (4th Cir. 1987) ("[T]he most enlightened judicial policy is to let people manage their own business in their own way, unless the ground for interference is very clear."). Here, the 14th FBA is a valid and binding contract between WSSH and Defendants, and a preliminary injunction would support the public's "interest in protecting the legitimate expectations of parties to a contract." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 612 F. Supp. 3d 563, 598 (E.D. Va. 2020).

**E.     WSSH's requested relief would best preserve the status quo.**

Courts in the Fourth Circuit determine the status quo to be preserved by a preliminary injunction with reference to the "last uncontested status between the parties which preceded the controversy." *See Stemple v. Bd. of Ed. of Prince George's Cnty.*, 623 F.2d 893, 898 (4th Cir. 1980). Where Defendants have "recently disturbed the status quo," the court can require them to reverse their actions to "restore[] . . . the status quo ante." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012).

Here, the last uncontested status was when Defendants agreed to the provisions of the 14th FBA with WSSH's predecessor in interest, in exchange for further delaying payments on the underlying judgments. Requiring Defendants to comply with those obligations would not disturb the status quo. *See, e.g.*, *Sogefi USA, Inc. v. Interplex Sunbelt, Inc.*, 538 F. Supp. 3d 620, 631 (S.D. W. Va. 2021) (granting preliminary injunction and enjoining defendant not only from violating its contractual obligations but also ordering defendant to continue performance of its contractual obligations); *Steves & Sons*, 612 F. Supp. 3d at 580 (granting preliminary injunction and ordering defendants to revert to their prior practices under the agreement, including delivering all outstanding orders the defendant failed to deliver).

## IV. CONCLUSION

Defendants' mismanagement of the Greenbrier Resort, failure to pay its vendors, employees, and outstanding taxes, and failure to comply with its contractual obligations to WSSH warrants a preliminary injunction. WSSH has shown it is likely to succeed on the merits of its claims; it will suffer irreparable harm; the balance of harms favors WSSH; and an injunction would not prejudice the public interest.

WSSH therefore requests that the Court enter a preliminary injunction that until payment in full of the Bank Indebtedness to WSSH, the Defendants are required to strictly comply with all terms of the 14th FBA and are prohibited from:

i. collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of funds or revenues derived from the operation of the Greenbrier Resort outside the ordinary course of business without the approval of the court and from paying any such funds to or for the benefit of themselves or any of their affiliates;

ii. depleting cash reserves in an amount exceeding 4% of its capital expenditures;

iii. dissipating or otherwise diminishing the value of any real property that is included in the Greenbrier Resort, including by causing any lien to be filed against or otherwise encumbering such property;

iv. selling or attempting to sell any real property that is included in the Greenbrier Resort;

v. removing any property from the Greenbrier Resort and from removing, destroying, concealing, changing, or altering in any manner any of the books and records of the Greenbrier Resort; and

vi.  incurring any further liens, including tax liens, on any real property that is included in the Greenbrier Resort.

WSSH further seeks all other and further relief to which it may be justly entitled.

Respectfully submitted,

**WHITE SULPHUR SPRINGS HOLDINGS, LLC**

By counsel,

/s/ *Seth P. Hayes*
Seth P. Hayes, Esq. (WVSB #10381)
Zachary H. Warder, Esq. (WVSB # 13566)
JACKSON KELLY PLLC
3000 Swiss Pine Way, Suite 200
P.O. Box 619
Morgantown, WV  26501
shayes@jacksonkelly.com
zachary.warder@jacksonkelly.com

And

Ellen Cappellanti, Esq. (WVSB #627)
Albert F. Sebok, Esq. (WVSB #4722)
Elizabeth B. Elmore (WVSB #6061)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV  25301-3202
ecappellanti@jacksonkelly.com
asebok@jacksonkelly.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### (BECKLEY DIVISION)

WHITE SULPHUR SPRINGS HOLDINGS, LLC )
a Texas Limited Liability Company, )
)
        Plaintiff, )
)
v. )     Case No. 5:26-cv-00257
)     The Honorable Frank W. Volk
JAMES C. JUSTICE, II, Individually; )
CATHY L. JUSTICE, Individually; )
JAMES C. JUSTICE, III, Individually; )
GREENBRIER HOTEL CORPORATION, )
a West Virginia Corporation; )
GREENBRIER MEDICAL INSTITUTE, LLC, )
a West Virginia Limited Liability Company; )
OAKHURST CLUB, LLC, )
a West Virginia Limited Liability Company; )
GREENBRIER GOLF AND TENNIS )
CLUB CORPORATION, )
a West Virginia Corporation; )
GREENBRIER LEGACY COTTAGE )
DEVELOPMENT COMPANY I, Inc., )
a West Virginia Corporation; )
GREENBRIER LEGACY COTTAGE )
DEVELOPMENT II, Inc., )
a West Virginia Corporation. )
)
        Defendants. )

## CERTIFICATE OF SERVICE

I, Seth P. Hayes, certify that on the 1st day of May, 2026, the foregoing "***Plaintiff's Memorandum of Law in Support of Emergency Motion for Preliminary Injunction***" was filed using the Court's CM/ECF system. Counsel of record will be served by the Court's CM/ECF system as follows:

Steven R. Ruby, Esquire
Raymond S. Franks II, Esquire
David R. Pogue, Esquire
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

H. Rodgin Cohen, Esquire
Robert L. Jones IV, Esquire
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY10004
Telephone: (212) 558-4000
cohenhr@sullcrom.com
jonesrob@sullcrom.com

Amanda Flug Davidoff, Esquire
Oliver W. Engebretson-Schooley, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
davidoffa@sullcrom.com
engebretsono@sullcrom.com

/s/ *Seth P. Hayes*
Seth P. Hayes, Esq. (WVSB # 10381)