**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

WHITE SULPHUR SPRINGS HOLDINGS, LLC,

    Plaintiff,

v.

JAMES C. JUSTICE, II, *et al.*,

    Defendants.

Civil Case No. 5:26-cv-00257

Hon. Frank W. Volk

**DEFENDANTS' MOTION TO CONTINUE**
**BRIEFING DEADLINES AND SCHEDULED HEARINGS**

As of May 21, 2026, Defendants have obtained a term sheet for new financing that will allow them to repay the total amount of debt that Plaintiff White Sulphur Springs Holdings, LLC claims it is owed. That repayment will moot all pending motions and resolve this action. Defendants therefore respectfully move this Court to continue all briefing deadlines for 60 days, continue the hearings currently scheduled for June 1, 2026, and June 8, 2026, and schedule a telephonic status conference for the week of June 22, 2026, or any other date that is convenient for the Court.

### I. BACKGROUND

The Plaintiff in this action is White Sulphur Springs Holdings, LLC ("WSSH"), a Texas limited liability company formed on March 12, 2026.[1] WSSH's sole member is OHO Corporation. (ECF No. 37 ("Am. Compl.") ¶ 1.) OHO Corporation is in turn wholly owned by TRT Holdings,

---

[1] *See* Texas Comptroller of Public Accounts, *Franchise Tax Account Status*, https://comptroller.texas.gov/taxes/franchise/account-status/search/32104872745 (last visited May 22, 2026).

Inc. ("TRT"), the parent holding company that also owns Omni Hotels & Resorts. (*See* Disclosure of Corp. Affiliations (ECF No. 2).) Defendants are Senator James C. Justice II; his wife, Cathy L. Justice; their son, James C. Justice III; and several entities owned by the Justice family. As relevant here, the Justice family has owned and operated The Greenbrier Resort in White Sulphur Springs, West Virginia for nearly two decades.

Starting in early 2010, Virginia bank Carter Bank & Trust ("Carter Bank") began extending loans to Defendants that were secured by The Greenbrier and associated properties (the "Loans"). (*See* Am. Compl. ¶¶ 13–14; Ex. B (ECF No. 38-2) through Ex. L (ECF No. 38-12).) On or about March 25, 2026, WSSH purported to purchase the Loans from Carter Bank. (*See* Am. Compl. ¶ 22.) Shortly thereafter, WSSH ignored Defendants' offer to repay the Loans in full and instead sent a "Notice of Default and Termination of Forbearance." (*See* ECF No. 44-3 (Justice III Decl.) ¶¶ 35–38; ECF No. 44-9 at 1–3 (Default Notice).) The same day, WSSH filed this action seeking appointment of a receiver over The Greenbrier and related assets, as well as a preliminary and permanent injunction. (*See* ECF No. 1.) WSSH later amended its complaint to add claims for breach of contract and attorneys' fees and moved for extraordinary equitable relief: appointment of a receiver to take control of The Greenbrier and a preliminary injunction. (*See* ECF No. 37; ECF No. 39; ECF No. 41.)

The stated purpose of WSSH's entire case, including these motions, is to preserve the value of The Greenbrier and other collateral that secures the Loans and to obtain repayment on the Loans. (*See* ECF No. 39 at 2; ECF No. 41 at 2.) None of the ongoing proceedings in this case is now necessary. As of May 21, 2026, Defendants have reached an agreement with a well-qualified, highly capitalized financing partner to secure financing to repay the balance of the Loans in full. Defendants have signed a term sheet with that financing partner and expect that the financing

transaction will close in or around late June 2026. WSSH's claims will soon be moot, as Defendants will repay the Loans in full. The specific terms of the financing are commercially sensitive and subject to a nondisclosure requirement, but Defendants can provide the full term sheet to the Court for *in camera* review if doing so would assist the Court.

Accordingly, all pending deadlines in this matter should be continued pending repayment. This step will save considerable party and Court resources. In addition to WSSH's motions, Defendants moved for a stay of this action pending resolution of related state court proceedings in which Defendants assert that WSSH unlawfully purchased the Loans and thus has no right to pursue this action. (ECF No. 44.) And on May 19, 2026, the West Virginia State Tax Division filed a Motion to Intervene in this action purportedly to protect the statutory priority of certain tax liens. (ECF No. 56.) Under the current Amended Case Management Order (ECF No. 35) and the Federal Rules of Civil Procedure, the case schedule is as follows:

- May 22, 2026

    o WSSH's Response in Opposition to Defendants' Motion to Stay; and

    o Defendants' Responses in Opposition to WSSH's Emergency Motions for Appointment of a Receiver and a Preliminary Injunction.

- May 29, 2026

    o WSSH's Reply in Support of its Emergency Motions for Appointment of a Receiver and a Preliminary Injunction; and

    o Defendants' Reply in Support of Their Motion to Stay.

- June 1, 2026 – Prehearing conference before the Court.

- June 2, 2026 – Response to the Tax Division's Motion to Intervene.

- June 8, 2026 – Evidentiary hearing before the Court.

- June 9, 2026 – Tax Division's Reply in Support of its Motion to Intervene.

- <u>30 Days After Decision on Motion to Stay</u> – The parties have agreed that Defendants' deadline to respond to WSSH's Amended Complaint will be extended to 30 days after a decision on Defendants' Motion to Stay. The parties will submit a stipulation to the Court shortly to memorialize that agreement.

## II. GOOD CAUSE EXISTS TO EXTEND THE BRIEFING DEADLINES AND ADJOURN THE HEARINGS

The Court may continue deadlines "for good cause." Fed. R. Civ. P. 6(b)(1). And a prior scheduling order similarly "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see* Local Rule 16.1(f)(1) (stating deadlines in scheduling order "may be modified for good cause by order"). "'Good cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts." *Ahanchian* v. *Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010). Accordingly, extensions of time "normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." 4B Wright & Miller's Federal Practice & Procedure § 1165 (4th ed. 2026). The Fourth Circuit has held that "the primary consideration is the diligence of the moving party." *Montgomery* v. *Anne Arundel Cnty.*, 182 F. App'x 156, 162 (4th Cir. 2006).

Here, there is good cause for a continuance of the briefing deadlines and adjournment of the scheduled hearings because Defendants' refinancing agreement will allow imminent repayment of the amounts WSSH claims it is owed and will thus moot this case. This entire case, including WSSH's emergency motions for appointment of a receiver and preliminary injunction, is premised on the purported need to protect its interests in collateral that secure Loans for which it is the putative lender while the Loans remain outstanding. (ECF No. 40 at 3; ECF No. 42 at 2–3.) But when the pending refinancing closes and the Loans are repaid—which will likely occur within the next 45 days—WSSH's alleged need for a receiver to seize control of The Greenbrier

and related assets, and its asserted need for an injunction restricting Defendants' use of property and funds, will disappear.

Intervening events often moot or materially undermine requests for prospective equitable relief. As this Court has explained, "[a]ction by a defendant that simply accords all the relief demanded by the plaintiff may moot an action." *W. Va. Highlands Conservancy* v. *Norton*, 161 F. Supp. 2d 676, 679 (S.D.W. Va. 2001) (citing 13A Wright & Miller's Federal Practice and Procedure § 3533.2) (Haden, J.). The Fourth Circuit applied a similar principle in *Fleming* v. *Worker's Compensation Commission*, affirming dismissal of claims for declaratory and injunctive relief where the plaintiff had already been paid the benefits due to him and therefore no longer had a live request for equitable relief. 1996 WL 93843, at *2 (4th Cir. Mar. 5, 1996). Such is the case here. When Defendants complete the refinancing, WSSH's claims in this case and its asserted need for a receiver or preliminary injunction to protect its rights will be eliminated.

Because of the imminent repayment of the Loans and resulting mootness of WSSH's claims, a continuance of the briefing deadlines and adjournment of the scheduled hearings will promote judicial economy and avoid unnecessary burden on the Court and the parties. There is no reason to spend the time of the Court and the parties on complex and laborious proceedings that will imminently be mooted.

A continuance is especially appropriate here because WSSH seeks extraordinary equitable remedies that require a showing of imminent and irreparable harm. *See Manuel* v. *Gembala*, 2010 WL 3860407, at *7 (E.D.N.C. Sep. 30, 2010) (noting that a party seeking a receiver must show "imminent danger that property will be concealed, lost, or diminished in value"); *Williams Ohio Valley Midstream, LLC* v. *Kittle*, 2024 WL 3325532, at *3 (4th Cir. July 8, 2024) (recognizing that a party seeking a preliminary injunction must show actual and imminent harm). Whether such

harm can be shown depends on the circumstances that exist following the refinancing, not the state of affairs before the refinancing is complete.

Finally, Defendants have diligently pursued this action, have complied with all Court-ordered deadlines, and have at all times acted in good faith. *Contra Montgomery*, 182 F. App'x at 162 (affirming denial of motion to amend complaint filed after scheduling order deadline). And WSSH will not be prejudiced by the continuance because it will enable repayment of the Loans while relieving WSSH of the burden of litigating issues that will soon become moot.

For these reasons, Defendants respectfully request that the Court grant the Motion and continue all briefing deadlines for 60 days, continue the pending June 1, 2026 prehearing conference and June 8, 2026 evidentiary hearing, and schedule a telephonic status conference for the week of June 22, 2026, or any other date that is convenient for the Court.

-7-

Respectfully submitted,

/s/ *Steven R. Ruby*

Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
David R. Pogue (WVSB #10806)
CAREY DOUGLAS KESSLER & RUBY
PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone:  (304) 345-1234
Facsimile:  (304) 342-1105
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

/s/ *H. Rodgin Cohen*

H. Rodgin Cohen (WVSB #767)
Robert L. Jones IV (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
cohenhr@sullcrom.com
jonesrob@sullcrom.com

Amanda Flug Davidoff (*pro hac vice*)
Oliver W. Engebretson-Schooley (*pro hac vice*)
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone:  (202) 956-7500
davidoffa@sullcrom.com
engebretsono@sullcrom.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2026, the foregoing document was served upon the following counsel by means of the Court's CM/ECF filing system.

Ellen S. Cappellanti, Esq.
Albert F. Sebok, Esq.
Elizabeth B. Elmore, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV 25301-3202
ecappellanti@jacksonkelly.com
asebok@jacksonkelly.com
ebelmore@jacksonkelly.com

Seth Patrick Hayes, Esq.
Zachary Hanley Warder, Esq.
JACKSON KELLY PLLC
3000 Swiss Pine Way, Suite 200
P.O. Box 619
Morgantown, WV 26501
shayes@jacksonkelly.com
zachary.warder@jacksonkelly.com

R. Clay Hoblit, Esq.
HOBLIT DARLING RALLS HERNANDEZ
& HUDLOW
802 North Carancahua Street
Suite 2100
Corpus Christi, TX 78401
choblit@hdr-law.com

Richard D. Anigian
Charles M. Jones, II
HAYNES AND BOONE, LLP
2801 N. Harwood Street
Suite 2300
Dallas, Texas  75201
rick.anigian@haynesboone.com
charlie.jones@haynesboone.com

/s/ *H. Rodgin Cohen*
H. Rodgin Cohen (WVSB #767)