# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### (BECKLEY DIVISION)

| | | |
|---|---|---|
| WHITE SULPHUR SPRINGS HOLDINGS, LLC a Texas Limited Liability Company, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:26-cv-00257 |
| | ) | The Honorable Frank W. Volk |
| JAMES C. JUSTICE, II, Individually; | ) | |
| CATHY L. JUSTICE, Individually; | ) | |
| JAMES C. JUSTICE, III, Individually; | ) | |
| GREENBRIER HOTEL CORPORATION, | ) | |
| a West Virginia Corporation; | ) | |
| GREENBRIER MEDICAL INSTITUTE, LLC, | ) | |
| a West Virginia Limited Liability Company; | ) | |
| OAKHURST CLUB, LLC, | ) | |
| a West Virginia Limited Liability Company; | ) | |
| GREENBRIER GOLF AND TENNIS | ) | |
| CLUB CORPORATION, | ) | |
| a West Virginia Corporation; | ) | |
| GREENBRIER LEGACY COTTAGE | ) | |
| DEVELOPMENT COMPANY I, Inc., | ) | |
| a West Virginia Corporation; | ) | |
| GREENBRIER LEGACY COTTAGE | ) | |
| DEVELOPMENT II, Inc., | ) | |
| a West Virginia Corporation. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE**
**IN OPPOSITION TO DEFENDANTS' AMENDED MOTION TO STAY**

# I. INTRODUCTION AND STATEMENT OF KEY FACTS

This matter is straightforward. Plaintiff White Sulphur Springs Holdings, LLC ("WSSH") owns numerous unpaid, final, and non-appealable judgments against these Defendants totaling over $141 million (the "Judgments"). (WSSH's 1st Am. Compl. (ECF No. 37, "FAC"), ¶¶ 13-27.) WSSH also holds various deeds of trust, security agreements, and other collateral documents which create senior secured liens against the improved real estate, personal property, and other assets generally comprising The Greenbrier Resort. (*Id.* ¶¶ 14-16 (describing collateral referred to herein as "The Greenbrier Resort").)

The Judgments and related documents are described in the Fourteenth Amended and Restated Forbearance Agreement ("14th FBA") dated and effective February 28, 2026. (*Id.* ¶¶ 14-20.) The 14th FBA is attached to WSSH's Amended Complaint. (Ex. A, FAC.) It is central to this action, and WSSH cites to it throughout this Response as: "14th FBA § xx."

The record is clear: Defendants breached the 14th FBA by, *inter alia*, failing to pay their April 2026 interest payment and all outstanding real-estate taxes. (FAC ¶¶ 28-32.) Even if Defendants had made those payments, the 14th FBA's "Maturity Date" was April 15, 2026, and the forbearance period has expired. (14th FBA § 5.) Either way, Defendants have not satisfied their debts to WSSH. (FAC, *passim.*) Defendants must pay, indefeasibly and in full, the Judgments and all other obligations they owe to WSSH. ***Now***.

But Defendants cannot, or will not, pay. So WSSH moved the Court to appoint a receiver over its collateral securing the Judgments, which includes The Greenbrier Resort. The receivership will preserve The Greenbrier Resort's value and stabilize its operations for the benefit of WSSH and other creditors and stakeholders. (Pls.' Am. Mem. Law in support of Am. Emergency Mot. for Appointment of Receiver, ECF No. 40.)

Defendants could end this action today by paying their debts. Instead, they did what they always do—litigate. Just days after WSSH filed this action, Defendants sued WSSH, its parent entity TRT Holdings, Inc., and three of TRT's officers (the TRT officers together with TRT are collectively referred to as "TRT Defendants") in the Circuit Court of Greenbrier County, West Virginia. Defendants also sued Carter Bank & Trust ("CBT")—which originally obtained the Judgments and then sold them to WSSH—and CBT's parent company, Carter Bankshares, Inc., in the same action. To avoid satisfying their undisputed obligations, Defendants assert a hodgepodge of contractual, equitable, tort, and statutory claims largely aimed at invalidating CBT's sale of the Judgments to WSSH. Defendants also seek a preliminary injunction to enjoin WSSH from exercising any of its creditor rights, which presumably includes seeking relief in this Court. Defendants' Amended Complaint in the state-court action is attached to this Response as Exhibit A.

But Defendants' hasty claims are deeply flawed. First, Defendants lack standing to challenge the sale of the Judgments because they are strangers to the transaction. *Pavone v. NPML Mortg. Acquisitions, LLC*, 874 S.E.2d 21, 25-27 (W. Va. 2022); *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 858 (E.D. Va. 2016). Second, Defendants unequivocally agreed in the 14th FBA that CBT could assign the Judgments to any party it chose ***without*** the consent of or notice to Defendants. (14th FBA § 18(c).) Third, Defendants agreed in the same document that they had no claims or defenses to any actions related to the Judgments. (*Id.* § 2(a).) Fourth, on termination of the forbearance in the 14th FBA, CBT (now WSSH) has "the immediate right to collect the entire amount" of their indebtedness under the Judgments . . . "without notice to or demand on any of the Justice Parties or any other person or entity." (*Id.* § 9.) These are but a few examples of how and why Defendants' claims are meritless.

What's more, Defendants' state-court action violates the mandatory forum-selection provisions in the three contracts that underlie Defendants' claims, which are:

(i) the 14th FBA (§ 18(a));

(ii) a Confidentiality Agreement attached to this Response as Exhibit B (§7(e)); and

(iii) a Second-Lien Note attached to this Response as Exhibit C (§ 11 & "Statement of Key Loan Terms: Governing Law").

Each commercial document was negotiated by sophisticated parties and their counsel. As cited above, each agreement contains a clear and broad forum-selection clause in which Defendants agreed to bring all claims arising from or related to the subject matter of these contracts outside of West Virgina. And Defendants' choice of an improper forum is no innocent error: this Court previously held that a forum-selection clause identical to the 14th FBA's venue clause was enforceable. *Greenbrier Hotel Corp., et al., v. Carter Bank & Trust, et al.*, Case No. 5:23-CV-00731, 2024 WL 1766653 (S.D. W. Va. Apr. 24, 2024) (Volk, J.). Last, the TRT Defendants have challenged personal jurisdiction in the state-court action, and WSSH and the TRT Defendants have filed a motion to dismiss on 12(b)(3) and 12(b)(6) grounds subject to the personal-jurisdiction and venue challenges.

And Defendants' stay request is based in a false narrative. They beg sympathy, casting WSSH as a villain seeking to wrest The Greenbrier Resort from its rightful owners. But their tale ignores that Defendants now lie in the bed they made. To briefly recap, from 2010 to 2013 Defendants accrued hundreds of millions of dollars in debt from CBT through various financing arrangements. (FAC ¶¶ 13-16.) Defendants repeatedly defaulted. To forestall collection (and collection litigation), Defendants and their related entities confessed to judgments now totaling over $350 million in favor of CBT. (*Id.*) A set of those confessed judgments are now the Judgments before this Court. (*Id.* ¶ 16 (describing the Judgments in detail).)

CBT then filed the confessed judgments in the Circuit Court of the City of Martinsville. True to form, again, Defendants later attacked the validity of the confessed judgments—including the Judgments at issue here—in Virgina circuit court. But their delay tactic failed when that court held that the confessed judgments are valid and denied Defendants' efforts to set them aside. *Carter Bank & Trust v. James C. Justice, II, and affiliated cases*; Nos. CL23000110-00 through CL23000120-00, CL23000148-00 through CL23000156-00, and CL23000158-00, 113 Va. Cir. 27, 2024 WL 5454769 (Va. Cir. Ct. Jan. 22, 2024). Thus, the confessed judgments—including the Judgments here—are final and binding under Virginia law. VA. CODE ANN. § 8.01-432.

During this years-long process, and to avoid collection, Defendants and their related parties entered into a forbearance agreement with CBT. CBT extended that agreement fourteen times, with the last being the 14th FBA. (FAC ¶¶ 17-20.) CBT then sold the Judgments and underlying collateral documents to WSSH (*id.* ¶¶ 22-25), just as Defendants agreed CBT could do without their consent. (14th FBA § 18(c).)

Now in control, WSSH declined to forbear a fifteenth time. (FAC ¶¶ 28-32.) Defendants defaulted. (*Id.*) WSSH's obligations to forbear under 14th FBA terminated. (14th FBA § 5.) Defendants must pay, indefeasibly and in full, the Judgments and all other obligations they owe to WSSH today. (FAC ¶¶ 32-33.) Defendants cannot, or will not, pay their debt. (*Id.* ¶ 51.) This Court should not stay WSSH's judgment-enforcement and collateral-preservation efforts just so Defendants can pursue baseless claims in a second-filed action.

## II. LEGAL ARGUMENT

WSSH filed this lawsuit (the "Action") on April 9. Three days later, Defendants filed their Complaint in the Circuit Court of Greenbrier County, West Virginia (the "Second Action"). The parties then amended their respective complaints. Defendants also filed their Amended Motion to

4

Stay and a supporting Memorandum of Law. (ECF No. 45 ("Stay MOL").) Defendants now seek to stay this Action until the Second Action is resolved, all to further delay paying their debts. Defendants' request lacks both factual and legal merit.

**A.      Defendants Ignore the Supreme Court's Decision in *Colorado River*.**

The Court's Case Management Opinion and Order viewed Defendants' stay request as "a rather momentous request in view of the factoring analyses applicable in such settings." (ECF No. 18.) The Court seemed to reference the factors set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). This makes sense: *Colorado River* is a leading authority regarding stays of federal litigation in deference to other actions. As one court observed: "Generally, a party requesting a stay in federal proceedings pending resolution of a state court proceeding invokes the doctrine of *Colorado River* abstention." *Branch Banking & Tr. Co. v. Fishing Vessel TOPLESSS*, No. 12-2364, 2012 WL 6019288, at *4 (D. Md. Nov. 29, 2012) ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.") (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).

But Defendants never mention *Colorado River*. Instead, they argue the Court should consider: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party," quoting this Court's decision in *Godfrey v. United States*, No. 2:24-cv-00355, 2025 WL 3129298, at *1-2 (S.D. W. Va. Nov. 7, 2025). (Stay MOL at 12.) In turn, *Godfrey* drew from the Supreme Court's much earlier decision in *Landis v. N. Am. Co.*, 299 U.S. 255 (1936). *Godfrey*, 2025 WL 3129298, at *1.

To start, it appears from a review of the Court's docket that the plaintiff in *Godfrey* did not oppose the Government's motion to stay. And the Government did not seek a stay in the context of pending state-court proceedings. *Id.* at *1. Rather, it sought a stay because a lapse of congressional appropriations affected the Department of Justice attorneys' ability to work. *Id.* At best, *Godfrey's* application here is tenuous. *Landis* is also far afield. There, the Supreme Court weighed a much different scenario: whether certain utility companies' constitutional challenges to the Public Utility Holding Company Act of 1935 in one action should be stayed pending the outcome of the Securities and Exchange Commission's suit to enforce the same Act against other utilities. *Landis*, 299 U.S. at 250-51. That scenario is not at all similar to the facts and procedural posture here—a second, state-court action filed to forestall progress of a first-filed federal action with many of the same parties present in both actions.

WSSH respectfully submits that *Colorado River* and its progeny provide the proper framework to guide the Court's analysis of whether it should stay this first-filed federal case to accommodate a second-filed state-court action. But if the Court instead applies the *Godfrey* and *Landis* factors, denying the stay is still proper. WSSH addresses these factors in turn below.

**B.      *Colorado River* Instructs That This Action Should Only Be Stayed Upon a Showing of Extraordinary Circumstances, Which Are Absent.**

"The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (internal quotations omitted). "Federal courts are bound by a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005) (quoting *Colorado River*, 424 U.S. at 817). "Federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not." *Id*. (internal quotations omitted).

6

As the *Colorado River* Court wrote: "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. It continued: "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'" *Id.*

In light of this responsibility to exercise its jurisdiction, a federal court may abstain [or stay] under the *Colorado River* doctrine only if two conditions are met. **First**, the "threshold requirement" is the presence of "parallel proceedings in state and federal court." *Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) (citing *Colorado River*, 424 U.S. at 813). **Second**, "'exceptional circumstances' warranting abstention must exist." *Id.* Defendants cannot satisfy either condition.

### 1.    *Parallel proceedings do not exist.*

Mere factual overlap between federal and state-court actions does not a parallel proceeding make. As the Fourth Circuit instructs: "The *Colorado River* doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals." *New Beckley Min. Corp. v. Int'l Union*, 946 F.2d 1072, 1074 (4th Cir. 1991) (internal quotations omitted). "[E]ven state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." *vonRosenberg*, 849 F.3d at 168 (4th Cir. 2017).

This Action and the Second Action involve different causes of action and remedies. Here, WSSH asserts contract claims and requests a receivership over The Greenbrier Resort and related properties. WSSH also seeks related injunctive relief.

Even a cursory review of Defendants' lawsuit shows this Action and the Second Action are far from parallel. (Ex. A, *passim*.) The Second Action asserts claims for breach of implied duty of good faith and fair dealing, promissory estoppel, equitable estoppel, fraud, civil conspiracy to commit fraud, tortious interference with business interests, civil conspiracy to commit tortious interference with business interests, breach of an NDA/Standstill agreement, breach of a second-lien note, violations of the West Virginia Uniform Trade Secrets Act, equitable estoppel, West Virginia conspiracy to restrain trade, West Virginia attempted monopolization, West Virginia refusal to deal, declaratory judgment invalidating the sale of the Judgments, and injunctive relief against WSSH and the TRT Defendants. (Ex. A ¶¶ 69-190.) And the relief Defendants request in the Second Action—(i) recission of the sale of the Judgments to WSSH; (ii) declaratory judgment reducing Defendants' confessed debt; (iii) injunctive relief barring WSSH from collecting on its Judgments; (iv) enhanced damages; and (v) cost, fees, and interest (*id.* ¶ 191)—bears little resemblance to the receivership and injunctive relief WSSH seeks in this Court.

Moreover, the Second Action asserts claims against the TRT Defendants, CBT, and Carter Bankshares. But none of them are parties to this Action. Also, Jillean L. Justice is a plaintiff in the Second Action, but she is not a defendant here. So, while there is overlap between many of the parties in the two actions, there are wide-ranging claims asserted in the Second Action by and against entities and individuals that are not parties to this Action.

This Action and the Second Action are not parallel. The claims are different, a good number of the parties are different, and the relief sought is different. And because Defendants cannot satisfy this "threshold requirement"—*Gannett*, 286 F.3d at 741—the Court's analysis should stop here.

**2.** ***There are no "exceptional circumstances" under well-established factors.***

To determine if exceptional circumstances exist, "a district court must carefully balance several factors, with the balance heavily weighted in favor of the exercise of jurisdiction." *Chase Brexton*, 411 F.3d at 463 (internal quotations omitted). Such factors include:

> (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*GMS Mine Repair & Maint., Inc. v. Baize*, No. 2:21-CV-00184, 2022 WL 351070, at *7 (S.D. W. Va. Feb. 3, 2022) (citing *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002)). Courts should also consider whether either action was initiated as a "defensive tactical maneuver." *See Moses H. Cone*, 460 U.S. at 17 n.20 (internal quotations omitted). WSSH turns to each factor.

### i. The subject matter of the litigation involves property.

The Action involves an iconic property—The Greenbrier Resort. And "[i]t has been held . . . that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colorado River*, 424 U.S. at 818. This factor weighs against a stay.

### ii. The federal forum is not inconvenient.

This Action is pending in the Beckley Division. The Circuit Court of Greenbrier County is in Lewisburg. The two courts are in same state and less than an hour car ride apart. *United Serv. Prot. Corp. v. Lowe*, 354 F. Supp. 2d 651, 656 (S.D. W. Va. 2005) (federal forum was not inconvenient because "both courts in question are located here in West Virginia"). Ironically, Defendants are no strangers to this District. Many of them sued CBT in this Court in 2021. *Bellwood Corp v. Carter Bank & Tr.*, No. 5:21-cv-00320 (S.D. W. Va. May 31, 2021). They sued

CBT here, again, in 2023. *Greenbrier Hotel Corp., et al. v. Carter Bank & Tr.*, No. 5:23-cv-00731, 2024 WL 1766653 (S.D. W. Va. Apr. 24, 2024).

Basic geography and Defendants' actions confirm this Court is not inconvenient to them.

### iii. Concerns of piecemeal litigation do not favor a stay.

Staying this Action is inappropriate even if the two cases proceed concurrently or might end with different results. *Chase Brexton*, 411 F.3d at 465 ("disjointed or unreconcilable results" are "not the threat of piecemeal litigation with which *Colorado River* was concerned"). "The mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Id.* at 465 (quoting *Colorado River*, 424 U.S. at 816). No conflict exists here beyond that inherent in all concurrent litigation.

### iv. WSSH filed this Action first.

This Court obtained jurisdiction first because WSSH filed first. This weighs against granting a stay. The Fourth Circuit has held this factor "weigh[ed] decidedly against abstention" when the federal action was filed first and a state administrative appeal had not proceeded to a hearing. *Chase Brexton*, 411 F.3d at 466; *United Serv. Prot. Corp.* 354 F. Supp. 2d at 657 ("In contrast, when I found the existence of exceptional circumstances in *Eastern Associated Coal Corporation v. Skaggs*, the underlying case had been pending in state court for three years before the federal action to compel arbitration was filed.").

This Court has set a June 8 evidentiary hearing on WSSH's requests for a receivership and injunctive relief. Conversely, there are no hearings or other deadlines currently set in the Second Action. Moreover, the pending personal jurisdiction and venue challenges in the Second Action must be resolved before the request for injunctive relief in the Second Action may proceed. *Painter v. Ballard*, 788 S.E.2d 30, 35 (W. Va. 2016) ("Venue and jurisdiction are threshold issues; unless

10

the proper venue and jurisdiction are both established, the court in which the action commenced does not have the authority to decide the merits of that action.").

This factor weighs against staying this Action. *See Kruse v. Snowshoe*, 715 F.2d 120, 124 (4th Cir. 1983) (district court did not abuse its discretion in declining to abstain where state and federal actions were filed within two days of one another and similar progress had been made in each).

### v. The fifth and sixth factors—the presence of state law and the adequacy of state proceedings—do not favor a stay.

"[T]he Supreme Court has made clear that the presence of state law and the adequacy of state proceedings can be used only in 'rare circumstances' to justify *Colorado River* abstention." *Gannett*, 286 F.3d at 746 (citing *Moses H. Cone*, 460 U.S. at 26). This is even more so in a diversity case: "[I]n a diversity case . . . federal courts regularly grapple with questions of state law, and abstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction." *Id*. at 747; *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 844 (9th Cir. 2017) (cases implicating routine state-law issues—misrepresentation, breach of fiduciary duty, and breach of contract—do not entail rare circumstances favoring of abstention) (citation omitted).

In *Poston v. John Bell Co. Inc.*, for example, the court noted how a routine breach of contract action is not the type of complex, rare circumstance supporting *Colorado River* abstention: "Simply put, even if a federal question is not implicated, this factor still weighs against abstention unless there is presence of 'rare circumstances' typically not found in a breach of contract action." No. 5:07-CV-00757, 2008 WL 4066254, at *7 (S.D. W. Va. Aug. 27, 2008).

This Action is not a "rare circumstance" involving complex state laws. It is a straightforward Action to enforce WSSH's rights under the Judgments.

The sixth factor—whether the West Virgina court can protect WSSH's interests—also disfavors a stay. Defendants are wasting WSSH's collateral and damaging the surrounding community *right now*. The Judgments are due in full *right now*. Defendants could satisfy their obligations *today*, but they either cannot or will not. Each day of delay further damages WSSH and The Greenbrier Resort. Defendants seek delay to continue what they have done for so long— denuding The Greenbrier Resort of the revenues it requires for their personal benefit.

This must stop. Staying this Action would put WSSH's work to protect its collateral back at square one. No matter how fast the West Virginia court moves, it could not deliver the relief WSSH (and The Greenbrier Resort community) need as quickly as this Court could. The fifth and sixth factors weigh against staying this Action.

### 3. *Defendants filed the Second Action as a contrived, defensive tactic.*

In addition to the six factors discussed above, the Court should also consider that Defendants filed the Second Action entirely as a "defensive tactical maneuver" in response to WSSH's Judgment-enforcement efforts. This is improper and weighs against granting the stay. *See Moses H. Cone*, 460 U.S. at 17 n.20.

The news that CBT sold the Judgment to WSSH became public on April 1. Brad McElhinny, *Bank's sale of millions of dollars in outstanding loans for the Greenbrier leads to major hotel company*, WV MetroNews (Apr. 1, 2026), https://wvmetronews.com /2026/04/01/banks-sale-of-millions-of-dollars-in-outstanding-loans-or-the-greenbrier-leads-to-major-hotel-company. Defendants did nothing.

WSSH filed this Action eight days later on April 9. Only then, three days later, did Defendants file the Second Action asserting that CBT's sale was somehow invalid. (Notice of Filing, ECF No. 9-1). The Court should see the Second Action for what it is: a contrived, defensive

reaction designed to deprive WSSH of its chosen forum. This is improper. *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) ("The sequence of events in this case . . . and the hostile history of the case strongly indicate the vexatious nature of the litigation.").

Defendants' misplaced effort to enjoin WSSH from prosecuting this Action highlights the defensive nature of the Second Action. (Ex. A ¶ 191(c) (Defendants' request for injunction).) The Supreme Court put it well: "The old and well-established judicially declared rule [is] that state courts are completely without power to restrain federal-court proceedings in in personam actions like the one here." *Donovan v. Dallas*, 377 U.S. 408, 412-13 (1964). "For the heart of the rule as declared by this Court is that where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court." *Id.* (internal quotations omitted).

## C.     WSSH Also Prevails Under The *Godfrey* Factors.

Alternatively, the Court should deny the stay under the factors it set forth in *Godfrey*: (1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party. 2025 WL 3129298, at *1-2.

Much of the analysis set forth above applies equally under these factors, and WSSH will not replow the same ground. Granting the stay would waste significant resources already expended.  The June 8 hearing on WSSH's receivership and injunction requests is near. There is no need to discard the parties' and the Court's efforts to date in deference to Defendants' tactical maneuvering. The hardship WSSH would suffer—and the inequitable nature of that harm—strongly weighs against any stay. The Judgments are valid. Defendants refuse to pay. The collateral is diminishing daily. Passing time harms both WSSH and the community. A stay would only prolong and exacerbate that damage.

In contrast, there is no prejudice to Defendants. Their main grievance—that CBT's sale of the Judgments to WSSH was improper—can be addressed by this Court in this Action. And their ancillary claims designed to otherwise derail this Action can proceed in the Second Action, *if* they survive significant Rule 12 challenges. The Motion should be denied.

**D.     WSSH'S Judgments are Valid and Enforceable in this Court.**

While not strictly part of the *Colorado River* analysis, WSSH is nevertheless compelled to reiterate that its claims in this Action are valid and enforceable.

WSSH holds the Judgments, totaling over $141 million against Defendants to this action. (*E.g.*, FAC ¶¶ 13-27.) WSSH's collateral includes senior deeds of trust (the only exception being that CF Green Investors, LP holds a lien between WSSH's first and third liens on certain portions of The Greenbrier Resort), security agreements, and other collateral documents which create liens against the improved real estate, personal property, and other assets comprising The Greenbrier Resort. (*Id.*)

Defendants made many, many promises in the 14th FBA that support WSSH's claims and abrogate any possible defense. As just an example, Defendants:

- Acknowledged CBT's right to assign "without the consent of or notice to any of the Justice Parties or any other person or entity" any or all of its rights and benefits under the Judgment Documents. Upon such assignment, the assignee (i.e., WSSH) "shall be the sole, absolute and exclusive owner" of the rights and benefits so assigned and all references to CBT after the assignment shall refer to the assignee. (14th FBA § 18(c).)

- Agreed that the Justice Parties have *no defenses*, claims, counterclaims, actions, or causes of action of any kind related to the Judgment Documents and, to the extent any such exist, they were expressly waived. (*Id*. § 2(a).)

- Affirmed, ratified, and reaffirmed the Judgment Documents. (*Id*. § 10.)

- Globally released all claims they had or may have against CBT arising out of or related to, among other things, the Judgment Documents. (*Id*. § 4(a).)

- Represented, warranted, and agreed, that the Justice Parties would not "commence, join in, prosecute or participate in any action or other proceeding in a position that is adverse to CBT in connection with the making, closing, administering, collecting or enforcing" the Judgment Documents. (*Id*. § 4(b).)

- In a section entitled "Remedies," agreed that, upon termination of the forbearance, CBT (now WSSH) (i) has "the *immediate* right to collect the entire amount" of Plaintiffs' indebtedness under the Judgment Documents and (ii) "may *immediately* exercise creditor process and/or one or more of the rights and remedies described in or available to CBT [now WSSH] under any of the Judgment Documents," the 14th FBA, or "at law, in equity or otherwise available to CBT [now WSSH] at the same or different times *without notice to or demand on* any of the Justice Parties or any other person or entity." (*Id*. § 9 (emphasis added).)

If Defendants wish to challenge the validity of WSSH's claims or property interests, Defendants offer no authority that this Court cannot determine this "threshold" issue on its own volition. Defendants are also free to broach this issue as a defense in this Action. But, given their agreements in 14th FBA, perhaps that is unwise.

The Judgments are enforceable in this Court, by this Court. Federal courts, as a matter of full faith and credit, are bound to give state court judgments the same preclusive effect "as the courts of such State" would give. 28 U.S.C. § 1738; *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000) ("The Supreme Court has expressly held that the full faith and credit statute 'directs a federal court to refer to the preclusion law of the State in which judgment was rendered.'") (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

Defendants tried to challenge the validity of the Judgments. They lost. *Carter Bank & Trust v. James C. Justice, II*, *and affiliated cases*, 2024 WL 5454769 (Va. Cir. Ct. Jan. 22, 2024). Thus, the Judgments are final and binding under Virginia law. VA. CODE ANN. § 8.01-432. And they are entitled to the same preclusive effect in this Court.

## III. CONCLUSION

WSSH respectfully requests that this Court deny Defendants' Motion to Stay in accordance with the proposed order attached to this Response.

Respectfully submitted,

**WHITE SULPHUR SPRINGS HOLDINGS, LLC**

By counsel,

/s/ *Seth P. Hayes*

Seth P. Hayes, Esq. (WVSB #10381)
Zachary H. Warder, Esq. (WVSB #13566)
JACKSON KELLY PLLC
3000 Swiss Pine Way, Suite 200
P.O. Box 619
Morgantown, WV 26501
shayes@jacksonkelly.com
Zachary.warder@jacksonkelly.com

and

Ellen Cappellanti, Esq. (WVSB #627)
Albert F. Sebok, Esq. (WVSB #4722)
Elizabeth B. Elmore (WVSB #6061)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV 25301-3202
ecappellanti@jacksonkelly.com
asebok@jacksonkelly.com

| | | |
|---|---|---|
| WHITE SULPHUR SPRINGS HOLDINGS, LLC<br>a Texas Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 5:26-cv-00257<br>The Honorable Frank W. Volk |
| JAMES C. JUSTICE, II, Individually;<br>CATHY L. JUSTICE, Individually;<br>JAMES C. JUSTICE, III, Individually;<br>GREENBRIER HOTEL CORPORATION,<br>a West Virginia Corporation;<br>GREENBRIER MEDICAL INSTITUTE, LLC,<br>a West Virginia Limited Liability Company;<br>OAKHURST CLUB, LLC,<br>a West Virginia Limited Liability Company;<br>GREENBRIER GOLF AND TENNIS<br>CLUB CORPORATION,<br>a West Virginia Corporation;<br>GREENBRIER LEGACY COTTAGE<br>DEVELOPMENT COMPANY I, Inc.,<br>a West Virginia Corporation;<br>GREENBRIER LEGACY COTTAGE<br>DEVELOPMENT II, Inc.,<br>a West Virginia Corporation. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, Seth P. Hayes, certify that on the 22nd day of May, 2026, the foregoing Plaintiffs'

Response in Opposition to Defendants' Amended Motion to Stay was filed using the Court's

CM/ECF system.  Counsel of record will be served by the Court's CM/ECF system as follows:

Steven R. Ruby, Esquire
Raymond S. Franks II, Esquire
David R. Pogue, Esquire
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

H. Rodgin Cohen, Esquire
Robert L. Jones IV, Esquire
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
cohenhr@sullcrom.com
jonesrob@sullcrom.com

Amanda Flug Davidoff, Esquire
Oliver W. Engebretson-Schooley, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
davidoffa@sullcrom.com
engebretsono@sullcrom.com

/s/ *Seth P. Hayes*
Seth P. Hayes, Esq. (WVSB # 10381)