March 25, 2024

TRT Holdings
4001 Maple Avenue, Suite 600
Dallas, TX 75219

Dear Ladies and Gentlemen:

In connection with TRT Holdings' ("you" or "your") potential provision of advisory services (the "Services") to Fortress Investment Group LLC and/or one or more of its affiliates (collectively, "Fortress") regarding a possible transaction relating to Greenbrier Hotel Corporation (the "Company") (hereinafter the "Transaction"), Fortress is prepared to make available to you certain information generated by or on behalf of Fortress and/or provided to it by third parties that it considers to be valuable, non-public, confidential and proprietary (the "Information"). Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Transaction Confidentiality Agreement (as defined below). As a condition to such Information being furnished to you, you agree that:

1. Except as otherwise expressly provided herein, you will not (a) disclose the Information to any other person or use any portion thereof except in connection with your provision of the Services, or (b) disclose to any person the fact that the Information has been made available, that discussions are taking place with us and the Company concerning a possible Transaction or any of the terms or conditions with respect thereto.

2. Notwithstanding the foregoing, you may disclose the Information: (a) to your directors, officers, employees, attorneys, and accountants ("Representatives") who need to know the Information for purposes of performing the Services, who (i) are informed by you of the confidential nature of the Information and (ii) agree to be bound by the terms of this Agreement, and you shall be responsible for any breach by your Representatives of the terms of this Agreement and the Transaction Confidentiality Agreement, (b) as may be required by applicable law or at the request of any regulatory or supervisory authority having jurisdiction over you, provided that you request confidential treatment thereof to the extent permitted by law; or (c) with our prior written consent.

3. In the event that you become legally compelled to disclose any of the Information, you will, to the extent permitted by law, provide us with prompt notice so that we may seek a protective order or other appropriate remedy. In the event that such protective order or remedy is not obtained, you shall disclose such Information in a manner reasonably designed to preserve its confidential nature.

4. You agree that promptly upon our request all copies of the Information furnished to you or provided by you to any other person will be promptly returned to us, and you will certify that all reproductions, extracts and summaries thereof have been destroyed (save to the extent that you are legally required to retain any such Information provided that such information retained shall remain subject to the terms of this agreement.) All of your obligations hereunder and all of our rights and remedies hereunder shall survive any return or destruction of the Information.

5. You acknowledge that money damages and other remedies at law are inadequate to protect against a breach of this Agreement and you hereby agree to the granting of injunctive or other equitable relief in our favor without proof of actual damages. Nothing contained herein shall be construed as prohibiting Fortress from pursuing any other remedies available, either at law or in equity, for any breach or threatened breach, of this Agreement, including specific performance and recovery of monetary damages, moreover in the event that you breach any provision of the Transaction Confidentiality Agreement you shall be liable to Fortress for actual damages caused thereby which may be assessed against or suffered by Fortress. This agreement shall be governed by and construed in accordance with New York and the parties hereby submit to the exclusive jurisdiction of the New York courts.

6. You acknowledge receipt of a copy of the Confidentiality Agreement dated March 6, 2024 by and between Fortress Investment Group LLC and Greenbrier Hotel Corp. (the "Transaction Confidentiality Agreement"), and you hereby agree (a) to be bound by the terms of the Transaction Confidentiality Agreement as if you were a party thereto and accordingly the restrictions contained in such agreement are hereby incorporated by reference, (b) that the term Information shall also be deemed to include all "Evaluation Material" as defined in the Transaction Confidentiality Agreement and (c) that a breach by you of the terms of the Transaction Confidentiality Agreement shall be deemed a breach by you of this Agreement. In addition, you shall indemnify Fortress for any costs and liabilities (including, without limitations, reasonable attorneys fees) arising from any breach by you (or breach by Fortress caused by your actions) of this Agreement, the "Transaction Confidentiality Agreement".

7. The obligations hereunder shall terminate on the date upon which obligations under the Transaction Confidentiality Agreement, as in effect on the date hereof, terminate.

8. In the event of a conflict between the terms of this agreement and the Transaction Confidentiality Agreement, the more restrictive terms shall prevail.

To indicate your acceptance of the foregoing terms, please countersign this Agreement.

ACCEPTED AND AGREED

TRT Holdings

As of the date hereof:

By: _____

Name: Paul H. Jorge

Title: SVP + GC



March 6, 2024

Fortress Investment Group LLC ("you" or "your")
1345 Avenue of the Americas
46th Floor
New York, NY 10105 USA
Attn: Legal Dept.]

Dear Ladies and Gentlemen:

You have requested information from Greenbrier Hotel Corporation (together with its subsidiaries and affiliates, and including any successors thereto, the "Company" or "we") in connection with your consideration of providing financing in one or more possible transactions involving us and/or any of our subsidiaries to exit current loan portfolio (such possible financing(s), the "Financing Transaction"). The Company is willing to furnish or otherwise make available such information to you as it so determines in consideration of your agreement to abide by the terms of this letter agreement (this "Agreement").

1. Confidentiality.

(a) You agree to keep confidential and to use only for the purpose of evaluating, negotiating, consummating, and/or administering a Financing Transaction (the "Purpose") and not for any other purpose, all information that the Company or any of its Representatives (as hereinafter defined) furnishes or otherwise makes available to you or your Representatives in connection with the Financing Transaction, including any technical, scientific, trade secret or other proprietary information of the Company with which you or your Representatives may come into contact in the course of your investigation, whether on or after the date of this Agreement, and whether oral, written or electronic, together with any reports, analyses, summaries, interpretations, compilations, forecasts, financial statements, memoranda, notes, studies or any other written or electronic materials prepared by or for you or your Representatives that contain, reflect or are based upon such information (collectively, the "Evaluation Material"); provided, however, that you may disclose Evaluation Material (i) to those of your affiliates and your and their respective members, partners, co-investors, potential financing sources, officers, directors, employees, counsel, attorneys, consultants, advisors, accountants or financial and financial advisors who need to know such information for the Purpose (such persons in their capacity as such and that receive Evaluation Material from you or on your behalf being generally referred to herein as "Representatives"), so long as you direct your Representatives to treat the Evaluation Material in a confidential manner and in accordance with the terms hereof (it being understood that you will be responsible for any breach of the terms of this Agreement by any of your Representatives, except to the extent that any such person has entered into a separate confidentiality agreement with the Company), (ii) to the extent that the Company so consents in writing (which may be provided via email) and (iii) as provided in Section 1(d). Notwithstanding the foregoing or anything to the contrary herein, the term

"Evaluation Material" does not include information that (A) is or becomes available to you or any of your Representatives on a non-confidential basis from a source other than the Company or its Representatives, provided that such other source is not known by you or such Representatives (after reasonable inquiry) to be bound by a confidentiality obligation to the Company or is otherwise prohibited from disclosing the information to you or such Representative, (B) is or becomes generally available to the public (other than as a result of a breach of this Agreement by you or your Representatives), (C) is independently developed by you or any of your Representatives without the use of any Evaluation Material or (D) was available to or in the possession of you or any of your Representatives prior to its being furnished to you or such Representative, as applicable, pursuant hereto, provided that, to the knowledge of you or such Representative, as applicable, the source thereof was not in breach of a confidentiality agreement with, or other contractual, legal or fiduciary obligation of confidentiality to, the Company by furnishing such information to you or such Representative, as applicable. You understand and agree that we will be disclosing Evaluation Material to you and your Representatives under this Agreement solely for the Purpose. You further understand and agree that (1) you and your Representatives shall acquire no right, title or interest in, or licenses to use, any Evaluation Material because of its disclosure to you or such Representatives, (2) you and your Representatives shall not decompile any Evaluation Material, and (3) all Evaluation Material disclosed to you or any of your Representatives shall remain the exclusive property of the Company. You further agree to promptly inform the Company (email being sufficient) upon becoming aware of any inadvertent or other disclosure of Evaluation Material which occurred on or after the date hereof, in each case, that is made by you or your Representatives in violation of this Agreement. For clarity, you and your Representatives may disclose Evaluation Material to Fortress Investment Group LLC ("Fortress")and its Representatives (as defined in the letter agreement between the Company and Fortress regarding the Financing Transaction (the "Fortress Letter"), and such Evaluation Material shall be treated by Fortress and its Representatives (as defined in the Fortress Letter) in connection with the terms of the Fortress Letter, and Fortress will be responsible for any breach by it or its Representatives (as defined in the Fortress Letter with respect to such Evaluation Material.

(b)     You agree that neither you nor any of your Representatives will, without the prior written consent of the Company, directly or indirectly, disclose to any other person, including to any of your affiliates unless such affiliate is also your Representative, (i) the fact that discussions or negotiations between the parties hereto may take place, are taking place or have taken place concerning a Financing Transaction or any of the terms or other facts relating thereto, including the status thereof, (ii) the existence or the terms of this Agreement or (iii) that you or your Representatives have received or produced any Evaluation Material (items (i), (ii) and (iii), collectively, "Financing Transaction Information"); provided, however, that you and your Representatives may disclose Financing Transaction Information to the extent required by, and pursuant to, Section 1(d). Financing Transaction Information shall be considered "Evaluation Material" for purposes of this Agreement.

(c)     It is understood that all requests by you and your Representatives for information, management meetings or the like and discussions or questions regarding procedures, in each case in connection with the Financing Transaction, will be submitted or directed to Steven R. Ruby at sruby@cdkrlaw.com or Stephen W. Ball at steve.ball@bluestone-coal.com, except as otherwise directed by the Company.

(d)     In the event that you or any of your Representatives are required to disclose any Evaluation Material as required by law, regulation, stock exchange rule, or in connection with a legal, judicial or administrative proceeding (including, but not limited to by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation demand or similar process) or is required by a regulatory or self-regulatory/administrative authority (collectively, "Law"), to the extent permissible by Law, you will provide the Company with prompt and prior notice of such requirement(s).  You also agree, to the extent permissible by Law, to provide the Company, in advance of any such disclosure, with a list of any Financing Transaction Information or Evaluation Material you intend to disclose (and, if applicable, the text of the disclosure language itself) and to reasonably cooperate with the Company to the extent the Company may seek to limit such disclosure, including, if requested, taking commercially reasonable steps to resist or avoid any such judicial or administrative proceedings referred to above.  If and to the extent, in the absence of a protective order or the receipt of a waiver from the Company after a request in writing therefor is made by you (such request to be made as soon as reasonably practicable to allow the Company a reasonable amount of time to respond thereto), you or any of your Representatives are required by Law as advised by counsel to disclose Financing Transaction Information or Evaluation Material to any court or competent authority or other requiring entity, you or your Representatives will limit such disclosure to that which is required by Law and will use commercially reasonable efforts to obtain reliable assurances that confidential treatment will be accorded to any Financing Transaction Information or Evaluation Material that you or your Representatives are so required to disclose, and thereafter you and your Representatives may disclose such information without liability hereunder.  Notwithstanding the foregoing, Evaluation Material may be disclosed, and no notice as referenced above is required to be provided, pursuant to requests for information in connection with routine supervisory examinations by regulatory, self-regulatory or governmental authorities with the jurisdiction over you or your Representatives and not directed at the Company or the Financing Transaction.

(e)     Upon the written request of the Company, you will (and you will direct your Representatives to) promptly deliver to the Company or destroy, at your sole option, all copies of the Evaluation Material, including any notes relating thereto, without retaining any copy thereof, including, to the extent practicable, expunging all such Evaluation Material from any computer, word processor or other device containing such information.  If requested in writing by the Company, you will confirm to the Company (email being sufficient) that all such material has been so destroyed (the form of an e-mail shall suffice) in accordance with this section.  Notwithstanding the foregoing, you and your Representatives may keep copies of the Evaluation Material (in electronic or paper form) if required by *bona fide* policies and procedures implemented by you or such Representatives as the case may be, in order to comply with applicable Law, regulation, professional standards or reasonable business practice and (ii) you and your Representatives may retain Evaluation Material to the extent it is "backed-up" on your or their (as the case may be) electronic information management and communications systems or servers, is not available to an end user and cannot be expunged without considerable effort.  Any and all duties and obligations existing under this Agreement shall remain in full force and effect, notwithstanding the delivery or destruction of the Evaluation Material required by this Section 1(e).

2.     <u>No Representations or Warranties</u>.  You understand and agree that neither the Company nor any of its Representatives makes any representation or warranty, express or implied, on which you, your affiliates or you or your affiliates' Representatives may rely as to the accuracy or completeness of the Evaluation Material, except to the extent set forth in a definitive agreement, when, as and if executed, and subject to such limitations and restrictions as may be set forth therein.  You agree that none of the Company nor its affiliates or Representatives shall have any liability whatsoever to you or any of your affiliates or you or your affiliates' Representatives, including in contract, tort or under applicable laws, arising out of, relating to, or resulting from, the use of the Evaluation Material or any errors therein or omissions therefrom, except to the extent arising out of or relating to a definitive agreement, when, as and if executed, and subject to such limitations and restrictions as may be set forth therein.

3.     <u>No Obligation</u>.  It is understood and agreed that neither the Company nor you intends to be, or shall be, under any legal obligation of any kind whatsoever with respect to the Financing Transaction or otherwise, except for the matters specifically agreed to in this Agreement.

4.     <u>Equitable Relief</u>.  The Company, without prejudice to any rights to judicial relief it may otherwise have, shall be entitled to seek equitable relief, including injunction and/or specific performance, in the event of any breach or threatened breach of the provisions of this Agreement.  You agree that you will not oppose the granting of such relief on the basis that the Company has an adequate remedy at law.  You also agree that you will not seek, and agree to waive any requirement for, the securing or posting of a bond in connection with the Company's seeking or obtaining such relief.  You acknowledge that the Evaluation Material may be valuable and unique and that any disclosure thereof in breach of this Agreement may result in irreparable injury to the Company.  In the event of any litigation concerning this Agreement, the prevailing party as determined by a court of competent jurisdiction in a final non-appealable order or judgment shall be entitled to be reimbursed by the non-prevailing party for its reasonable, documented and out-of-pocket legal fees and expenses incurred in connection with such litigation.

5.     <u>Compliance with Law</u>.

(a)     You hereby confirm that you are aware and that your Representatives will be advised that the United States securities laws prohibit any person who has material non-public information about a company from purchasing or selling securities of such company or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person may purchase or sell such securities on the basis of such information.

(b)     You hereby confirm that you will take commercially reasonable actions necessary or appropriate to prevent the use by you of any Evaluation Material in a way that would reasonably be expected to violate any antitrust or other applicable law, including the federal securities laws.

6.     <u>Limited Standstill</u>.  During the term hereof, unless otherwise agreed to by the parties, you agree that none of you, your affiliates, or you or your affiliates' Representatives who receive Evaluation Material from the Company or its Representatives shall, directly or indirectly, without the prior written consent of the Company, acquire or propose or agree to acquire in any manner beneficial ownership (within the meaning of Section 13(d)(1) of the Securities Exchange Act of 1934) or constructive economic ownership, through any security, contract right or derivative position, of any securities of the Company or any indebtedness of the Company.  You confirm that as of the date hereof none of you, your affiliates, or you or your affiliates' Representatives who receive Evaluation Material from the Company or its Representatives or at its request hold any securities of the Company or any indebtedness of the Company.

7.     <u>Miscellaneous</u>.

(a)     Notwithstanding anything to the contrary contained herein, this Agreement, and all of the obligations under this Agreement, shall terminate on the earlier of (a) two (2) years following the date hereof and (b) the date of execution of a definitive agreement regarding the Financing Transaction.  The termination of this Agreement shall not relieve either party from any obligation or liability under this Agreement attributable to any period prior to such termination. The term "<u>person</u>" as used in this Agreement shall be broadly interpreted to include the media and any corporation, company, group, partnership, joint venture, limited liability company, trust, governmental entity or individual.  The term "<u>affiliate</u>" as used in this Agreement shall have the meaning ascribed to such term in Rule 12b-2 of the General Rules and Regulations under the Securities Exchange Act of 1934.  The term "<u>including</u>" and any variation thereof shall be deemed to be followed by the words "<u>without limitation</u>" except where the meaning clearly indicates otherwise.

(b)     It is agreed that no failure or delay by the Company in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege.

(c)     It is understood and agreed that if any provision contained in this Agreement or the application thereof to you, the Company, or any other person or circumstance shall be invalid, illegal or unenforceable in any respect under any applicable law as determined by a court of competent jurisdiction, the validity, legality and enforceability of the remaining provisions contained in this Agreement, or the application of such provision to such persons or circumstances other than those as to which it has been held invalid or unenforceable, shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby. In the case of any such invalidity, illegality or unenforceability, a suitable and equitable provision shall be substituted therefore in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and this Agreement.

(d)     This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York, without regard to the conflict of laws principles thereof to the extent that such principles would direct a matter to another jurisdiction.

(e)     Each party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement exclusively in the state and federal courts located in the City of and County of New York  (the "Chosen Courts"), and solely in connection with claims arising under this Agreement (i) irrevocably submits to the exclusive jurisdiction of the Chosen Courts, (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Courts, (iii) waives any objection that the Chosen Courts are an inconvenient forum or do not have jurisdiction over any party hereto and (iv) agrees that service of process upon such party in any such action or proceeding shall be effective if notice is given in accordance with the terms hereof.  Each party hereto irrevocably waives any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement.  Each of the parties hereto agrees that a final judgment in any lawsuit, action or other proceeding arising out of or relating to this Agreement brought in the Chosen Courts shall be conclusive and binding upon each of the parties hereto and may be enforced in any other courts the jurisdiction of which each of the parties is or may be subject, by suit upon such judgment.

(f)     Any notice hereunder shall be made in writing by overnight courier, personal delivery or email, in each case:

If to the Company:

Greenbrier Hotel Corporation
101 W. Main St.
White Sulphur Springs, WV 24986
Attention:  Stephen W. Ball, General Counsel
Email:  steve.ball@bluestone-coal.com

and

Steven R. Ruby
Carey Douglas Kessler & Ruby PLLC
707 Virginia St., E., Suite 901
Charleston, WV 25301
Email:  sruby@cdkrlaw.com

If to you:

[Fortress Investment Group LLC
1345 Avenue of the Americas
46th Floor
New York, NY 10105 USA
Attn: Legal Dept.
nda@fortress.com]

(g)     If any provision of this Agreement is declared void or unenforceable, such provision shall be severed from this Agreement which shall otherwise remain in full force and effect, but only to the extent that the original intent of this Agreement would not be altered in any material respect.  This Agreement constitutes the entire agreement between the parties with

respect to the subject matter hereof and supersedes all other prior agreements and understandings, both written and verbal, between the parties with respect to the subject matter hereof. In the event there is any inconsistency between this Agreement and the terms and conditions of any electronic data room, information memorandum, or similar repository of Evaluation Material, the terms and conditions of this Agreement shall govern.

(h)     To the extent that any Evaluation Material includes materials subject to the attorney work-product doctrine, the attorney-client privilege and/or any other applicable privilege, the Company is not waiving, and shall not be deemed to have waived or diminished, its attorney work-product protections, attorney-client privileges or similar protections and privileges as a result of disclosing or inadvertently disclosing any of the Evaluation Material (including any such Evaluation Material related to any pending or threatened litigation) to you, your affiliates or you or your affiliates' Representatives.

(i)     This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Any assignment of this Agreement by either party without the prior written consent of the other party shall be void.

(j)     This Agreement may only be amended by a separate writing signed by the Company and you expressly so amending this Agreement.  Any provision of this Agreement may be waived by the party entitled to the benefit thereof, if in writing and signed by the party entitled to the benefit thereof.

(k)     The disclosure of Evaluation Material to your Representatives shall not be deemed to be disclosure to a company for which such Representative serves as a member of its board of directors, provided, that such individual has not provided such company with Evaluation Material. The Company acknowledges that you are in the investment business and that you and your affiliates may now or in the future evaluate, invest in (directly or indirectly, including providing financing to) or do business with competitors or potential competitors of the Company, or entities engaged in business similar to or the same as the Company, and that neither the execution of this Agreement nor receipt of the Evaluation Material is intended to or shall restrict or preclude such activities, provided that this paragraph shall not be construed as a waiver of any of your obligations hereunder.

(l)     This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same Agreement.  Delivery of a signed counterpart of this Agreement by facsimile or .pdf transmission shall constitute valid sufficient delivery thereof.

[The next page is the signature page]

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed and delivered as of the date first above written.

Very truly yours,

GREENBRIER HOTEL CORP.

By: _____

Name:　Stephen W. Ball

Title:　Secretary & General Counsel

Confirmed and agreed to:

Fortress Investment Group LLC

By: _Michael Cohn_____

Name:　Michael Cohn

Title:　Chief Compliance Officer