# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

WHITE SULPHUR SPRINGS HOLDINGS, LLC,
*a Texas Limited Liability Company,*

      Plaintiff,

v.                                     CIVIL ACTION NO. 5:26-cv-00257

JAMES C. JUSTICE, II,
*individually,* and
CATHY L. JUSTICE,
*individually,* and
JAMES C. JUSTICE, III,
*individually,* and
GREENBRIER HOTEL CORPORATION,
*a West Virginia Corporation,* and
GREENBRIER MEDICAL INSTITUTE, LLC,
*a West Virginia Limited Liability Company,* and
OAKHURST CLUB, LLC,
*a West Virginia Limited Liability Company,* and
GREENBRIER GOLF AND TENNIS CLUB CORPORATION,
*a West Virginia Corporation,* and
GREENBRIER LEGACY COTTAGE DEVELOPMENT COMPANY I, INC.,
*a West Virginia Corporation,* and
GREENBRIER LEGACY COTTAGE DEVELOPMENT II, INC.,
*a West Virginia Corporation,*

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending are (1) Defendants' Motion to Continue Briefing Deadlines and Scheduled

Hearings [ECF 58] ("Suspension Motion"), filed May 22, 2026, (2) Defendants' Motion for Leave

to Submit Term Sheet Under Seal for in Camera Review ("Term Sheet Motion") [ECF 65], filed

May 23, 2026, and (3) putative Intervenor West Virginia State Tax Division's ("State Tax

Division") Motion for Leave to file Response Out of Time ("Extension Motion") [ECF 68], filed May 23, 2026.

For good cause shown, namely, counsel's failure to receive notice of a response deadline due to his limited email functionality at the relevant time, the Court **GRANTS** the Extension Motion. [ECF 68]. The subject response attached to the Extension Motion is deemed timely filed.

## I.

Defendants seek the following relief in the Suspension Motion: "that the Court . . . continue all briefing deadlines for 60 days, continue the pending June 1, 2026 prehearing conference and June 8, 2026 evidentiary hearing, and schedule a telephonic status conference for the week of June 22, 2026." [ECF 58 at 6]. Defendants represent they "have obtained a term sheet for new financing that will allow them to repay the total amount of debt that Plaintiff White Sulphur Springs Holdings, LLC [("WSSH")] claims it is owed. That repayment will moot all pending motions and resolve this action." [*Id.* at 1].

Plaintiff WSSH contends otherwise. It asserts, *inter alia*, (1) no actual offer to repay has been made, (2) Defendants only "expect" to finalize financing within 60 days based on a non-binding term sheet from an unnamed lender, on undisclosed terms, meaning the financing could collapse at any time, (3) Defendants have failed to provide WSSH or the Court with any meaningful details about the alleged financing, (4) Defendants have consistently violated the Fourteenth Amended and Restated Forbearance Agreement's requirements, including obligations to provide monthly financial reporting, identify fund transfers, supply bank statements, and maintain full transparency regarding any refinancing efforts, (5) Defendants have in the past used

2

non-binding letters of intent to stall litigation, and they have never produced a binding, non-contingent financing commitment, (6) the cases Defendants cite undermine their position, and (7) Defendants' debts to WSSH exceed strict loan repayment, and additionally include interest, fees, and expenses that continue to accrue. [ECF 63].

Defendants reply, *inter alia*, as follows: (1) WSSH was informed the financing is for up to $500 million, representing less than 5% of the financing partner's assets under management, (2) Defendants' counsel timely contacted WSSH to disclose the financing and request a payoff amount, but withheld earlier notice for fear WSSH would sabotage the transaction, (3) WSSH has not provided a requested payoff amount, (4) WSSH's own secretive conduct demonstrates its unclean hands, (5) WSSH's claimed nonfinancial rights under the loans are irrelevant and will become moot once the debt is paid, (6) Defendants previously granted WSSH a 30-day continuance to amend its complaint, and they contend a comparable accommodation is warranted here to facilitate a transaction that would achieve full repayment and resolve the case, and (7) WSSH is pursuing receivership not to protect its interests but to instead derail the subject financing transaction and continue harming Defendants' operations. [ECF 64].

## II.

Respecting the Term Sheet Motion, "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Virginia Dep't. of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). The United States Court of Appeals for the Fourth Circuit has made clear in its binding precedent that the "[p]ublicity of such records . . . is necessary in the long run so that the public can judge the product of the courts in a given case." *Columbus-America Discovery Group v.*

*Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000). Indeed, "[i]t is hardly possible to come to a reasonable conclusion on that score without knowing the facts of the case." *Id.*

Regarding the common law, "while a district court 'has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests,' the 'presumption' in such cases favors public access." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (quoting *In re Knight Publishing Company*, 743 F.2d 231, 235 (4th Cir. 1984)). "In contrast to the common law, 'the First Amendment guarantee of access has been extended only to particular judicial records and documents.'" *Virginia Dep't. of State Police*, 386 F.3d at 575 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.* (*Stone I*), 855 F.2d 178, 180 (4th Cir. 1988)). "When the First Amendment provides a right of access, a district court may restrict access 'only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest.'" *Id.*

Importantly, "[r]egardless of whether the right of access arises from the First Amendment or the common law, it 'may be abrogated only in unusual circumstances.'" *Id.* at 576 (quoting *Stone I*, 855 F.2d at 182). Additionally, in determining whether to seal documents, "the court should consider less restrictive 'alternatives to sealing [that] provide an adequate record for review' and should 'state the reasons for its decision [with] specific findings.'" *United States v. Harris*, 890 F.3d 480, 492 (4th Cir. 2018) (quoting *Knight*, 743 F.2d at 235).

**III.**

In support of the requested *in camera* and sealing processes, Defendants assert, in part, as follows:

> The term sheet contains highly sensitive financial and business information
> and trade secrets of the type that companies generally keep confidential, for good

reason. Specifically, the term sheet *contains the detailed terms of a financing transaction between Defendants and a financing partner, and it reveals the proprietary business strategies of both*. If the information were made public, competitors would be able to exploit their possession of this information by, for example, *offering terms superior to those of the financing partner—based on the proprietary information contained in the term sheet—in other transactions in which the financing partner might seek to participate. To provide another example, competitors or counterparties of Defendants could seek to exploit their knowledge of the terms of Defendants' financing in business dealings either with or in competition with Defendants.*

These considerations apply fully to Plaintiff and its affiliates, which is why *in camera* review is necessary. It is undisputed that Plaintiff is affiliated with Omni Hotels & Resorts, which owns and operates The Homestead Resort in Hot Springs, Virginia—The Greenbrier's most significant competitor. Moreover, Plaintiff's owners recently made their own offer to enter into a financing transaction and 50% acquisition of The Greenbrier*, evidencing their interest in a transaction that would compete with the transaction embodied in the term sheet*. Plaintiff's affiliates thus are competitors of both Defendants and of Defendants' financing partner. Were Plaintiff to obtain access to the term sheet, it would be able to exploit the trade secrets contained therein to the commercial detriment of Defendants and Defendants' financing partner.

[ECF 66 at 2–3 (emphases added)].[1]

It appears Defendants rely exclusively upon a trade secrets justification for the *in camera* and sealing processes they request. They assert the trade secrets putatively contained in the term sheet include business plans and strategies of Defendants and the financing partner, which federal law ostensibly protects, citing 18 U.S.C. §§ 1835, 1839(3). They further add as follows:

The business strategies and techniques that are embodied in the term sheet meet the definition of trade secrets in federal law; they are business information that their

---

[1]The quoted excerpt above, and within, appear in the memorandum in support of the Term Sheet Motion, which Defendants provisionally filed under seal in the CM/ECF system. Defendants are directed -- on or before the date set forth at the conclusion of this written opinion and order -- to file a redacted version of the Term Sheet Motion and the referenced memorandum in support.

The excerpts make it quite apparent there is at least some non-confidential information in the filings that ought to be spread on the public record in accordance with binding precedent. Overbroad sealing requests are routinely frowned upon. *See, e.g.*, *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021); *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1361 (Fed. Cir. 2020); *Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 120 n.2 (4th Cir. 2019).

owner has taken reasonable care to keep secret and that derive independent economic value from not being generally known or readily ascertainable by other means. 18 U.S.C. § 1839(3). And the Fourth Circuit has expressly observed that trade secrets are among the categories of materials for which *in camera* review is proper. *See ACLU v. Holder*, 673 F.3d 245, 257 (4th Cir. 2011).

[ECF 66 at 5].

At least from a categorical standpoint, Defendants' contentions are not without merit. First, as Defendants note, Congress has accorded some litigation protection for trade secrets. Second, *Federal Rule of Civil Procedure* 26(c)(1)(G) contains a provision designed to shield trade secrets from unwarranted disclosure. Finally, our Court of Appeals has regarded confidential business information as worth at least some protection from disclosure. *See Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014) ("A corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records."); *Under Seal v. Under Seal*, 326 F.3d 479, 485–86 (4th Cir. 2003) (noting "decisions as to court record access are best left to the trial court's discretion since that court can best evaluate whether one of the three established exceptions to the presumption of public access . . . (3) [including] where disclosure might reveal trade secrets . . . creates a countervailing privacy right that supports sealing in light of the particular facts and circumstances of the case . . . .") (citing *Nixon v. Warner Communications*, *Inc.*, 435 U.S. 589, 598–99 (1978)).

Nevertheless, a party may not simply incant a trade-secret justification without specificity. *See Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 662 n.6 (4th Cir. 1993) ("A plaintiff's general fear of disclosure cannot justify the failure to present sufficient evidence to identify its trade secrets."). Indeed, as noted, the statutory trade-secret definition upon which Defendants rely contemplates two particularized proof requirements:

[T]he term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns,

plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).

Our Court of Appeals has defined these two components, respectively, as "the reasonable secrecy requirement and the independent economic value requirement." *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025) (citing *Synopsys, Inc. v. Risk Based Security, Inc.*, 70 F.4th 759, 769 (4th Cir. 2023)). In an analogous setting, our Court of Appeals observed -- respecting a secrecy proponent's burden on the dual requirement at the pleading stage of a case -- as follows:

> The federal . . . statute[] . . . require[s] the plaintiff to identify "*with sufficient particularity*" *the trade secret* it claims has been misappropriated. At the pleading stage, identifying the trade secret with sufficient particularity *means describing the trade secret at a level of detail . . . that enables a court to determine whether the plaintiff has plausibly satisfied the* reasonable secrecy and *independent economic value requirements* . . . . Neither the defendant nor the court should be forced into a fishing expedition to find evidence of a valid trade secret in the pleadings.

*Sysco Mach. Corp.*, 143 F.4th at 228 (cleaned up) (emphases added).

Defendants will likely satisfy the reasonable secrecy requirement, given the confidential negotiations that preceded the term sheet and the efforts made to protect the document from public disclosure. They have not, however, (at least presently) discharged their burden respecting the independent economic value requirement. The few justifications they muster do not withstand scrutiny. First, they contend publicizing the "proprietary information" would allow the

financing partner's competitors to offer superior terms in other transactions in which they are rivals. The Court is unable to detect much if any such information in the term sheet. Additionally, when investors entertain a request for investment -- or seek an investment stake -- one competing investor often practically acts as the stalking horse against which the others pivot back-and-forth with competing terms. The initial investor's offer -- although often nominally confidential -- is practically disclosed in a veiled fashion to other interested, investing entities as the multiparty negotiations proceed. Defendants must thus isolate upon and explain the specific terms that give rise to the expressed concerns.

Second, Defendants contend that competitors -- presumably such as TRT Holdings, Inc. ("TRT") and others like WSSH in its commercial ecosystem -- or (unknown and unstated) counterparties of Defendants, could seek to exploit their knowledge of the term sheet in business dealings either with or in competition with Defendants -- and presumably the financing partner. Although it is minimally possible to conceive of a theoretical situation where that might occur, it seems vanishingly unlikely. For example, the magnitude of the debt at issue in this case and the now-seemingly bitter adversarial relationship between the TRT and Defendant entities would suggest a poisoned well for purposes of any future attempt by the TRT entities to lock arms with Defendants in a cooperative commercial venture. Furthermore, the lengthy course of dealing thus far between Defendants, the TRT entities, and the TRT-associated private equity firm described in one of Defendants' filings -- which resulted in the exchange of confidential information for the similar financing transaction between the parties -- suggests little in the term sheet respecting Defendants' affairs, governance, and practices that might be unknown to WSSH. [ECF 9 at 2-3].

Nevertheless, leaving these infirm, independent-economic-value-requirement assertions aside for the moment, the term sheet is plainly susceptible to redaction. There is much

in the document that could not reasonably give rise to trade-secret disclosure concerns. Additionally, redaction may well surface sufficient information to allow the opponent to craft a response to the Suspension Motion that might obviate the necessity of *in camera* review and, additionally, aid the Court in properly adjudicating the matter. *Short v. Hartman*, 87 F.4th 593, 604 (4th Cir. 2023) ("In our adversarial system, we rely on the parties to frame the issues for decision and assign courts the role of neutral arbiter of matters the parties present. Such adversary proceedings not only increase public confidence in the justice system, but they implicitly recognize that parties know what is best for them and are responsible for advancing the facts and arguments entitling them to relief.") (cleaned up). Redaction is all the more appropriate inasmuch as it is the preferred middle road when one seeks to cordon off court records from the general public. *See, e.g.*, *Virginia Dep't. of State Police*, 386 F.3d at 576 (noting a key procedural requirement in the sealing calculus is whether there are "less drastic alternatives to sealing . . . ."); *Luo v. Wang*, 71 F.4th 1289, 1304 (10th Cir. 2023) ("Redacting documents with confidential information is preferable to sealing entire documents.").

In conclusion, some further effort toward disclosure is necessary. The Court recognizes that Defendants have agreed with the financing partner to keep the term sheet confidential. At the same time, Defendants urge the Court to use that undisclosed document -- ex parte and *in camera* no less -- to halt these pivotal proceedings. That approach necessarily warrants careful scrutiny in light of the foundational, adjudicative interests in public access, party participation, and adversarial testing. Defendants may thus need to undertake further confidentiality consultations with the financing partner.

**IV.**

Based upon the foregoing discussion, Defendants are **ORDERED** to file, **on or before Wednesday, May 27, 2026**, a redacted version of the term sheet. They are additionally directed by that same date -- for those provisions they continue to insist are appropriate for *in camera* or sealing processes -- to file a supplemental memorandum of law (1) identifying with specificity the portion(s) of the term sheet Defendants contend constitute trade secrets, and (2) explaining in detail how each portion satisfies the independent economic value requirement.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER:  May 26, 2026

Frank W. Volk
Chief United States District Judge