**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

WHITE SULPHUR SPRINGS HOLDINGS, LLC,

    Plaintiff,

v.

JAMES C. JUSTICE, II, *et al.*,

    Defendants.

Civil Case No. 5:26-cv-00257

Hon. Frank W. Volk

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR LEAVE TO SUBMIT TERM SHEET
<u>UNDER SEAL FOR *IN CAMERA* REVIEW</u>**

Defendants respectfully submit this supplemental memorandum pursuant to the Court's May 26, 2026 Memorandum Opinion and Order ("Order").  (ECF No. 69.)  On May 22, 2026, Defendants informed WSSH and the Court that Defendants had reached a financing agreement that would allow Defendants to make WSSH entirely whole on the claims it asserts in this action. The signed agreement will provide financing for up to $500 million—more than enough to repay the loans Plaintiff claims it owns—which represents less than 5% of the financing partner's assets under management, removing any doubt about the financing partner's ability to close.  (ECF No. 64-1.)  After Defendants moved to file the financing term sheet under seal for *in camera* review, the Court directed Defendants to file a redacted version and to submit supplemental briefing on the reasons for keeping any redacted terms confidential as trade secrets.  (ECF No. 69 at 10.)

Defendants attach a redacted version of the term sheet here.  (*See* Ex. 1.)  Defendants do not seek to withhold the existence of the financing, the purpose of the financing, or the basic information necessary for the Court and the public to understand why the term sheet warrants

Defendants' requested continuance.  Defendants also respectfully clarify that they have sought confidential treatment for two reasons:  because the term sheet contains "highly sensitive financial and business information *and* trade secrets."  (ECF No. 65 at 2, 4.)  The redacted terms qualify for both types of protection.

Courts in this Circuit regularly protect information from adversaries and the public on the basis that it is confidential and commercially sensitive, even where it is not a trade secret.  *See Pittston Co.* v. *United States*, 368 F.3d 385, 406 (4th Cir. 2004) (affirming decision to seal documents containing "confidential, proprietary, commercial, or financial data" produced under a protective order); *Sheridan* v. *Ally Fin., Inc.*, 2025 WL 1094918, at *2 (S.D.W. Va. Apr. 11, 2025) (Volk, C.J.) (granting motion to seal where "the potential risk posed by public disclosure of the confidential, proprietary, and commercially sensitive information" outweighed the public interest in access).  Commercially sensitive information is entitled to protection if it would give competitors, counterparties, and litigation adversaries unfair insight into the business activities of the party seeking confidentiality.  *See Rothman* v. *Snyder*, 2020 WL 7395488, at *4 (D. Md. Dec. 17, 2020) (allowing redaction where "disclosure of this information could jeopardize the potential transaction").  The information in question here, which would reveal the pricing and deal structure, governance and collateral protections, closing conditions, and Defendants' transaction-specific leverage and pressure points, amply meets this standard.  Defendants submit that the requested redactions are warranted to protect confidential commercial information alone.

The redactions in question also protect trade secrets under this Circuit's two-pronged test. *See Sysco Mach. Corp.* v. *DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025).  As the Court has already recognized, the confidential negotiations that preceded the term sheet and Defendants' efforts to protect it from public disclosure "likely satisfy the reasonable secrecy requirement" for

trade-secret protection.  (ECF No. 69 at 7.)  The other inquiry is whether the redacted terms derive independent economic value from not being publicly known.  As explained further below, and for similar reasons warranting sealing the information as commercially sensitive, each of the redacted terms satisfy that requirement.

The motion should be granted.

## BACKGROUND

WSSH claims to have acquired certain loans, judgments, and collateral rights formerly held by Carter Bank & Trust.  Shortly after that purported acquisition, WSSH filed this action seeking extraordinary equitable relief, including appointment of a receiver over The Greenbrier and related assets and preliminary and permanent injunctive relief.  (*See* ECF No. 1; ECF No. 37.)  Defendants dispute WSSH's rights, including whether WSSH lawfully acquired the loans, and have filed an action in West Virginia state court challenging the acquisition.  *See Greenbrier Hotel Corp.* v. *TRT Holdings, Inc.*, Case No. CC-13-2026-C-51, Dkt. No. 1 (Cir. Ct. Greenbrier Cnty.).  But Defendants have nevertheless continued to pursue financing to repay the loans and resolve this action.

WSSH's professed purpose in this action is to ensure that it will be repaid on the loans it purports to have purchased.  WSSH insists that the only way to ensure repayment is the extraordinary relief of placing The Greenbrier into a receivership.  As Defendants have explained (*see* ECF No. 61), WSSH's requested relief is not remotely warranted here.  But the Court need not get that far, because the surest way to ensure that WSSH is repaid on the loans it claims to hold is for Defendants to close—likely in the next few weeks—on the new financing arrangement that Defendants have agreed to with their new lending partner.

On May 21, 2026, Defendants signed the term sheet for that financing.  (ECF No. 58 at 1.) Defendants moved to continue the pending briefing deadlines and scheduled hearings for 60 days,

with a status conference set for 30 days (June 22, 2026), while the financing transaction closes. *Id.* WSSH opposed, principally arguing that the financing was speculative because Defendants had not publicly disclosed the term sheet, the financing partner's identity, or the detailed transaction terms. (ECF No. 63 at 1–2.)

Defendants then moved for leave to submit the term sheet for *in camera* review so the Court could evaluate the credibility and significance of the financing while preserving the confidentiality of the pending transaction. (ECF No. 65.) The Court ordered Defendants to file a redacted version of the term sheet and this supplemental memorandum providing additional information regarding the confidentiality bases for those redactions. (ECF No. 69 at 10.)

Defendants submit that the term sheet (and accompanying motion for a continuance) fully substantiate Defendants' request for a brief continuance that would allow repayment of the loans WSSH claims it owns. With today's submission of the redacted term sheet, WSSH can now fully and directly assess the credibility and capability of the new financing partner. What remains confidential are the detailed commercial terms whose disclosure would damage Defendants, the non-party financing partner, and the financing transaction itself.

## ARGUMENT

The Court should find that Defendants' redactions are warranted to protect commercially sensitive information and trade secrets, accept the term sheet for *in camera* review in ruling on Defendants' motion for a continuance, and approve Defendants' redactions.

I.   **BOTH TRADE SECRETS AND COMMERCIAL SENSITIVITY ARE PROPER BASES FOR REDACTION.**

The common law right of public access "can be rebutted if" the movant shows "some significant interest that outweighs the presumption." *Trs. of Purdue Univ.* v. *Wolfspeed, Inc.*, 620 F. Supp. 3d 393, 399 (M.D.N.C. Aug. 2022) (citation omitted) (granting motion to seal portions

of brief where "the business interests at stake would be harmed by public disclosure").[1]  In conducting this balancing test, courts consider "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records."  *Id.* (citation omitted).

As the Court recognized in its May 23 Order, courts "shield trade secrets from unwarranted disclosure" under this test.  (ECF No. 69 at 6) (citing *Under Seal* v. *Under Seal*, 326 F.3d 479, 485–86 (4th Cir. 2003)).  Courts, including in this Circuit, also frequently protect commercially sensitive information from public disclosure regardless of whether the information separately meets the definition of a trade secret.  *See Pittston Co.*, 368 F.3d at 406 (4th Cir. 2004) (affirming decision to seal documents containing "confidential, proprietary, commercial, or financial data" produced under a protective order); *Sheridan*, 2025 WL 1094918, at *2 (granting motion to seal where "the potential risk posed by public disclosure of the confidential, proprietary, and commercially sensitive information" outweighed the public interest in access); *Komatsu Fin. Ltd. P'ship* v. *Kirby Land Co.*, 2023 WL 8006432, at *1–2 (S.D.W. Va. Nov. 17, 2023) (Volk, C.J.) (sealing business and financial information provided on the condition that confidentiality be preserved); *SAS Inst., Inc.* v. *World Programming Ltd.*, 2019 WL 1447472, at *18 (E.D.N.C. Mar. 18, 2019) (sealing "highly confidential, proprietary, and commercially sensitive information").

---

[1]     The First Amendment right of access is not at issue here.  That right applies to documents "used to adjudicate the parties' substantive rights" or in connection with motions that can "serve as substitute for trial."  *Am. Civil Liberties Union* v. *Holder*, 652 F. Supp. 2d 654, 661 (E.D. Va. 2009) (quoting *Rushford* v. *New Yorker Mag.*, 846 F.2d 249, 253 (4th Cir. 1988)).  The redacted term sheet, filed in connection with a motion for a limited continuance, is not such a document.

Courts are particularly assiduous in protecting *competitively sensitive* confidential commercial information.  In *TMM Data, LLC* v. *Braganza*, for example, a dispute between business competitors,[2] the court permitted a term sheet to be filed under seal, finding that "no less drastic alternatives exist" to protect "information that comprises confidential business information of TMM Data."  2016 WL 2732184, at *1 (E.D.N.C. May 10, 2016).  In *Rothman*, the court allowed references to the "specific terms of the confidential proposal," to remain redacted because "disclosure of this information could jeopardize the potential transaction."  2020 WL 7395488, at *4.  In sealing the underlying documents, the court explained that the proposal and related negotiations were "sensitive business information" and that disclosure could place the parties "at a competitive disadvantage" and "jeopardize the prospects for consummation of the transaction." *id.*, No. 8:20-cv-03290, ECF No. 65 at 2–3 (D. Md. Dec. 10, 2020).

Courts also protect acquisition and financing terms as commercially sensitive where disclosure would reveal the economics of a transaction or affect future negotiations.  In *Hutton* v. *Hydra-Tech, Inc.*, the court permitted targeted redactions to a purchase agreement, holding that the specific purchase price paid for a competitor's assets and the difference between the purchase price and appraised book value were sufficiently sensitive to warrant sealing.  2018 WL 1363842, at *9 (M.D.N.C. Mar. 15, 2018).  Likewise, in *News Corp.* v. *CB Neptune Holdings, LLC*, the court sealed acquisition-related materials because disclosure of the acquisition's economic terms and disputes over those terms could disadvantage the party in future acquisition-related negotiations with third parties.  2021 WL 3409663, at *2 (S.D.N.Y. Aug. 4, 2021).  And in *Massachusetts Envelope Co.* v. *Nicotera,* the court permitted redactions to an asset purchase agreement because the redacted provisions contained "specific financial information and other negotiated terms" that

---

[2]     *See TMM Data, LLC* v. *Braganza*, 2015 WL 4617326, at *1 (E.D.N.C. July 31, 2015).

were sensitive enough to warrant sealing where disclosure could harm the plaintiff's position in "future contested acquisitions" and negotiations with future counterparties. 2026 WL 962170, at \*2 (W.D.N.Y. Apr. 9, 2026).

## II. DEFENDANTS' REDACTIONS ARE WARRANTED TO PROTECT COMMERCIALLY SENSITIVE INFORMATION AND TRADE SECRETS.

The requested redactions plainly warrant sealing under the applicable standard. *See Trs. of Purdue Univ.*, 620 F. Supp. 3d at 399 (noting that the presumption of access is overcome by a "showing of some significant interest that outweighs the presumption"). Defendants have a significant interest in protecting commercially sensitive information and in preventing its disclosure. *See Sky Angel U.S., LLC* v. *Discovery Commc'ns, LLC*, 95 F. Supp. 3d 860, 882 (D. Md. 2015). Further, the redactions are narrowly drawn to confidential commercial information, the disclosure of which would harm Defendants and the financing partner far more than it would benefit the public. *See Trs. of Purdue Univ.*, 620 F. Supp. at 399 (noting that the court "must consider less drastic alternatives to sealing"). And even if meeting the statutory definition of a trade secret were required for sealing, the redacted information satisfied the test: it derives independent economic value from not being generally known and has been subject to reasonable efforts to maintain its secrecy. *See Sysco Mach. Corp.*, 143 F.4th at 228.

### A. The Redactions Protect Commercially Sensitive Information and Trade Secrets, the Disclosure of Which Would Cause Harm to Defendants and the Financing Partner.

Private equity investors typically document potential transactions in a term sheet (like the one before the Court) before full agreements are prepared. *See* Douglas Cumming & Simona Zambelli, *Due Diligence and Investee Performance* 3–4 (May 30, 2016) (forthcoming in *European Financial Management*) (manuscript available at https://ssrn.com/abstract=2786763); George Bene, *Note on Private Equity Deal Structures*, Tuck Sch. of Bus. at Dartmouth 1 (Jan. 12, 2005).

The term sheet identifies the core commercial bargain:  amount and use of capital, pricing, maturity, fees, collateral, covenants, governance or consent rights, closing conditions, default rights, remedies, and exit mechanics.  Bene, *supra*, at 1, 12–13.

Because deal terms vary from investor to investor and deal to deal, a private equity firm that publicly discloses the terms it was willing to accept in a particular transaction gives future counterparties a benchmark to use against it and gives competitors important information they can use to undercut the investor on future proposed transactions.  Private capital investors therefore treat their deal terms as a "core competitive advantage":  "They guard not only the sensitive information they obtain from startups, but also the prices they pay, the structure of their deals, and the proprietary strategies they use to find and evaluate investments."  *See* Rustam Abuzov, Will Gornall & Ilya A. Strebulaev, *The Value of Privacy and the Choice of Limited Partners by Venture Capitalists*, Harv. L. Sch. F. on Corp. Governance (June 3, 2025).

Defendants' proposed redactions protect exactly this kind of core competitive information. The redacted portions of the term sheet contain detailed, confidential information about the financing partner's financing strategy, including its underwriting judgments, pricing, tranche structure, required economics, governance requirements, collateral and guarantor protections, closing conditions, and negotiated downside protections.  The financing partner has explained that those terms—disclosed to Defendants under a non-disclosure agreement—reveal information about its financing strategies that have independent economic value to the financing partner "just as the confidentiality of a secret recipe used by a food or beverage manufacturer has independent economic value."  Declaration of Steven R. Ruby ¶ 7 ("Ruby Decl.") (Ex. 2).  Because that value derives from the secrecy of the information, disclosure of these terms, which are "essential to its

business strategy," would harm the financing partner and give its competitors an "unfair advantage in negotiating transactions." *Id.* ¶¶ 7–8.

The redacted terms also reveal the new financing and governance structure the parties negotiated to refinance the loans. Defendants have an equally strong commercial interest in preventing disclosure of those terms because public knowledge of the new financing and governance structure could affect negotiations with lenders, vendors, counterparties, and competitors. *See* Declaration of James C. Justice III ¶¶ 2–5 ("Justice Decl.") (Ex. 3).

Defendants and the financing party have proposed limited redactions to protect the above-described information and describe in further detail the independent economic value derived from their secrecy and the harm that would result from disclosure here:[3]

### *Pricing, Fees, and Other Economic Terms*

**Redacted portions:** Introductory paragraph; Transaction Summary, rows 3, 4, 9, 11, 12; Term Loan A, heading and rows 1-6, 9, 13; Term Loan B, heading and rows 1-4, 10.

These redactions contain pricing and economic terms, including the allocation of the total loan commitment among tranches, distribution and waterfall provisions, interest rates, fees, default rates, and other economic terms. These terms reveal how the financing partner priced the transaction and what economics were required to justify its commitment of capital. They also

---

[3] Because several row titles are themselves redacted, Defendants identify the redacted portions by row number. For purposes of this memorandum, rows are counted sequentially within each table in the publicly filed redacted term sheet, and a reference to a row includes both the row title and the contents of that row. References to the "Transaction Summary table" refer to the table beginning on the first page of the term sheet; references to the "Term Loan A table" and "Term Loan B table" refer to the separate term-loan tables beginning on pages 5 and 7, respectively. Some redacted portions are listed in more than one category because a single term-sheet row may contain multiple types of sensitive information.

reveal the economics Defendants were willing to accept to obtain financing on a compressed timeline while WSSH seeks extraordinary equitable relief.

Absent redaction, competing lenders (including WSSH or its affiliates) could use the redacted pricing and economic terms to undercut the financing partner in future transactions by offering superior terms. *See* Ruby Decl. ¶¶ 10–11. The financing partner would lose leverage against future counterparties demanding comparable economics in future financing transactions. *See id.* Defendants would also face commercial harm from disclosure because customers, vendors, and litigation adversaries could draw adverse inferences about Defendants' liquidity and negotiating position, or use information about the terms of its financing to gain a negotiating advantage at key turning points, such as when payments were due. *See* Justice Decl. ¶¶ 4–5. Maintaining the confidentiality of this information accordingly provides independent economic value to the financing party and Defendants. Courts in this Circuit regularly protect comparable pricing information as confidential commercial information. *See Sky Angel*, 95 F. Supp. 3d at 885; *see also Vamsi Nallapati & IGM Surfaces, LLC* v. *Justh Holdings, LLC*, 637 F. Supp. 3d 357, 364 (E.D.N.C. 2022); *ATI Indus. Automation, Inc.* v. *Applied Robotics, Inc.*, 801 F. Supp. 2d 419, 427–28 (M.D.N.C. 2011); *TMM Data, LLC*, 2016 WL 2732184, at *1.

### *Distribution, Governance, Consent, and Control and Monitoring Rights*

**Redacted portions:** Transaction Summary, rows 5, 8, 12; Term Loan A, row 9.

These redactions protect the negotiated distribution restrictions and mechanics, waterfall provisions, proceeds-allocation terms, and various governance and control rights. These provisions are among the most sensitive terms in the term sheet because they disclose how control, upside economics, downside protection, and exit optionality were allocated between Defendants and the financing partner. These terms have independent economic value and plainly constitute

confidential commercial information.   As with confidential economic terms, the financing partner's competitors (including WSSH or its affiliates) could use this kind of operational and rights-allocation information to structure competing financing proposals for this or future transactions. *See* Ruby Decl. ¶ 12.  Defendants' competitors, including the Omni Homestead under common control with WSSH, could also use the terms to assess where Defendants have flexibility, where they do not, and how to interfere with or pressure the pending transaction.  Courts protect comparable information where disclosure would reveal business strategy, control rights, or sensitive transaction terms.  *See Rothman*, 2020 WL 7395488, at *4 (permitting the continued redaction of the "specific terms of the confidential proposal" for a contemplated sale because disclosure could "jeopardize the potential transaction").

### *Structure, Repayment Mechanics, and Exit Rights*

**Redacted portions:** Introductory paragraph; Transaction Summary, rows 4, 5, 8; Term Loan A, rows 3-6, 9; Term Loan B, rows 3, 4.

These redactions concern tranche sizing, delayed-draw availability, maturity, amortization, repayment priority, call protection, minimum-return provisions, refinancing mechanics, and sale or refinancing process terms.  The terms disclose how the financing partner allocated risk over time and how Defendants intend to manage repayment, liquidity, and asset preservation while resolving the debt at issue.  The financing partner's competitors could use this information, too, to structure competing proposals for this or future transactions designed to undercut the financing partner's position.  *See* Ruby Decl. ¶¶ 13.  Its future counterparties could demand similar terms. *Id.*  And counterparties or litigation adversaries to Defendants could use this repayment and exit-related information against them—to infer the timing of liquidity pressure or repayment triggers and exert pressure at Defendants' most vulnerable times.  That information accordingly holds

independent economic value if kept confidential.  And courts protect the structure of negotiated commercial arrangements where disclosure would reveal a party's bargaining position or transaction strategy.  *See Sky Angel* 95 F. Supp. 3d at 883.

### *Collateral Package, Guarantors, and Security Terms*

**Redacted portions:** Transaction Summary, rows 1, 5, 7.

These provisions concern sensitive guarantor and security mechanics, including the identity and role of certain non-party guarantors, pledge mechanics, guarantee obligations, and recourse conditions.  The redacted term sheet discloses the general fact that the loan will be secured by specified Greenbrier-related collateral; the redactions protect more sensitive guarantor, consent, pledge, and recourse mechanics that reveal how the financing partner evaluated and protected against collateral and credit risk.  This information has independent economic value and is commercially sensitive.  It reveals how the financing partner drew the line between ordinary secured collateral and additional guarantor or recourse support; what exceptions, exclusions, or third-party pledge arrangements it was willing to accept; and what events it viewed as sufficiently material to affect recourse exposure.

Again, competing lenders or prospective counterparties could use that information to undercut the financing partner's credit package, demand more onerous guaranty or collateral terms, or identify leverage points in any backup financing.  *See* Ruby Decl. ¶ 14.  WSSH or its affiliates could use the same information to test the financing partner's credit-support mechanics, target pressure points involving guarantor exposure, or attempt to interfere with the transaction through issues relating to existing creditor claims.

-12-

**B. Any Public Interest in Disclosure Is Minimal and Far Outweighed by the Risk of Harm to Defendants and the Financing Party.**

The public has no cognizable interest in further disclosure. Defendants submitted the term sheet to substantiate the reality of their agreed refinancing transaction, in support of their request for a limited continuance. Defendants disclosed the information necessary for Plaintiffs (and the public) to assess the financing transaction: it exists, it is intended to repay the loans, it is for up to $500 million, and it represents less than 5% of the financing partner's assets under management. (ECF No. 64 at 1-2.) The redacted term sheet now provides the public and Plaintiff with additional information further confirming the credibility of the lender and the agreement, including the identity of the financing partner.

On this record, the public information available about this transaction is more than sufficient to meet the common law right to information, and the harm of further disclosure outweighs any potential benefit. The requested redactions therefore fit comfortably within the line of cases protecting commercially sensitive information from public disclosure: disclosure would not materially advance the public's understanding of the continuance request, but it would expose sensitive business information that could jeopardize a pending transaction, *see Rothman*, 2020 WL 7395488, at *4, impair future negotiations, *see News Corp.*, 2021 WL 3409663, at *2, reveal confidential transaction economics, *see Vamsi*, 637 F. Supp. 3d at 364, and give competitors or counterparties information they could use for commercial advantage, *see Sky Angel* 95 F. Supp. 3d at 883.

**III.  THE COURT'S "STALKING HORSE" AND "POISONED WELL" CONCERNS DO NOT WARRANT DISCLOSURE OF THE REDACTED TERMS.**

The Order questioned Defendants' argument that disclosure would let competitors "offer terms superior to those of the financing partner," reasoning that initial investor offers are sometimes "practically disclosed in a veiled fashion to other interested, investing entities as the

-13-

multiparty negotiations proceed." (ECF No. 69 at 8.) That concern does not apply to the circumstances here. Defendants are not using this term sheet to run a multi-party auction or public sale process. The term sheet is a bilateral, negotiated financing proposal from a single financing partner to which Defendants owe confidentiality. Regardless of whether veiled disclosure may serve as a negotiating tool in certain circumstances, neither party to the term sheet intends or is permitted to employ such a tool here.

The Court also questioned whether WSSH or TRT-affiliated entities would realistically have future commercial dealings with Defendants, describing that relationship as a possible "poisoned well." *Id*. The commercial risk here is different. Defendants are concerned about competition and interference, not future collaboration. WSSH's parent owns a direct competitor of The Greenbrier, and WSSH's owners have previously expressed interest in a financing and 50% acquisition transaction involving The Greenbrier. (ECF No. 69 at 4-5.) A competitor does not need a cooperative future relationship to exploit a term sheet. It can use the information to approach the financing partner to interfere with the transaction, pressure vendors or suppliers, time litigation strategy, or impair confidence in the transaction. *See supra* Section II (describing how competitors might take advantage of term sheet provisions).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court permit the redacted provisions of the term sheet to remain confidential, consider the unredacted term sheet *in camera*, and grant such further relief as necessary to protect Defendants' and the non-party financing partner's confidential commercial information while allowing the Court to evaluate the pending request for a continuance.

Dated:  May 27, 2026

                                        Respectfully submitted,

/s/ *Steven R. Ruby*                     /s/ *H. Rodgin Cohen*
Steven R. Ruby (WVSB #10752)             H. Rodgin Cohen (WVSB #767)
Raymond S. Franks II (WVSB #6523)        Robert L. Jones IV (*pro hac vice*)
David R. Pogue (WVSB #10806)             SULLIVAN & CROMWELL LLP
CAREY DOUGLAS KESSLER & RUBY             125 Broad Street
PLLC                                     New York, NY 10004
901 Chase Tower, 707 Virginia Street, East  Telephone:  (212) 558-4000
P.O. Box 913                             cohenhr@sullcrom.com
Charleston, WV 25323                     jonesrob@sullcrom.com
Telephone:  (304) 345-1234
Facsimile:  (304) 342-1105               Amanda Flug Davidoff (*pro hac vice*)
sruby@cdkrlaw.com                        Oliver W. Engebretson-Schooley (*pro hac vice*)
rfranks@cdkrlaw.com                      1700 New York Avenue, N.W.
drpogue@cdkrlaw.com                      Suite 700
                                         Washington, D.C. 20006
                                         Telephone:  (202) 956-7500
                                         davidoffa@sullcrom.com
                                         engebretsono@sullcrom.com


*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2026, the foregoing document was served upon the following counsel by means of the Court's CM/ECF filing system.

Ellen S. Cappellanti, Esq.
Albert F. Sebok, Esq.
Elizabeth B. Elmore, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV 25301-3202
ecappellanti@jacksonkelly.com
asebok@jacksonkelly.com
ebelmore@jacksonkelly.com

Seth Patrick Hayes, Esq.
Zachary Hanley Warder, Esq.
JACKSON KELLY PLLC
3000 Swiss Pine Way, Suite 200
P.O. Box 619
Morgantown, WV 26501
shayes@jacksonkelly.com
zachary.warder@jacksonkelly.com

R. Clay Hoblit, Esq.
HOBLIT DARLING RALLS HERNANDEZ
& HUDLOW
802 North Carancahua Street
Suite 2100
Corpus Christi, TX 78401
choblit@hdr-law.com

Charles M. Jones, II
Richard D. Anigian
HAYNES & BOONE
Suite 2300
2801 North Harwood Street
Dallas, TX 75201
charlie.jones@haynesboone.com
rick.anigian@haynesboone.com

Cassandra Lynn Means
John Francis Willems
OFFICE OF THE ATTORNEY GENERAL
State Capitol, Room 435-W
Charleston, WV 25305
cassandra.l.means@wvago.gov
jwillems@wvago.gov

/s/ *H. Rodgin Cohen*
H. Rodgin Cohen (WVSB #767)