# Exhibit 1

*Strictly Private and Confidential*



May 20, 2026

The Honorable Jim Justice
Justice Family Group LLC

## <u>Non-Binding Term Sheet</u>

Dear Senator Justice,

On behalf of Kennedy Lewis Investment Management LLC (together with its affiliates, and funds and accounts managed by it and its affiliates, collectively, "<u>KLIM</u>", "<u>we</u>" or "<u>us</u>"), we are pleased to present to Justice Family Group LLC (the "<u>Company</u>" or "<u>you</u>") a non-binding financing term sheet (this "<u>Term Sheet</u>") for a $500 million loan and ███████████ , consisting of up to ████ million Term Loan A, ███ million Delayed-Draw Term Loan A and up to ████ million Term Loan B ████████████████████ ███████

## TRANSACTION SUMMARY

| | |
|---|---|
| **Loan Parties:** | Justice Family Group LLC ("JFG"), Holdings (as defined below), the Borrower (as defined below) and its wholly owned subsidiaries; ██████████████████ ██████████████████████████████████████ |
| **Formation of Holdings and the Borrower:** | Prior to the transaction closing date, the Justice family and JFG will create a new holding company ("Holdings") and a wholly-owned subsidiary of Holdings, "Greenbrier TopCo" (the "Borrower"). <br><br> Immediately prior to the initial closing date, the Justice family collectively will, and will cause JFG to, contribute 100% of the equity interests in Greenbrier Resort assets, adjacent development projects, land and timber farms as agreed with KLIM (collectively, the "Greenbrier Assets") to the Borrower; provided that it is acknowledged and agreed that the Greenbrier Assets shall include the assets that are currently pledged in support of the Fortress/"Tranche B" facility and the letters of intent with respect to their sale and/or development (such assets, the "Tranche B Assets"). |
| **Lenders:** | KLIM and its affiliates and third-parties to be mutually agreed by the Company and KLIM |
| **Loan Commitment:** | • $500 million Loan (the "Loan") consisting of: <br> • Up to ████ million Term Loan A funded on the initial closing date ("Term Loan A") <br> • ████ million Term Loan A available during Draw Availability Period ("Delayed-Draw Term Loan A") at KLIM's sole discretion <br> • Up to ████ million Term Loan B funded on the initial closing date (the "Term Loan B"). |
| ██████████ | ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ |

| | |
|---|---|
|  | |
| **Use of Proceeds:** | Repay in full all existing secured indebtedness of the Company secured by the Greenbrier Assets and Tranche B Assets, fund transaction expenses, repay certain obligations to be mutually agreed, capital expenditures and general corporate purposes |
| **Collateral / Guarantors:** | The Loan shall be secured on a first-lien basis by a pledge of the equity of the Borrower and each of its wholly owned subsidiaries and by all Greenbrier Assets; provided that (i) certain subsidiaries may be excluded with the consent of KLIM ██████████████████████████████████ The Loan shall be personally guaranteed by ████████████ and by all Loan Parties and all existing and future direct and indirect subsidiaries of the Loan Parties, subject to customary exceptions acceptable to KLIM; ████████████████████████ |





| | |
|---|---|
| **Expenses:** | Borrower shall reimburse KLIM for all out-of-pocket fees and expenses incurred from and after the date of acceptance of this Term Sheet in connection with the contemplated financing, whether or not the transaction closes. Such reimbursable expenses shall include, without limitation, fees and expenses of external legal counsel and other service providers, consultants, agents, or advisors. Upon execution of this Term Sheet, the Borrower shall fund an expense deposit of ███████ for transaction fees and expenses, payable as follows: (i) ████████ funded within thirty (30) days after signing, and (ii) an additional ████████ funded within sixty (60) days after signing (if the transaction has not closed by such date). Such expense deposit shall be reimbursable out of the transaction funding at closing. |
| **Indemnification:** | The ████████ and the Loan Parties shall, jointly and severally, indemnify, defend and hold harmless KLIM, the Lenders, and each of their respective affiliates, and the partners, members, managers, directors, officers, employees, agents, advisors and representatives of each of the foregoing (collectively, the "Indemnified Parties"), from and against any and all losses, claims, damages, liabilities and reasonable and documented out-of-pocket expenses (including the reasonable and documented fees, charges and disbursements of one primary counsel for all Indemnified Parties, taken as a whole, and, if reasonably necessary, one local counsel in each relevant jurisdiction) (collectively, "Losses") arising out of, resulting from, or in connection with (i) this Term Sheet, the Loan Agreement, any other Loan Document or the transactions contemplated hereby or thereby, (ii) the Loan or the use or proposed use of the proceeds thereof, or (iii) any actual or threatened claim, litigation, investigation, arbitration or proceeding relating to any of the foregoing, in each case whether or not brought by a third party, whether or not any Indemnified Party is a party thereto, and whether or not the transactions contemplated hereby are consummated; provided, however, that no Indemnified Party shall be entitled to indemnification hereunder for any Losses to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have resulted from such Indemnified Party's (x) gross negligence, (y) willful misconduct or (z) material breach of the Loan Documents. The Loan Parties shall advance to the Indemnified Parties, promptly upon written request, |

| | reasonable and documented out-of-pocket expenses (including reasonable counsel fees) as and when incurred in connection with any matter for which indemnification is or may be available hereunder, subject to customary undertakings to repay such amounts if it is finally determined that the Indemnified Party was not entitled to indemnification. The indemnification obligations set forth in this paragraph shall be binding on the ███████ and the Loan Parties whether or not the transactions contemplated hereby are consummated and shall survive the expiration or termination of this Term Sheet, the Loan Agreement and the other Loan Documents and the repayment in full of the Loan. |
|---|---|
| ████ |  |
| **Closing Conditions:** | Standard and customary closing conditions, including but not limited to: (i) confirmatory due diligence satisfactory to KLIM in its sole discretion; (ii) final documentation mutually satisfactory to the Loan Parties and KLIM; (iii) final KLIM investment committee approval; and (iv) any court and regulatory approvals or orders that KLIM determines to be necessary or desirable in connection with the transactions contemplated hereby, including, without limitation, any court order relating to the payoff and release of the existing lenders' claims. |

**██ MILLION TERM LOAN A / ██ MILLION DELAYED-DRAW TERM LOAN A**

| | |
|---|---|
| **Interest Rate:** | ████████████████ |
| **Upfront Fee:** | ████████████████ |
| **Maturity:** | ████████ |

| | |
|---|---|
| **Draw Availability Period:** | ███████████████ |
| **Amortization:** | ███ |
| ██████████ | ██████████████████████████████████████████████████████████████████ |
| **Representations & Warranties** | Usual and customary for facilities of this type, including without limitation, with respect to all outstanding liabilities of the Loan Parties prior to the closing date. |
| **Mandatory Prepayments:** | Customary mandatory prepayments of the Term Loan A to be included based on excess cash flow, subject to terms to be mutually agreed. |
| ██████████ | █ ██████████████ |
| **Affirmative Covenants:** | Customary affirmative covenants, including, without limitation, covenants in respect of ongoing financial and operational reporting, settlement of certain liabilities to be mutually agreed, access rights, insurance, maintenance of property and other customary provisions, which, in certain cases, shall not be subject to a cure period. |
| **Negative Covenants:** | Customary negative covenants, including, without limitation, covenants limiting liens, indebtedness and preferred equity, asset sales (including mandatory repayment) and dispositions, restricted equity payments, cash payments on junior or unsecured indebtedness, investments, affiliate transactions, fundamental changes, amendments to organizational documents, accounting changes, lines of business, negative pledge clauses and other customary provisions. |
| **Events of Default:** | Usual and customary for facilities of this type, subject to the representations and warranties, certain affirmative covenants and all negative and financial covenants not being subject to a cure period. |
| ██████████ | ██████ |

- 6 -

██████ **MILLION TERM LOAN B**

| | |
|---|---|
| **Interest Rate:** | ████████████████████████ |
| **Upfront Fee:** | ██████████████████████████████ |
| **Maturity:** | ████████████████ |
| **Amortization** ██ ██████ **:** | ██████████████████████████ ██████████ |
| **Mandatory Prepayments:** | Customary mandatory prepayments of the Term Loan B to be included based on excess cash flow, subject to terms to be mutually agreed. |
| **Representations & Warranties** | Usual and customary for facilities of this type, including without limitation, with respect to all outstanding liabilities of the Loan Parties prior to the closing date. |
| **Affirmative Covenants:** | Identical to Term Loan A and Delayed-Draw Term Loan A. |
| **Negative Covenants:** | Identical to Term Loan A and Delayed-Draw Term Loan A. |
| **Events of Default:** | Identical to Term Loan A and Delayed-Draw Term Loan A. |
| ████████ | ████ |

**A.**     **Exclusivity:**  In consideration of the substantial time and expense that KLIM will incur in connection with conducting due diligence and negotiating and documenting the Loan Agreement and the Loan Documents, each of the ▮▮▮▮▮▮▮ and the Loan Parties agrees that, for the period of time commencing on the date on which such party signs this letter and 45-days after signing (provided that either the Company or KLIM may elect one 45-day extension, which may be provided over email, provided that the parties are working in good faith towards closing a transaction) (the "***Exclusivity Period***"), the ▮ ▮▮▮▮▮▮ and the Loan Parties (a) shall negotiate in good faith with KLIM with respect to the Loan Agreement and the Loan Documents and will facilitate the completion by KLIM and its representatives of all appropriate remaining business, legal, financial, and other customary due diligence, and (b) shall not, and shall cause their subsidiaries and affiliates, and all of their respective officers, managers, directors, employees, interest holders, legal counsel, financial advisors, and other agents, advisors, and representatives (collectively, the "***Representatives***") not to, directly or indirectly, solicit, initiate or encourage any discussions, inquiries, proposals or offers from, or participate in any negotiations or discussions with, or enter into any letter of intent, memorandum of understanding, agreement in principle, commitment or agreement with, or provide or make available any information (including, without limitation, by way of providing access to the Loan Parties' management teams) to, any person, entity or group other than KLIM relating to any proposal or offer for or inquiry about any debt financing, however structured, involving any of the ▮▮▮▮▮▮▮ and the Loan Parties or any of their subsidiaries or otherwise conflicting with the Loan Agreement and the Loan Documents (each, an "***Alternative Transaction***"), and shall not respond to any inquiry made by any person concerning any such Alternative Transaction (including persons with whom any of the ▮▮▮▮▮▮▮ or the Loan Parties or their subsidiaries may have had discussions prior to the date hereof), except to advise such person that a prospective party has been granted an exclusive right to negotiate with the ▮▮▮▮▮▮▮ and the Loan Parties, without identifying KLIM. Each ▮▮▮▮▮▮▮ and Loan Party represents and warrants to KLIM that, as of the date hereof, neither such party  nor, if applicable, any of its subsidiaries or affiliates is party to or bound by any agreement relating in any way to a proposed debt financing similar to the Loan Agreement with KLIM for itself or any of its subsidiaries or any other transaction that would conflict with the Loan Agreement and the Loan Documents.

**B.**     **Non-Binding Letter:** Other than paragraphs A, B, C and D and the Expenses, Indemnification and Break Fee sections above (which shall be binding on the parties hereto and enforceable), neither this letter nor the Term Sheet creates any legally binding obligations, rights or liabilities whatsoever on KLIM, any of its affiliates or the Loan Parties to consummate the Loan Agreement and the Loan Documents or the other transactions contemplated hereby.  Neither this letter nor any party's execution hereof shall constitute an obligation or commitment of any party to enter into definitive agreements or give any party rights or claims against the other in the event any party for any reason terminates negotiations to affect the Loan Agreement and the Loan Documents.  Without limiting the foregoing, the matters discussed herein are in all respects subject to due diligence and the negotiation of acceptable documentation.

**C.**     **Confidentiality:** The proposal set forth in this letter and the Term Sheet is strictly confidential. The Loan Parties and their subsidiaries may not disclose the existence of this letter or the Term Sheet to any third party, other than the Representatives, without the prior written consent of KLIM, in each case subject to the confidentiality letter between KLIM, the ▮▮▮▮▮▮▮ and the Loan Parties in existence as of the date hereof.

**D.**     **Miscellaneous:**  This letter and all acts and transactions pursuant hereto and the rights and

- 8 -

obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law that would require the application of the laws of another jurisdiction.  Each party hereto irrevocably submits to the exclusive jurisdiction of (i) the United States District Court for the Southern District of New York and (ii) the courts of the State of New York sitting in New York County (and, in each case, any appellate court therefrom) for the resolution of any action, suit or proceeding arising out of or relating to the binding provisions of this letter and the Term Sheet (including the Exclusivity, Confidentiality, Expenses, Indemnification, Break Fee and Miscellaneous sections) or the transactions contemplated hereby, and agrees that all claims in respect of any such action, suit or proceeding shall be heard and determined exclusively in such courts. Each party irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, (x) any objection that it may now or hereafter have to the laying of venue of any such action, suit or proceeding in any such court and (y) any claim or defense of inconvenient forum (forum non conveniens) to the maintenance of any such action, suit or proceeding in any such court. Each party agrees that a final, non-appealable judgment in any such action, suit or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. EACH PARTY HERETO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THE BINDING PROVISIONS OF THIS LETTER OR THE TERM SHEET OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY. Each party hereto irrevocably consents to the service of any process, pleadings, notices or other papers in any such action, suit or proceeding by the mailing or delivery of a copy thereof to such party at its address set forth in this letter (or at such other address as may be designated by such party in a written notice to the other parties hereto), and agrees that such service shall constitute good and sufficient service of process. Nothing in this letter shall affect the right of any party to serve process in any other manner permitted by applicable law. Each party hereto acknowledges and agrees that (i) a breach or threatened breach of any binding provision of this letter or the Term Sheet would cause irreparable harm to the non-breaching party, for which monetary damages would not be an adequate remedy, and (ii) accordingly, in the event of any such breach or threatened breach, the non-breaching party shall be entitled to seek specific performance of, and injunctive or other equitable relief in respect of, such binding provisions, in each case without the requirement to post any bond or other security and without the need to prove actual damages, in addition to any other remedy to which such party may be entitled at law or in equity. If one or more provisions of this letter are held to be unenforceable under applicable law, such provision(s) shall be excluded from this letter and the balance of the letter shall be interpreted as though such provision were so excluded and shall be enforceable in accordance with its terms. This letter may be executed in two or more counterparts (including by electronic means, including facsimile or portable document format (.pdf)), each of which shall be deemed an original and all of which together shall constitute one instrument.

[Signature Page Follows]

We look forward to discussing this proposal in more detail, but please feel free to reach out if you have any questions in the meantime.

Sincerely,

Kennedy Lewis Investment Management LLC

_____

Name: David Chene
Title: Co-Founder, Co-Portfolio Manager & Co- Managing Partner

Agreed and Accepted:

Justice Family Group
LLC



Name: The Honorable Jim Justice
Title: Authorized Representative

We look forward to discussing this proposal in more detail, but please feel free to reach out if you have any questions in the meantime.

Sincerely,

Kennedy Lewis Investment Management LLC



Name: David Chene
Title: Co-Founder, Co-Portfolio Manager & Co- Managing Partner

Agreed and Accepted:

Justice Family Group
LLC

Name: The Honorable Jim Justice
Title: