# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

WHITE SULPHUR SPRINGS HOLDINGS, LLC,
*a Texas Limited Liability Company,*

      Plaintiff,

v.                                        CIVIL ACTION NO. 5:26-cv-00257

JAMES C. JUSTICE, II,
*individually,* and
CATHY L. JUSTICE,
*individually,* and
JAMES C. JUSTICE, III,
*individually,* and
GREENBRIER HOTEL CORPORATION,
*a West Virginia Corporation,* and
GREENBRIER MEDICAL INSTITUTE, LLC,
*a West Virginia Limited Liability Company,* and
OAKHURST CLUB, LLC,
*a West Virginia Limited Liability Company,* and
GREENBRIER GOLF AND TENNIS CLUB CORPORATION,
*a West Virginia Corporation,* and
GREENBRIER LEGACY COTTAGE DEVELOPMENT COMPANY I, INC.,
*a West Virginia Corporation,* and
GREENBRIER LEGACY COTTAGE DEVELOPMENT II, INC.,
*a West Virginia Corporation,*

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is Defendants' Motion to Continue Briefing Deadlines and Scheduled Hearings [ECF 58] ("Suspension Motion"), filed May 22, 2026.

## I.

*Federal Rule of Civil Procedure* 6(b) provides "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if a request is made,

before the original time . . . expires." Fed. R. Civ. P. 6(b); *see* Fed. R. Civ. P. 16(b)(4) ("A schedule

may be modified only for good cause and with the judge's consent."); L.R. Civ. P. 16.1(f)(1)

("Time limits in the scheduling order . . . may be modified for good cause by order."); *see also*

*Benjamin v. Sparks*, 986 F.3d 332, 344 (4th Cir. 2021) (stating "[t]he deadlines set forth in a court's

case management order serve an important function in the flow of litigation," but acknowledging

modification is appropriate for good cause); *Hawkins v. Leqqett*, 955 F. Supp. 2d 474, 498 (D. Md.

2013), *aff'd sub nom.*, *In re Canarte*, 558 Fed. App'x 327 (4th Cir. 2014) (concluding the Rule

16(b) good cause standard focuses on, *inter alia*, the "timeliness of the submission . . . and the

danger of prejudice to the non-moving party").

## II.

The Suspension Motion describes the relief sought: "that the Court . . . continue all

briefing deadlines for 60 days, continue the pending June 1, 2026 prehearing conference and June

8, 2026 evidentiary hearing, and schedule a telephonic status conference for the week of June 22,

2026." [ECF 58 at 6]. Defendants, as noted in earlier orders, represent they "have obtained a term

sheet for new financing that will allow them to repay the total amount of debt that Plaintiff White

Sulphur Springs Holdings, LLC [("WSSH")] claims it is owed. That repayment will moot all

pending motions and resolve this action." [*Id.* at 1]. On May 23, 2026, Defendants initially filed

the term sheet ex parte and *in camera*, [ECF 65], but on May 27, 2026, pursuant to the Court's

order, Defendants filed a redacted version on the public docket. [*See* ECF 73-1].

Defendants contend good cause exists to continue the deadlines within the

Amended Case Management Order [ECF 35] inasmuch as (1) the agreement "with a well-

qualified, highly capitalized financing partner" will allow Defendants "to repay the balance of the

Loans in full," (2) "the financing transaction will close in or around late June 2026," (3) a brief

2

continuance will allow for "imminent repayment of the Loans" and "will save considerable party and Court resources," (4) Defendants "have diligently pursued this action, have complied with all Court ordered deadlines, and have at all times acted in good faith," and (5) no prejudice will result to WSSH as a result of the continuance "because it will enable repayment . . . while relieving WSSH of the burden of litigating issues that will soon become moot." [ECF 58 at 2–6]. Further, Defendants contend they previously agreed to a 30-day continuance for WSSH to amend its complaint, so they assert a comparable accommodation is warranted to facilitate a transaction that would achieve full repayment and resolve the case. [ECF 64].

WSSH contends, *inter alia*, (1) Defendants' debts to WSSH exceed strict loan repayment, and additionally include interest, fees, and expenses that continue to accrue, with no actual offer to repay having yet been made by Defendants, (2) Defendants' financing is too speculative to meet the good cause standard, particularly considering WSSH's expected prejudice as a result of mounting expenses, (3) the term sheet is non-binding in nature, which means the financing could collapse, (4) Defendants have consistently violated the Fourteenth Amended and Restated Forbearance Agreement's requirements, including obligations to provide monthly financial reporting, identify fund transfers, supply bank statements, and maintain full transparency regarding any refinancing efforts, (5) Defendants have in the past used non-binding letters of intent to stall litigation, so "the promise of refinancing . . . does not justify a continuance," and (6) the requested 60 days is inconsistent with the timing required to conduct the "extensive due diligence [necessary for] . . . a complex asset like The Greenbrier[.]" [*See* ECF 63; ECF 76 at 1–2, 7].[1]

---

[1] Putative intervenor, West Virginia Tax Division of the Department of Revenue ("Tax Division"), "takes no position as to whether the [Suspension Motion] should be granted or denied." [ECF 70 at 1].

3

As a preliminary matter, WSSH urges that, in lieu of using the textual, good cause standards contemplated by the drafters of the rules quoted at the outset, the Court should instead use the so-called *Landis* factors, which were designed in 1936 by Justice Cardozo and his colleagues to address "the power of a court to stay proceedings in one suit until the decision of another[,]" *Landis v. N. Am. Co.*, 299 U.S. 248, 249 (1936). [*See* ECF 63 at 4–5 ("The better gauge for whether good cause for a continuance exists is . . . (1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party[.]")]; *see also Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 335 n.8 (4th Cir. 2019) (quoting *Landis*, 299 U.S. at 254); *White v. Ally Financial Inc.*, 969 F. Supp. 2d 451, 462 (S.D. W. Va. 2013) (citing *Landis*, 299 U.S. at 255). The Court need not, however, import a bespoke standard. That ship has sailed with the drafters' textual choice. Simply put, the good cause standard controls respecting the requested continuance/administrative suspension.

For several reasons, Defendants' request satisfies the good cause standard. *See* Fed. R. Civ. P. 6(b); *see also* Fed. R. Civ. P. 16(b)(4); L.R. Civ. P. 16.1(f)(1); *Hawkins*, 955 F. Supp. 2d at 498). Foremost, Defendants have acted diligently. There was no delay in seeking the requested administrative suspension once the potential financing transaction materialized.

Second, comparative prejudice weighs in favor of granting the brief delay sought. The Court notes WSSH recently sought to amend its complaint, which resulted in some delay, [*see* ECF 33]. [*See* ECF 64 at 3]. That request, while certainly justified, is somewhat in tension with its current assertion of prejudice. Next, although Defendants seek a 60-day suspension, they also repeatedly assert the financing transaction should be completed by the end of June. [*See* ECF 58 at 4 (stating "the pending refinancing" and repayment of the loans "will likely occur within the

next 45 days"); *id.*, at 2–3 (stating "the financing transaction will close in or around late June 2026")].

Finally, receivership is an exceptionally serious matter. It is the corporate equivalent of martial law, wherein a court-appointed outsider takes command of the company's economic lifeblood under judicial authority. This is why the potential for prejudice to the receivership opponent is often of the cataclysmic variety. Indeed, the Court is mindful of a longstanding observation astutely put decades ago by Judge Samuel G. Bratton of the United States Court of Appeals for the Tenth Circuit. The viewpoint is all the more worthy of consideration given Judge Bratton was a widely regarded, deep legal and practical thinker who served not only as chief judge of his circuit, but also as (1) a United States Senator (for multiple terms), (2) a state court trial judge, (3) a state supreme court justice, and, additionally, was a near miss for a Supreme Court appointment ultimately secured by Justice Hugo Black. Judge Bratton said this:

> [T]he power to appoint a receiver with authority to take custody and control of property and operate it as a going concern is a delicate one which is jealously safeguarded, and it should be exerted sparingly. A court should be cautious and circumspect in the exertion of the remedy because perversion or abuse may work great hardship.

*Skirvin v. Mesta*, 141 F.2d 668, 673 (10th Cir. 1944), *quoted in* 12 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2983 (3d ed. 2023).

In the face of essentially divesting the Defendants of their highly prized, historic, and long-held assets, a final attempt to avoid that strong medicine tips the balance in favor of allowing them a brief period to consummate the subject transaction. If Defendants seek further extensions for either (1) more extended negotiations with, or financing due diligence by, the financing partner, or (2) to allow additional forays with other lenders, the balance of prejudice will likely shift rather abruptly.

## III.

Accordingly, for good cause shown, the Court **GRANTS AS MOULDED** the Suspension Motion [**ECF 58**] and **ORDERS** as follows:

1. That the parties are relieved of the deadlines set forth in the Amended Case Management Order [**ECF 35**];

2. That Defendants shall file status reports on **June 14 and July 3, 2026**, apprising the Court of progress made toward closing the financing transaction, with the expectation that closing will occur on or before July 16, 2026;

3. That, if the transaction abates at any point prior to closing, Defendants shall notify the Court on the docket forthwith, and in no event later than twenty-four (24) hours after they receive notice from, or provide notice to, the financing partner of the cancelled transaction; and

4. That, upon occurrence of the eventuality described in paragraph 3, the parties should be prepared forthwith to proceed to the hearings and other case events to be set in a revised Amended Case Management Order.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER:  May 30, 2026

Frank W. Volk
Chief United States District Judge