**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

WHITE SULPHUR SPRINGS HOLDINGS, LLC,

      Plaintiff,

      v.

JAMES C. JUSTICE, II, *et al.*,

      Defendants.

Civil Case No. 5:26-cv-00257

Hon. Frank W. Volk

**<u>DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE</u>**

Defendants James C. Justice II; Cathy L. Justice; James C. Justice III; Greenbrier Hotel Corporation; Greenbrier Medical Institute, LLC; Oakhurst Club, LLC; Greenbrier Golf and Tennis Club Corporation; Greenbrier Legacy Cottage Development Company I, Inc.; and Greenbrier Legacy Cottage Development II, Inc., respectfully submit this response to the Court's July 19, 2026 Order to Show Cause.  (ECF No. 92.)

Plaintiff White Sulphur Springs Holdings, LLC ("WSSH") in this action claims that it is owed a substantial debt under a series of loans that it surreptitiously purchased.  Fearing loss of an opportunity to seize a principal competitor of its owner, WSSH instituted this action on April 9, 2026, to seek the extraordinary remedy of placing the assets that secure the loans, including The Greenbrier Resort, into receivership.  (ECF No. 1; ECF No. 39.)  But on May 22, 2026, Defendants informed the Court that they had entered into an agreement with a new financing partner (Kennedy Lewis Investment Management LLC ("KLIM")) to obtain financing sufficient to repay the entire amount that WSSH claimed it was owed.  (ECF No. 58 at 1–3.)  Defendants therefore asked the Court to pause the proceedings while they worked to close that transaction.  (*Id.* at 6.)  As

Defendants explained, it made little sense for the Court and the parties to devote substantial resources to litigating WSSH's request for a receivership when Defendants were in the process of securing financing that would eliminate any conceivable need for a receivership by repaying WSSH in full—and at an extraordinary profit (an annualized return of over 100%) no less—for passively holding the debt for just a few months. (*Id.* at 4–6.) Despite insisting that its only aim was to be paid what it claimed to be owed, WSSH opposed the requested pause, baselessly asserting that the financing was speculative and could be a delay tactic. (ECF No. 63 at 1–6.) To assuage any possible doubt, Defendants provided the term sheet to WSSH and the Court, and explained that the parties were beginning the process of completing the necessary diligence and other closing requirements, which could take several months. (ECF No. 65; ECF No. 73-1; ECF No. 64 at 1–3.)

In its May 30, 2026 Memorandum Opinion and Order, the Court recognized that "receivership is an exceptionally serious matter"—the "corporate equivalent of martial law"—that often imposes on the opponent of the receivership prejudice "of the cataclysmic variety." (ECF No. 80 (the "Suspension Order") at 5.) The Court recognized that "comparative prejudice" weighed in favor of granting a stay so that Defendants could complete the transaction that would fully repay WSSH and maintain The Greenbrier and its thousands of employees. (*Id.* at 4–6.) That basis for continuing to pause proceedings is just as strong, if not stronger, today. As detailed below and in the attached submissions from the transaction parties' counsel, Defendants and KLIM have undertaken substantial effort to advance this complicated transaction and are on the verge of closing. (*See* Ex. A (KLIM Letter); Ex. B (Ruby Decl.).) Those documented efforts—totaling thousands of hours spent by principals and advisors—dispel any suggestion that the transaction is not genuine, and they make closing more certain today than it was when the Court first granted a

pause in these proceedings.  Indeed, just a few steps remain to get this transaction over the finish line.  Resuming receivership proceedings *now*, when the transaction is nearly complete—and for a financing that would moot this action entirely and result in WSSH receiving a profit of nearly $100 million for doing nothing more than holding the loans for approximately four months—would risk those enormous efforts that the transaction parties have undertaken and cause substantial prejudice to Defendants.  In these circumstances, Defendants respectfully submit that a brief additional pause is warranted so that Defendants and KLIM can get this deal done, WSSH can be paid what they claim they are owed, and this action can be resolved.  When considering the equities, Defendants also ask the Court to take into account WSSH's efforts to undermine the refinancing transaction.  Although WSSH stands to reap extraordinary profit, the real objective of its owner is to purchase one of West Virginia's leading business operations at a price that would yield exponentially greater profit.

As Defendants have informed the Court in their periodic status reports, the transaction parties have worked diligently since the Suspension Order to move the transaction forward.  On June 14, 2026, Defendants filed their first status report, advising the Court that the transaction was proceeding as expected.  (*See* ECF No. 84 at 1.)  During the preceding week, more than 20 representatives of KLIM and its advisors had conducted on-site due diligence at The Greenbrier. (*Id.* at 1–2.)  Financial due diligence had also reached an advanced stage.  (*Id.* at 2.)  Neither the property inspection nor the financial due diligence had identified any issues that would adversely affect the parties' ability to close, title commitments for the relevant real property had been prepared, and draft transaction documents were under discussion.  (*Id.*)  At that time, the transaction parties anticipated that the transaction would close by July 16, 2026.  (*Id.*)

As explained in Defendants' second status report, by July 3, 2026, due diligence remained on track and was substantially complete.  (ECF No. 85 at 1.)  Both Defendants and KLIM had confirmed their intention to consummate the transaction, and KLIM had confirmed that it had full funding for the transaction.  (*Id.*)  Work on the primary transaction documents was ongoing though nearing completion, Defendants had requested confirmation of payoff amounts from creditors (including WSSH), and the work remaining before closing consisted principally of completing supporting documents and schedules, completing an internal reorganization, and finalizing other closing deliverables.  (*Id.* at 1–2.)  At that time, Defendants and KLIM still expected the financing transaction to close by July 16, 2026.  (*Id.* at 1.)  Defendants also volunteered to provide the Court an additional update on the status of the transaction by July 10, 2026.  (*Id.* at 2.)

As the transaction progressed and closing neared, Defendants also began engaging with WSSH regarding repayment of the loans.  On June 26, 2026, Defendants' counsel contacted WSSH's local counsel to determine whether WSSH was interested in discussing a global resolution of the parties' claims in connection with repayment of the loans.  (*See* ECF No. 88 at 1–2.)  On July 2, 2026, Defendants' counsel also contacted WSSH's national counsel to request a payoff statement and discuss such a resolution, and the parties spoke on July 4, 2026.  (*Id*. at 2.)  WSSH's counsel stated that WSSH would provide a payoff statement (*id.*), which ultimately did not occur until July 8, 2026 (*see* Ex. C (email correspondence) at 5).  WSSH's counsel also reported that WSSH was interested in discussing a global resolution of the claims pending in this action and those pending in a related action in the Circuit Court for Greenbrier County.  (*Id*.)

On July 10, 2026, Defendants voluntarily submitted a third status report to keep the Court apprised of the transaction's progress.  (*See* ECF No. 86.)  Defendants advised the Court that the primary transaction documents had been substantially completed, payoff amounts had been

obtained from creditors, and Defendants had begun the necessary pre-closing internal reorganization. (*Id.* at 1–2.)  Defendants also noted that they had submitted materials to the West Virginia Lottery Commission ("WVLC") for review of the proposed transaction as it relates to The Greenbrier's casino license.  (*Id.* at 2.)  Defendants further explained that the principal remaining tasks were to complete supporting documents and schedules, finish the reorganization, finalize the closing deliverables, and complete the WVLC's review process.  (*Id.*)  At that time, "subject to the WVLC's review timeline and any further discussions between the parties to this case" about a potential global resolution of all claims, Defendants and KLIM expected that the transaction could be closed by the week of July 20, 2026, and so promptly informed the Court of that new expected timeline.  (*Id.*)

On July 14, 2026, having received no further engagement from WSSH about global resolution of all claims, Defendants' counsel informed WSSH that Defendants had secured financing sufficient to pay WSSH's approximately $387 million demand in full.  (*See* ECF No. 88 at 2.)  Defendants' counsel further advised that Defendants remained willing to pursue a global resolution of the parties' disputes in lieu of paying WSSH's demand in full, if WSSH wished to do so.  (*Id.* at 2–3.)  But the following day, WSSH—having apparently decided to reject the offer of further discussions—filed a response asserting that Defendants had conditioned repayment on settlement discussions and significantly misrepresenting to this Court the parties' discussions and WSSH's knowledge of the status of the transaction and the closing process.  (ECF No. 87 at 1–4.)  Defendants filed a reply on July 16, 2026, to correct those mischaracterizations.  (ECF No. 88 at 1–3.)  As Defendants explained, repayment was not conditioned on settlement discussions; rather, Defendants had secured financing sufficient to pay WSSH's demand in full while separately offering to discuss a global resolution if WSSH remained interested.  (*Id.*)  Defendants further

explained that WSSH had been kept informed of the transaction's progress throughout.  (*Id.* at 1–3.)

To summarize, as of today, Defendants and KLIM have completed the following actions:

- The primary transaction documents are in substantially final form.

- On-site and financial due diligence are complete.  Neither revealed any issues that would affect the ability of the parties to close the transaction.

- KLIM conducted a property inspection that identified no issues that would affect the ability of the parties to close the transaction.

- Title commitments for the real property involved in the transaction are substantially complete.

- KLIM confirmed that funding is available to fully fund the transaction.

- Defendants have received payoff amounts from creditors to be repaid at closing.

- Materials have been submitted to the WVLC for review of the proposed transaction as it relates to The Greenbrier's casino license, and Defendants are in regular communication with the WVLC regarding the transaction.

In light of the above, Defendants and KLIM now anticipate that all deal documents will be finalized **this week**.  That leaves only three outstanding items—none of which is wholly within Defendants' control—that would remain to be completed before the transaction can close.

*First*, Defendants are awaiting the WVLC's approval of the transaction as it relates to The Greenbrier's casino license.  The primary transaction documents, along with other materials relevant to the approval process, are under review by the WVLC.  Regulatory approvals are the paradigmatic example of a part of the deal process that the parties cannot entirely control (and thus should not be penalized for), but Defendants are in regular communication with WVLC and expect that the transaction will be approved in short order.  Defendants will continue to apprise the Court of developments in this area.

*Second*, because owned real property is a material consideration in this transaction, the deal will require title insurance from a third-party title insurance company. The parties have been working closely with the title insurer since the earliest stages of the deal, but because of the size of the transaction and the amount of real property involved, a handful of items remain outstanding in this area. Though the title insurance similarly is not entirely within the transaction parties' control, they expect this aspect of the transaction should be completed no later than next week.

*Third*, Defendants will need to obtain lien releases that meet the requirements of the transaction, which will require timely cooperation from WSSH. But WSSH has thus far declined to provide such cooperation. Indeed, WSSH has impeded Defendants' attempts to quickly close the transaction—remarkably, all while feigning concern to this Court about the speed at which the transaction is proceeding. Earlier this month, Defendants' representatives had to repeatedly prompt WSSH's representatives to provide the payoff statement that would allow Defendants to repay the loans as part of the closing process. (*See* Ex. C at 6–7.) WSSH's actions resulted in five days of delay. The most recent example of this came just last week, when WSSH's representatives refused to even have a phone call with Defendants and KLIM (despite protesting to the Court that KLIM had not contacted them) to discuss the final details of closing the transaction. (*See id.* at 2.) This refusal resulted in several more days of delay. KLIM nevertheless reached out again yesterday to WSSH directly to request the documents needed to close the transaction. (*See* Ex. D at 1.)

Put simply, WSSH has returned to the same playbook that it employed the last time Defendants tried to pay off the loans—impede Defendants' ability to do so in the hopes of keeping its quest for The Greenbrier alive. (*See* ECF No. 45 at 9). If WSSH decides to come to the table and cooperate, the parties should be able to complete these releases and finalize these details within

a week.  But if WSSH continues to stonewall and delay, the Court should not reward WSSH's tactics and doublespeak by pushing forward with WSSH's ill-conceived quest for a receivership.

At bottom, as the transaction has advanced, Defendants have endeavored to keep the Court and WSSH apprised as much as possible of the transaction's progress—from due diligence through final documentation and closing preparations to the remaining regulatory approval process. Defendants recognize the Court's "expectation that closing will occur on or before July 16, 2026," and regret that the expectation has not been met.  (Suspension Order at 6.)  But this is not a case where Defendants have not made every effort to meet this date or a case where the fact of closing is uncertain (subject to WSSH's reasonable cooperation) or the timing of closing is many weeks away.  And in accordance with the Suspension Order, Defendants were prepared to inform the Court as soon as possible if "the transaction abates at any point prior to closing."  (*Id.*)   At no point has the transaction abated.  To the contrary, the parties are nearing the finish line.  Although Defendants' initial estimate that the transaction would close by early July, (*see* ECF No. 58 at 4), proved overly optimistic, the closing itself has never been in jeopardy.

As they have from the start, Defendants and KLIM will continue working diligently to push the transaction across the finish line, and they anticipate being able to do so by August 7, 2026. Upon closing of the transaction, the loans would be repaid in full, which will moot this action and result in WSSH receiving a profit of nearly $100 million (an annualized return of over 100%) for simply holding the loans for approximately four months.  Additionally, the tax obligations referenced in WSSH's and the purported intervenor's filings will be extinguished.  In these circumstances, where the Defendants, KLIM, and other related parties have invested enormous time and effort to bring a significant financial transaction to the brink of closing, a brief additional period is warranted before the Court considers the merits of WSSH's request for the imposition of

the "martial law" of a receivership, (Suspension Order at 5), which could well derail the financing transaction.

For the reasons stated herein, Defendants believe a further limited extension is appropriate and are respectfully requesting an additional continuance by motion filed contemporaneously with this response. That motion also sets forth proposed interim updates that Defendants are prepared to provide the Court. Specifically, Defendants propose the following additional updates:

- By July 27, 2026, Defendants will submit a status report to confirm that all transaction documents have been completed.

- By July 31, 2026, Defendants will submit a second status report to update the Court on the status of the three outstanding actions that must be completed to allow the transaction to close.

- If the transaction has not closed by August 7, 2026, the Court should order an immediate inquiry by a magistrate judge into the circumstances delaying the closing of the transaction, along with a prompt recommendation as to the steps necessary for the transaction to close or for the matter to otherwise proceed.

\* \* \*

Three points bear particular emphasis. *One*, this transaction is particularly complex, because of, among other reasons, its size—up to $500 million—the many entities involved and the need to reorganize them for the deal, the presence of dozens of parcels of real property for which title searches and other items of due diligence were required to be conducted, and the fact that the transaction is not merely a loan but a joint venture, which required the negotiation and delineation of the terms of the relationship between the transacting parties. The parties to the deal have worked diligently throughout the process and have moved forward with remarkable speed given its size and complications. There is nothing unusual or improper about a transaction taking longer to close than its participants originally had hoped, despite the best efforts of those involved. The more important point is whether the parties continue to act in good faith to conclude the transaction as quickly as reasonably possible. Here, they have, and they are.

-9-

*Two*, it is undisputed that WSSH originally offered Defendants a deal that would have obviated the need for the current refinancing but then reneged on that deal, instead demanding a massive windfall profit. WSSH did so because it believed Defendants would be unable to come up with the money to pay its extortionate demand. Now that Defendants, working with KLIM, have overcome that challenge, it would be deeply inequitable to pull the rug out from under them just as their transaction is nearing completion. These inequities are compounded by WSSH's efforts to undermine the transaction.

*Three*, imposing a receivership now would likely be unprecedented. Defendants are aware of no case in which a court imposed a receivership under similar circumstances—where the parties are on the eve of a refinancing that would deliver a profit of nearly $100 million to the putative creditor demanding the receivership. That putative creditor is demonstrably oversecured by the enormous value of its collateral. The refinancing transaction will stabilize Defendants' finances and provide funding for The Greenbrier to preserve and build upon its nearly 250-year heritage. In so doing, it will benefit The Greenbrier's employees, the local economy, and the entire state. A receivership, by contrast, would put the refinancing and all its associated benefits at serious risk for no good reason. Defendants are not asking for a few months to close the deal. Rather, they seek only a brief period to complete their transaction documents and for the aspects of the transaction that are not within their control to reach a reasonable conclusion. Receivership proceedings would not be justified under the facts of this matter, and a further continuance is warranted.

Dated:  July 21, 2026


Respectfully submitted,


/s/ *Steven R. Ruby*
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
David R. Pogue (WVSB #10806)
CAREY DOUGLAS KESSLER & RUBY
PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV  25323
Telephone:  (304) 345-1234
Facsimile:  (304) 342-1105
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

/s/ *H. Rodgin Cohen*
H. Rodgin Cohen (WVSB #767)
Robert L. Jones IV (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  (212) 558-4000
cohenhr@sullcrom.com
jonesrob@sullcrom.com

Amanda Flug Davidoff (*pro hac vice*)
Oliver W. Engebretson-Schooley (*pro hac vice*)
1700 New York Avenue, N.W.
Suite 700
Washington, DC  20006
Telephone:  (202) 956-7500
davidoffa@sullcrom.com
engebretsono@sullcrom.com


*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2026, the foregoing document was served upon the following counsel by means of the Court's CM/ECF filing system.

Ellen S. Cappellanti, Esq.
Albert F. Sebok, Esq.
Elizabeth B. Elmore, Esq.
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV 25301-3202
ecappellanti@jacksonkelly.com
asebok@jacksonkelly.com
ebelmore@jacksonkelly.com

Seth Patrick Hayes, Esq.
Zachary Hanley Warder, Esq.
JACKSON KELLY PLLC
3000 Swiss Pine Way, Suite 200
P.O. Box 619
Morgantown, WV 26501
shayes@jacksonkelly.com
zachary.warder@jacksonkelly.com

R. Clay Hoblit, Esq.
HOBLIT DARLING RALLS HERNANDEZ
& HUDLOW
802 North Carancahua Street
Suite 2100
Corpus Christi, TX 78401
choblit@hdr-law.com

Charles M. Jones, II, Esq.
Richard D. Anigian, Esq.
HAYNES & BOONE
Suite 2300
2801 North Harwood Street
Dallas, TX 75201
charlie.jones@haynesboone.com
rick.anigian@haynesboone.com

Cassandra Lynn Means, Esq.
John Francis Willems, Esq.
OFFICE OF THE ATTORNEY GENERAL
State Capitol, Room 435-W
Charleston, WV 25305
cassandra.l.means@wvago.gov
jwillems@wvago.gov

Shawn R. Romano, Esq.
Miles B. Berger, Esq.
ROMANO & ASSOCIATES, PLLC
860 Court Street North, Suite 100
Lewisburg, West Virginia 24901
mberger@ro-law.com

W. Edward Shipe, Esq.
BROCK SHIPE KLENK PLC
265 Brookview Centre Way, Suite 604
Knoxville, TN 37919
eshipe@bskplc.com

/s/ *H. Rodgin Cohen*
H. Rodgin Cohen (WVSB #767)