**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
(BECKLEY DIVISION)**

| | |
|---|---|
| WHITE SULPHUR SPRINGS HOLDINGS, LLC ) <br> a Texas Limited Liability Company, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JAMES C. JUSTICE, II, Individually; ) <br> CATHY L. JUSTICE, Individually; ) <br> JAMES C. JUSTICE, III, Individually; ) <br> GREENBRIER HOTEL CORPORATION, ) <br> a West Virginia Corporation; ) <br> GREENBRIER MEDICAL INSTITUTE, LLC, ) <br> a West Virginia Limited Liability Company; ) <br> OAKHURST CLUB, LLC, ) <br> a West Virginia Limited Liability Company; ) <br> GREENBRIER GOLF AND TENNIS ) <br> CLUB CORPORATION, ) <br> a West Virginia Corporation; ) <br> GREENBRIER LEGACY COTTAGE ) <br> DEVELOPMENT COMPANY I, Inc., ) <br> a West Virginia Corporation; ) <br> GREENBRIER LEGACY COTTAGE ) <br> DEVELOPMENT II, Inc., ) <br> a West Virginia Corporation. ) <br> ) <br> Defendants. ) | Case No. 5:26-cv-00257 <br> The Honorable Frank W. Volk |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO NEW LONDON TOBACCO
MARKET, INC.'S AND FIVEMILE ENERGY, LLC'S MOTION TO INTERVENE**

WSSH files its Response in Opposition to New London Tobacco Market, Inc.'s and

Fivemile Energy, LLC's (the "NLTM Movants") Motion to Intervene (dkt. 89) and supporting

Memorandum of Law ("MOL," dkt. 90) and would respectfully show as follows:

## I.    INTRODUCTION

WSSH holds unpaid, final, and non-appealable Judgments against Defendants.  (WSSH's

1st Am. Compl., dkt. 37 ("FAC") ¶¶ 13-25.)  Additional parties continue to emerge asserting that

1

Defendants owe them substantial debts.  The latest are the NLTM Movants.  They claim to hold a judgement of almost $35 million from the U.S. District Court for the Eastern District of Kentucky against non-parties James C. Justice Companies, Inc. and Kentucky Fuel Corporation.  (MOL at 2).  The Kentucky District Court this month also entered a broad sanctions order finding that 160 entities—including four Defendants here—are the alter egos of other Justice-affiliated entities and individuals, including Defendant James C. Justice, III.[1]  (MOL at 3 and Ex. J).

WSSH certainly sympathizes with the NLTM Movants.  The Justices continue to scythe a wide swath of financial destruction affecting multiple states, business endeavors, and aggrieved parties.  This much is evident from the orders and opinions of the Kentucky District Court and the Sixth Circuit Court of Appeals attached to the MOL.  Indeed, the Sixth Circuit's description of the Justice-parties' litigation conduct is extraordinary: "discovery abuses and violations that are (thankfully) unusual in their frequency and mendacity."  (MOL at Ex. C, *New London Tobacco Mtk. Ltd. v. Kentucky Fuel Corp.*, 44 F.4th 393, 399 (6th Cir. 2022)).

Further, Defendants' refusal to disclose any substantive details of their purported refinancing transaction in their updates to this Court has no doubt increased the NLTM Movants' (and WSSH's) exasperation at the Justices' financial machinations.  Nevertheless, WSSH respectfully opposes the Motion to Intervene for several reasons.   First, the NLTM Movants offer no compelling reason to intervene.  Although Movants do claim an interest in real property Defendant Oakhurst Club may own, those parcels are not in danger of being lost or transferred beyond the reach of appropriate courts.  The receiver WSSH seeks will work to protect the interests

---

[1] The four Defendants in this action implicated as Justice-party alter egos in the Kentucky District Court's order are (i) Greenbrier Hotel Corporation, (ii) Greenbrier Medical Institute, LLC, (iii) Oakhurst Club, LLC, and (iv) Greenbrier Golf and Tennis Club Corporation.

of all stakeholders, including the NLTM Movants.  And under the Court's supervision, the receiver will be required to do so.

Second, as described below, the NLTM Movants cannot satisfy the procedural requirements for intervention under Rule 24.  Third, this action is based on diversity jurisdiction. (FAC ¶ 11).  Therefore, the Court should consider the impact of any proposed intervenor's citizenship on its diversity jurisdiction.  But the NLTM Movants do not address any such issues. As a result, WSSH and the Court lack the information required to evaluate whether the NLTM Movants' intervention would be proper under 28 U.S.C. § 1367(b).

Fourth, the NLTM Movants' passing reference to Rule 19 in their MOL is insufficient to support joining them as necessary and indispensable parties.  For these reasons, the Motion to Intervene should be denied.

## II.     ARGUMENT

### A.     The NLTM Movants Have Not Satisfied the Requirements of Rule 24 to Intervene.

The NLTM Movants invoke two independent grounds for intervention: intervention of right under Rule 24(a)(2), and permissive intervention under Rule 24(b)(1)(B).  (MOL at 1). Movants have not shown that they meet the requirements of either ground.  The NLTM Movants are not entitled to intervention of right.

Intervention of right under Rule 24(a)(2) is appropriate only when the movant (i) claims an interest relating to the property or transaction that is the subject of the action and (ii) is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.  Fed. R. Civ. P. 24(a)(2).

To satisfy the "claimed interest" prong, Movants' claimed interest must be a "significantly protectable interest," and the "Fourth Circuit requires intervenors to show they 'stand to gain or

lose by the direct legal operation of the district court's judgment' in the pending action." *Sierra Club v. U.S. Environmental Protection Agency*, No. 24-130, 2024 WL 3625682, at *6 (S.D. W. Va. Aug. 1, 2024) (quoting *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991)). "Ultimately, this inquiry looks to see if the intervenor 'has a stake in the matter that goes beyond a generalized preference that the case come out a certain way.' That is, the intervenor must have more than 'ideological, economic, or precedential reasons' for intervention." *Id.* (quoting *DeOtte v. Nevada*, 20 F.4th 1055, 1068 (5th Cir. 2021)).

The NLTM Movants argue they meet the claimed interest prong because they assert an interest in real property held by Defendant Oakhurst Club. (MOL at 3-4). Other than this assertion, NLTM Movants make no real effort to address the requirements recited in *Sierra Club*. Nor can they, because their purported fraudulent-transfer claims are, at best, tenuous. To start, Defendants long ago pledged the properties in question as collateral to secure the debt they previously owed to Carter Bank and now owe to WSSH. According to the NLTM Movants, Oakhurst Club has held those assets since 2016. (MOL at 4). And the NLTM Movants first filed suit on its suspected fraudulent-transfer claims in 2017. (MOL at 3). Yet ten years later, the claims remain unresolved.

All the NLTM Movants really offer to substantiate their claims are naked assertions that the properties were fraudulently transferred to Oakhurst Club. But fraudulent-transfer claims are fact intensive, and the NLTM Movants offer no evidence to support their allegations.

Turning to the second prong of Rule 24(a)(2), the NLTM Movants make no showing that disposing of this action in their absence will impede or impair their ability to protect their interests, especially considering that they filed multiple other lawsuits asserting their claims to the properties. (MOL at 4). To be clear, WSSH seeks a receivership and preliminary injunction to *preserve* assets, not foreclose on them. A receiver, as an agent of the Court, will work in the best

interests of all stakeholders and be more than capable of protecting any interests the NLTM Movants claim in real property until all competing claims to the property (if any) are adjudicated.

The NLTM Movants also endorse WSSH's request for a receiver. (MOL at 5). WSSH appreciates the support. But the NLTM Movants offer no argument that (i) WSSH cannot adequately represent their interest in securing a receiver or (ii) the scope of the receivership that WSSH seeks is insufficient to represent and protect their claimed interests. The Court should deny the NLTM Movants' request for intervention of right.

       **i.**       **The NLTM Movants are not entitled to permissive intervention.**

Permissive intervention is proper—at the Court's discretion—only if the movant establishes that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The NLTM Movants have made no such showing.

The MOL contains little, if any, discussion of the permissive-intervention requirements. Nevertheless, the NLTM Movants' fraudulent-transfer claims—based on transfers in 2016—do not involve common issues of law or fact with the issues presented in this action.

Again, the central question in this action is: should this Court appoint a receiver and enjoin Defendants to prevent further wasting of assets and devaluing of WSSH's collateral, including The Greenbrier Resort? The evidence makes abundantly clear the answer is "yes." Importantly, the facts underpinning those determinations largely stem from ongoing activity at The Greenbrier Resort and Defendants' conduct over the past few years. The legal issues, of course, focus on the law germane to federal-court receiverships and injunctions. In contrast, the NLTM Movants' claims involve state-court fraudulent-transfer law applied to facts arising out of ten-year-old property transfers. (MOL at 3-4). There is simply no factual or legal overlap.

WSSH acknowledges that permissive intervention may be appropriate to "avoid inconsistent results and promote judicial economy." *Diagnostic Devices, Inc. v. Taidoc Tech.*

*Corp.*, 257 F.R.D. 96, 101 (W.D.N.C. 2009). Yet the NLTM Movants make no such argument, likely because permissive joinder would provide no such benefits. Nothing about permitting Movants to intervene will hasten the resolution of their fraudulent-transfer claims or truncate their multiple pending lawsuits.

Last, it is very unclear whether the NLTM Movants seek to assert their fraudulent-transfer claims (or any other claims) directly in this action. Given Movants' pending lawsuits, this seems unnecessary. But if that is Movants intention, permitting them to do so could substantially delay WSSH's efforts to secure a receiver and further investigate Defendants' malfeasance. Such delay strongly counsels against permissive intervention. *See Ohio Valley Envtl. Coalition, Inc. v. McCarthy*, 313 F.D.R. 10, 28) (S.D. W. Va. 2015).

**B.　　28 U.S.C. § 1367(b) May Bar the NLTM Movants from Intervening (or Being Joined) as Plaintiffs.**

The Court's original jurisdiction over this case is founded solely on diversity jurisdiction under 28 U.S.C. § 1332. (FAC ¶ 11.) The NLTM Movants do not assert any independent basis for federal subject-matter jurisdiction. Thus, the only plausible basis for the Court to have subject-matter jurisdiction over the NLTM Movants' claims are the supplemental-jurisdiction provisions in 28 U.S.C. § 1367(a).

"Supplemental jurisdiction, however, is not without limits and 28 U.S.C. § 1367(b) imposes specific limitations on its availability in diversity cases." *Mulvey Constr., Inc. v. Bituminous Cas. Corp.*, No. 1:07-CV-00634, 2011 WL 773028, at *1 (S.D. W. Va. Feb. 25, 2011) (citing *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998)). Section 1367(b) provides:

> In any civil action of which the district courts have ***original jurisdiction founded solely on section 1332 of this title***, the district courts ***shall not have supplemental jurisdiction under subsection (a)*** over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, ***or over***

6

*claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules*, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b) (emphasis added).

Despite this, the NLTM Movants do not offer any (i) proof of their citizenship or (ii) analysis or argument regarding the jurisdictional implications of their intervention. This leaves both the Court and WSSH unable to evaluate these issues. The Court should deny the Motion on this basis alone.[2]

## C.    NLTM Movants Passing Reference to Rule 19 is an Insufficient Basis to Join Them to this Action.

The NLTM Movants make passing reference to Rule 19 in their MOL. (MOL at 5). But Movants neither style their Motion as one seeking joinder under Rule 19, nor do they request such relief. Indeed, their only argument regarding Rule 19 is that they are "arguably" necessary parties. (*Id.*)

Even so, WSSH addresses the requirements for joinder briefly in an abundance of caution. Rule 19 involves "a two-step inquiry"—are the NLTM Movants (i) necessary parties and (ii) indispensable parties? *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 950 (4th Cir. 2020). The NLTM Movants address neither issue in substance, and the Court should deny any implied request for joinder. Moreover, none of the relief WSSH seeks, including receivership, will adversely affect the NLTM Movants' claims. To the contrary, a receiver will protect all stakeholders' interests. Nor are Movants indispensable parties. Nothing about the relief WSSH seeks would alter the NLTM Movants' ability to assert their claims in the future. *First United Bank & Tr. v. Square at Falling*

---

[2] Movants' counsel gave WSSH's counsel general assurances that they are citizens of Kentucky (NLTM) or Tennessee (Fivemile). That said, determination of the citizenship of entities generally, and limited liability companies like movant Fivemile Energy in particular, can be challenging. WSSH has no basis to represent the nature of Movants' citizenship to this Court.

*Run, LLC*, No. 1:11-CV-00031, 2011 WL 1563027, at *6 (N.D. W. Va. Apr. 25, 2011) (concluding that a party "is not indispensable to this action at this time inasmuch as nothing contained in the proposed appointment of a receiver affects or determines the scope of rights or interests in real property") (internal quotations omitted).

## III.    CONCLUSION

WSSH acknowledges and shares the NLTM Movants' frustration with the conduct and litigation tactics of the various individuals and entities that fall under the broad Justice-related umbrella.  But for the foregoing reasons, WSSH respectfully requests that this Court deny the NLTM Movants' Motion to Intervene.

Respectfully submitted,

**WHITE SULPHUR SPRINGS HOLDINGS, LLC**

By counsel,

/s/ Seth P. Hayes
Seth P. Hayes, Esq. (WVSB #10381)
Zachary H. Warder, Esq. (WVSB #13566)
JACKSON KELLY PLLC
3000 Swiss Pine Way, Suite 200
P.O. Box 619
Morgantown, WV 26501
shayes@jacksonkelly.com
zachary.warder@jacksonkelly.com

and

Ellen Cappellanti, Esq. (WVSB #627)
Albert F. Sebok, Esq. (WVSB #4722)
Elizabeth B. Elmore (WVSB #6061)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV 25301-3202
ecappellanti@jacksonkelly.com
asebok@jacksonkelly.com

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**(BECKLEY DIVISION)**

WHITE SULPHUR SPRINGS HOLDINGS, LLC  )
a Texas Limited Liability Company,  )
   )
      Plaintiff,  )
   )
v.  )   Case No. 5:26-cv-00257
   )   The Honorable Frank W. Volk
JAMES C. JUSTICE, II, Individually;  )
CATHY L. JUSTICE, Individually;  )
JAMES C. JUSTICE, III, Individually;  )
GREENBRIER HOTEL CORPORATION,  )
a West Virginia Corporation;  )
GREENBRIER MEDICAL INSTITUTE, LLC,  )
a West Virginia Limited Liability Company;  )
OAKHURST CLUB, LLC,  )
a West Virginia Limited Liability Company;  )
GREENBRIER GOLF AND TENNIS  )
CLUB CORPORATION,  )
a West Virginia Corporation;  )
GREENBRIER LEGACY COTTAGE  )
DEVELOPMENT COMPANY I, Inc.,  )
a West Virginia Corporation;  )
GREENBRIER LEGACY COTTAGE  )
DEVELOPMENT II, Inc.,  )
a West Virginia Corporation.  )
   )
      Defendants.  )

**CERTIFICATE OF SERVICE**

I, Seth P. Hayes, certify that on the 22nd day of July, 2026, the foregoing Plaintiff's

Response in Opposition to West Virginia State Tax Division's Motion to Intervene was filed using

the Court's CM/ECF system. Counsel of record will be served by the Court's CM/ECF system as

follows:

9

Steven R. Ruby, Esquire
Raymond S. Franks II, Esquire
David R. Pogue, Esquire
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

H. Rodgin Cohen, Esquire
Robert L. Jones IV, Esquire
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
cohenhr@sullcrom.com
jonesrob@sullcrom.com

Amanda Flug Davidoff, Esquire
Oliver W. Engebretson-Schooley, Esquire
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
davidoffa@sullcrom.com
engebretsono@sullcrom.com

/s/ Seth P. Hayes
Seth P. Hayes, Esq. (WVSB # 10381)

10