IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
(BECKLEY DIVISION)

WHITE SULPHUR SPRINGS HOLDINGS, LLC

      Plaintiff,

v.                                 **Case No. 5:26-cv-00257**
                                      **The Honorable Frank W. Volk**

JAMES C. JUSTICE, II, et al.

      Defendants.

**NEW LONDON TOBACCO MARKET, INC. AND FIVEMILE ENERGY, LLC's**
**CONSOLIDATED REPLY IN SUPPORT OF MOTION TO INTERVENE**

New London Tobacco Market, Inc. (NLTM) and Fivemile Energy, LLC (Fivemile), by counsel as noted herein below, submit this *New London Tobacco Market, Inc. and Fivemile Energy, LLC's Consolidated Reply in Support of Motion to Intervene* in support of the previously-filed *New London Tobacco Market, Inc. and Fivemile Energy, LLC's Motion to Intervene* (ECF 89) and its accompanying *New London Tobacco Market, Inc. and Fivemile Energy, LLC's Memorandum of Law in Support of Motion to Intervene* (ECF 90) and in opposition to the responses thereto filed by Defendants and Plaintiff above (ECF 98 and 97, respectively). As shown below, the liberal policy of intervention conclusively outweighs the hyper-technical arguments made in opposition by the Plaintiff and Defendants in each's response.

## ARGUMENT REGARDING RULE 24

NLTM and Fivemile will address the arguments raised by the Plaintiff and the Defendants in opposition to NLTM and Fivemile's motion to intervene primarily in the context of the Rule 24 factors. While and when evaluating each argument, as the Defendants and assumedly the Plaintiff recognize, the same standard underpins NLTM and Fivemile's (and any similar movant's)

response: motions to intervene are "liberally permitted[.]"  Mollohan v. Gregory, 2021 WL 1583087, at *2 (S.D.W. Va. Apr. 22, 2021).

1. <u>No party acknowledges or rebuts that NLTM and Fivemile have an independent basis to seek a receivership under West Virginia law.</u>

Neither the Plaintiff nor Defendants acknowledge a critical fact which warrants that NLTM and Fivemile's intervention be granted by this Court: particularly, that the movants have an independent statutory right to seek a receivership over these Defendants.  Specifically, *W, Va. Code* § 40-1A-7(3)(ii) enables this Court to appoint a receiver based upon the fraudulent transfers by JCJC and the fraudulent transfer lawsuits brought by NLTM and Fivemile.  The statute permits "[a]ppointment of a receiver to take charge of the asset transferred or of other property of the transferee[.]" Contrary to the Defendants' unsupported choice of law footnote, the Erie Doctrine points this Court to state law when claims are based upon state law, rather than a federal question.

NLTM and Fivemile should be permitted to intervene and advocate for this independent basis, particularly in the event that the Plaintiff fails to meet its burden for appointment of a receiver.

2. <u>NLTM and Fivemile satisfy the procedural requirements under Rule 24 for intervention as a matter of right.</u>

By its very nature, intervention by a non-party has an (obvious) effect on the original parties to the case.  But pointing out those effects, as the filed oppositions to the motion to intervene do, adds nothing but the already expected consequences of intervention and in that regard, the oppositions essentially assert nothing substantive in this regard.  The policy on intervention is a liberal one for good reason.  As here, "a lawsuit often is not merely a private fight and will have implications on those not named as parties." Wright & Miller's Federal Practice & Procedure §

1901 (3d ed. Westlaw 2026).  Accordingly, Rule 24 provides a method for parties to intervene and protect their interest.  NLTM and Fivemile are such parties.

Where a party seeks to intervene as a matter of right, "a court normally follows practical and equitable considerations and construes the governing rule broadly in favor of the proposed intervenors, since a liberal policy in favor of intervention serves both the efficient resolution of the issues and broadened access to the courts."  Wright & Miller's Federal Practice & Procedure § 1904 (3d ed. Westlaw 2026).  While the Plaintiff and Defendants argue for a narrow application of the Rule 24 factors, it has been recognized that the rule "is a valuable and useful rule but it should not be construed out of all recognition to its laudable purpose." Kelley v. Pascal Sys., Inc., 183 F.Supp. 775, 777 (E.D. Ky. 1990).

Keeping in mind the purposes of Rule 24 and the liberal standard of intervention, NLTM and Fivemile will address the Plaintiff and Defendants' arguments under each of Rule 24's factors.

**Factor 1:** NLTM and Fivemile claim an interest relating to the property or transaction that is the subject of the action.

The movants have a **$34,990,986.50** final judgment (and growing, with interest) that extends against Defendants Greenbrier Hotel Corporation; Greenbrier Medical Institute, LLC; Oakhurst Club, LLC; and Greenbrier Golf and Tennis Club Corporation.  *See* ECF 89, Exhibits D and J.  That final and unappealable judgment is the basis of the filed and recorded Notices of *Lis Pendens* filed and recorded in both Greenbrier County and Monroe County regarding properties transferred from JCJC to Defendant Oakhurst Club, in an allegedly fraudulent manner.  NLTM and Fivemile's judgment is a valid and enforceable claim against these Defendants and said companies' recorded Notices of *Lis Pendens* in Greenbrier and Monroe Counties both directly involve property subject to this receivership.  That claim is an interest directly and specifically relating to the properties/transactions that are the subject of this receivership, which justifies intervention. *See,*

*inter alia*, <u>Peterson v. Islamic Republic of Iran</u>, 290 F.R.D. 54, 59 (S.D.N.Y. 2013) (finding that judgment creditor had sufficient interest in the litigation); <u>In re Estate of Ferdinand E. Marcos Human Rights Litigation</u>, 536 F.3d 980, 984-87 (9th Cir. 2008) (applying Rule 24 to permit intervention by a collections defendant in judgment extension proceedings brought by judgment creditors); <u>Alridge On Behalf of United States v. Corporate Management, Inc.</u>, 1:16-cv-369-HTW-LGI, 2026 WL 1725718, at *8 (S.D. Miss. June 15, 2026), *appeal docketed* No. 25-60561 (5th Cir. July 16, 2026), (denying reconsideration of granted motion to intervene where the intervenor held a $200,000 claim against one of the entities subject to the receivership).

The Plaintiff knows this. In fact, the Plaintiff both acknowledges and attempts to minimize NLTM and Fivemile's interest in the Oakhurst property: "**Movants do claim an interest in real property Defendant Oakhurst Club may own**[.]" ECF 97, p. 2 (emphasis added). Also, the First Amended Complaint expressly references a Credit Line Deed of Trust to Oakhurst Club, LLC. ECF 37, ¶14. That interest on property expressly referenced in the First Amended Complaint cannot be summarily dismissed. Defendant Oakhurst Club, LLC is a party subject to the receivership sought, is a Defendant herein, and NLTM and Fivemile have a significant recorded interest in property owned by Oakhurst Club, LLC. That interest is more than sufficient to meet Rule 24(a)(2)'s requirement that the party moving for intervention "claim[] an interest relating to the property or transaction that is the subject of the action."

Further, beginning at the very initiation of this lawsuit, the Plaintiff has recognized the relevance of NLTM and Fivemile's ongoing claims to this lawsuit. In fact, in their First Amended Complaint, the Plaintiff directly cites to the movants:

> Two Kentucky companies recently presented evidence in federal court in Kentucky alleging that the Justice Parties are hiding hundreds of millions of dollars in assets to avoid paying judgments awarded and sanctions ordered against James C. Justice, III. *See New London Tobacco Market, Inc., et al., v. Kentucky Fuel Corporation*

*and James C. Justice Companies, Inc.*, No. 6:12-CV-91-GFVT-HAI, Dkt. 838-1 (E.D. Ky. Mar. 5, 2026).

ECF 37, p. 19.  The Plaintiff inconsistently uses NLTM and Fivemile's claims and interest to support its request for a receivership while simultaneously opposing NLTM and Fivemile's intervention, claiming lack of such an interest.

In short, NLTM and Fivemile have shown a palpable, real and justiciable interest relating to the property that is the subject of the action.

**Factor 2:** NLTM and Fivemile are so situated that the disposition of the action may as a practical matter impair or impede the absentee's ability to protect that interest.

Rule 24 only requires that a movant be practically disadvantaged in protecting its interest by the disposition of the action.  Wright & Miller's Federal Practice & Procedure § 1908.2 (3d ed. Westlaw 2026).

Both the Plaintiff and the Defendants attempt to impose a heightened standard and essentially purport that this Court should require the movants to prove their case substantively on a motion to intervene.  That is not the appropriate standard, by the clear language of the Rule, and NLTM and Fivemile have offered ample evidence showing, as a matter of law, that their fraudulent transfer claims are not tenuous.  As already shown in ECF 90 (NLTM and Fivemile's Memorandum of Law supporting their Motion to Intervene), both property transfers from JCJC to Defendant Oakhurst Club, related entities, explicitly state that they were for **<u>zero</u>** consideration.  As detailed in said Memorandum, the Monroe County lawsuit concerns five hundred (500) acres of real property located in both Monroe County and Greenbrier County, West Virgina, commonly called "Kate's Mountain Farm."  On April 5, 2016, JCJC executed a deed transferring this property to the Oakhurst Club, LLC, via Quitclaim Deed. The Quitclaim Deed expressly states that "it is a

quitclaim deed between related parties and the property herein is transferred for no consideration." ECF 89, Exhibit K.

The Greenbrier County lawsuit concerns five (5) parcels of real property located in Greenbrier County, West Virginia, commonly called the "Colonial Court Property, Old White Hotel Property, Lot 27 Howard's Creek," etc.  On April 6, 2016, much in the same manner as it did with the Kate's Mountain Farm property, JCJC executed a deed transferring these parcels of property to the Oakhurst Club, LLC, via Quitclaim Deed.  The Quitclaim Deed expressly states that JCJC and Oakhurst Club, LLC are "related parties and the property herein is transferred for no consideration."  ECF 89, Exhibit L.

Two (2) days later, Oakhurst Club, LLC pledged the property described herein above (the property in question) as new collateral to Carter Bank.  ECF 37, ¶14.  These transfers and this pledge of collateral are tightly intertwined and both relevant to the issues before this Court.

NLTM and Fivemile allege in their filed Monroe County and Greenbrier County Complaints that the above-described transfers of real property were wholly fraudulent and conducted in a manner violative of West Virginia law. They were violative of West Virginia law because NLTM and Fivemile were present or future creditors of JCJC, JCJC owed the debt, and the lawsuit resulting in the judgment had begun four years before JCJC made these allegedly fraudulent transfers.  JCJC made these transfers to the Oakhurst Club, LLC, with full knowledge of the suit that led to the multi-million dollar judgment.  These quick pledges, along with other proof, show a collaborative effort with the Defendants' lender, Carter Bank, to justify further borrowing to be secured by property at issue here.

The receivership put into place by the Court must properly contemplate these issues of fraudulent transfer law, and NLTM and Fivemile seek to ensure that these issues are properly

considered and that all of their significant interests are protected.  Only NLTM and Fivemile have asked for this basis for the receivership.

NLTM and Fivemile have shown that they are so situated that the disposition of this action may impair or impede their ability to protect their interest if they are not allowed to intervene into this Civil Action.

**Factor 3:** The existing parties do not adequately represent NLTM and Fivemile's interests.

The Plaintiff cannot adequately represent NLTM and Fivemile's interest.  First, as discussed above, NLTM and Fivemile have an independent basis under West Virginia law to seek the appointment of a receiver.  The Plaintiff has not asserted such a parallel claim. Second, the Plaintiff, as it has made clear through numerous filings to this Court, represents its own interest in securing payment.  The Plaintiff reveals its lack of adequate representation for NLTM and Fivemile in its filings to date: in fact, it acknowledged that "is unlikely that [the Plaintiff] will be repaid in full[.]" ECF 87, p. 4.  The Plaintiff, understandably, has an interesting in protecting its own repayment above all else; however, obviously, that goal is not compatible with protecting NLTM and Fivemile's competing claims to the same assets.

The Plaintiff, NLTM and Fivemile appear to be in alignment on seeking a receivership but are not aligned on other critical issues, specifically, who has statutory priority over the property subject to this action.  The Plaintiff claims that it holds priority on the Oakhurst property, but NLTM and Fivemile vigorously dispute such an assertion.  After the initiation of the lawsuit in 2012 resulting in the judgment discussed above, JCJC, through its officers and agents, engaged in a series of allegedly fraudulent transfers of assets.  Although these transfers were done in secrecy, the movants became aware that JCJC was engaged in transferring assets and that such transfers might render a forthcoming judgment uncollectible.  Consequently, on September 11, 2017, NLTM

and Fivemile filed a second lawsuit in the Eastern District of Kentucky against JCJC, Justice Farms of North Carolina, LLC, Oakhurst Club, LLC, Southern Minerals, LLC, and James C. Justice, III. After a pair of amendments, that lawsuit alleged counts for fraudulent transfers, conspiracy, Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and attorneys' fees and costs (the "Federal Fraudulent Transfer Suit").

At the time of the Oakhurst property's transfer, NLTM and Fivemile were creditors of JCJC and the lawsuit resulting in the judgment had begun four years before the transfer. JCJC made this transfer with knowledge of the suit that led to the judgment. Because this transfer was undertaken with no consideration exchanged and rendered JCJC unable to pay its debts, West Virgina law considers this constructive fraud without having to prove actual intent. *See W. Va. Code* § 40-1A-4. This results in serious questions about tracing assets and priority positioning for NLTM and Fivemile, which the Plaintiff has no interest in protecting.

NLTM and Fivemile have shown that the Plaintiff cannot adequately represent the movants' interest, as they are adverse and have to protect their own interests.

<strong>MISCELLANEOUS ARGUMENTS</strong>

1. <u>Although the Plaintiff cites no law on whether destruction of diversity jurisdiction is a valid consideration for a motion to intervene, it is a non-issue.</u>

The Plaintiff contends that the movants should not be permitted to intervene because it might destroy diversity jurisdiction. ECF 97 at 6-7. It will not. Permitting NLTM and Fivemile to intervene will not destroy diversity jurisdiction. NLTM and Fivemile are Tennessee and Kentucky residents, and the individual members of Fivemile are Tennessee residents as well. This citizenship is readily apparent and noted in the Federal Fraudulent Transfer Suit. Complete diversity is maintained even after NLTM and Fivemile intervene and so this argument asserted by

the Plaintiff in its response in opposition to NLTM and Fivemile's motion to intervene is for naught.

2. Permitting NLTM and Fivemile to intervene will not delay the case, but denial may cause delay.

Finally, to the extent this Court is concerned about delaying the receivership proceeding, denying NLTM and Fivemile's intervention has a greater risk of causing delay than granting. If intervention is granted, there is no right to appeal, and the case will proceed. But, if denied, NLTM and Fivemile will have the right to immediate appeal, and would likely exercise that right, which could delay this proceeding for a substantial amount of time. *See*, *inter alia*, *Sharp Farms v. Speaks,* 917 F.3d 276, 289 (4th Cir. 2019). In short, all factors weigh in favor of NLTM and Fivemile being allowed to intervene into this case, as Judgment Creditors with a substantial interest in this litigation.

## CONCLUSION

For the reasons set forth above and in their Motion and supporting Memorandum, NLTM and Fivemile request that the Court grant their Motion to Intervene and allow them to intervene into this Civil Action.

Respectfully submitted,

**New London Tobacco Market, Inc.**
**AND Fivemile Energy, LLC.**

**By counsel,**

/s/ *Miles B. Berger*
Shawn R. Romano, Esq. (W. Va. State Bar No. 7577)
Miles B. Berger, Esq. (W. Va. State Bar No. 12147)
**ROMANO & ASSOCIATES, PLLC**
860 Court Street North, Suite 100
Lewisburg, West Virginia 24901
(304) 345-2626
(304) 345-7626 (*facsimile*)

mberger@ro-law.com
www.ro-law.com
*Counsel for Putative Intervenors NLTM & Fivemile*

AND

/s/ *W. Edward Shipe*
*W. Edward Shipe (TN # 023887)
**BROCK SHIPE KLENK PLC**
265 Brookview Centre Way, Suite 604
Knoxville, TN 37919
865-338-9700
eshipe@bskplc.com
*pro hac vice counsel*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
(BECKLEY DIVISION)**

**WHITE SULPHUR SPRINGS HOLDINGS, LLC**

      **Plaintiff,**

**v.**                                   **Case No. 5:26-cv-00257**
                                              **The Honorable Frank W. Volk**

**JAMES C. JUSTICE, II, et al.**

      **Defendants.**

## CERTIFICATE OF SERVICE

I, Miles B. Berger, hereby certify that on this, the 31st day of July, 2026, the foregoing ***New London Tobacco Market, Inc. and Fivemile Energy, LLC's Consolidated Reply in Support of Motion to Intervene*** was filed using the Court's CM/ECF system.  Counsel of record in this Civil Action will be served by the Court's CM/ECF system, as follows:

Seth P. Hayes, Esq.
Zachary H. Warder, Esq.
**JACKSON KELLY PLLC**
3000 Swiss Pine Way, Suite 200
Morgantown, West Virginia 26501
shayes@jacksonkelly.com
zachary.warder@jacksonkelly.com

&

Ellen Cappellanti, Esq.
Albert F. Sebok, Esq.
Elizabeth B. Elmore, Esq.
**JACKSON KELLY PLLC**
500 Lee Street East, Suite 1600
Charleston, West Virginia 25301
ecappellanti@jacksonkelly.com
asebok@jacksonkelly.com
*Counsel for White Sulphur Springs Holdings, LLC*

Steven R. Ruby, Esq.
Raymond S. Franks, II, Esq.
David R. Pogue, Esq.
**CAREY, DOUGLAS, KESSLER & RUBY, PLLC**
707 Virginia Street East, Suite 901
Charleston, West Virginia 25301
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

&

H. Rodgin Cohen, Esq.
Robert L. Jones, IV, Esq.
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
cohenhr@sullcrom.com
jonesrob@sullcrom.com

&

Amanda Flug Davidoff, Esq.
Oliver W. Engebretson-Schooley, Esq.
**SULLIVAN & CROMWELL LLP**
1700 New York Avenue NW, Suite 700
Washington, D.C. 20006
davidoffa@sullcrom.com
engebretsono@sullcrom.com
*Counsel for Defendants*

/s/ *Miles B. Berger*
Miles B. Berger, Esq. (W. Va. State Bar No. 12147)